LARY ALAN RAPPAPORT (SBN 87614)
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, California 90067-3206
Tel:  (310) 557-2900 Fax:  (310) 557-2193
lrappaport@proskauer.com

DEAN HANSELL (SBN 93831)
ELLA R. SERRANO (SBN: 228216)
DEWEY & LEBOEUF LLP
333 South Grand Avenue, Suite 2600
Los Angeles, California  90071-1530
Tel:  (213) 621-6000 Fax:  (213) 621-6100
dhansell@dl.com; eserrano@dl.com

Attorneys for Defendants **ZENITH INSURANCE COMPANY** and **ZNAT INSURANCE COMPANY**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PHARMACY MANAGEMENT, LLC, a California limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>ZENITH INSURANCE COMPANY, a California corporation; and ZNAT INSURANCE COMPANY, a California corporation,<br><br>                    Defendants. | Case No.  SA CV 09-0242 DOC(ANx)<br>(Consolidated with<br>Case No. SAC 09-141 DOC (ANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANTS ZENITH INSURANCE COMPANY AND ZNAT INSURANCE COMPANY FOR AN ORDER STRIKING ALLEGATIONS OF THE FOURTH AMENDED COMPLAINT**<br><br>Date:  August 23, 2010<br><br>Time:  8:30 a.m.<br><br>Place:  Courtroom 9-D<br>          (Santa Ana) |

          Defendants Zenith Insurance Company and ZNAT Insurance Company (collectively "Zenith") hereby submit their memorandum of points and authorities in support of their motion to strike certain allegations from the Fourth Amended Complaint filed by plaintiff California Pharmacy Management, LLC ("CPM").

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................... 2

    A.     CPM's Complaint And First Amended Complaint ............................... 2

    B.     CPM Files A Second Amended Complaint After This Court Grants The BH Defendants' Motion To Dismiss In The Consolidated Action ........................................................................... 3

    C.     The November 5, 2009 Order ............................................................ 4

    D.     CPM's Third Amended Complaint ...................................................... 5

    E.     CPM's Fourth Amended Complaint .................................................... 6

    F.     The WCAB's Decision in *Mendoza v. J. Buckbinder Indus., Inc.* ......... 6

III.   ARGUMENT ............................................................................................. 8

    A.     Allegations That Do Not Comply With The Court's November 5, 2009 Order Should Be Stricken As Redundant, Immaterial, Impertinent, Or Scandalous Matter ................................................... 8

    B.     Allegations That Are Inconsistent With The WCAB's Decision In Mendoza Should Be Stricken ....................................................... 9

IV.    CONCLUSION ........................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Bassett v. Ruggles*
   No. CV-F-09-528 OWW/SMS, 2010 U.S. Dist. LEXIS 37666 (E.D. Cal.
   Apr. 15, 2010).................................................................................................8

*California Pharm. Mgmt., LLC v. Zenith Ins. Co.*
   669 F. Supp. 2d 1152 (C.D. Cal. 2009)...........................................................4

*California Pharm. Mgmt., LLC v. Redwood and Cas. Ins. Co., et al.*
   No. SACV 09-141 DOC (ANx), 2009 U.S. Dist. LEXIS 105770 (C.D. Cal.
   Oct. 26, 2009)..................................................................................................4

*Fantasy, Inc. v. Fogerty*
   984 F.2d 1524 (9th Cir. 1993), *rev'd and remanded on other grounds,*
   *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455
   (1994)...............................................................................................................8

### FEDERAL STATUTES

Federal Rule of Civil Procedure 12(f) ......................................................................8

### TREATISES

5 C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*
   (3d ed. 2004)....................................................................................................8

2 William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Cal.*
   *Practice Guide: Fed. Civil Procedure Before Trial* (Rutter Group 2010)...........8

## I.    INTRODUCTION

This motion is necessary because CPM has amended its pleading a fourth time to include allegations that this Court previously ruled cannot be the basis for asserting liability against Zenith.  The challenged allegations constitute "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Federal Rule of Civil Procedure 12(f) and should be stricken to avoid the expenditure of time and money that would arise from litigating spurious issues.

On November 5, 2009, this Court denied Zenith's motion to dismiss the Second Amended Complaint.  Although the motion was denied, this Court's November 5, 2009 Order details the allegations which, as a matter of law, *cannot* be a basis for imposing liability against Zenith.  Among other things, this Court held that CPM may not pursue claims based upon Zenith's: (i) objections to CPM's bills and requests for allowance of liens; (ii) defense against CPM's lien claims before the Workers' Compensation Appeals Board (the "WCAB"); (iii) petition to consolidate lien claims at the WCAB; or (iv) filing of a civil lawsuit against CPM. The Court denied the motion to dismiss only because the Court found that CPM alleged that, separate and distinct from Zenith's protected objections and other litigation activity, Zenith also purportedly sent CPM so-called "lulling letters."  The Court found that, whereas objections and litigation before the WCAB and the Superior Court could not constitute predicate acts of mail or wire fraud to support a RICO claim, the alleged "lulling letters" might.  (Nov. 5, 2009 Order at pp. 6 – 7.)

Ignoring the November 5, 2009 Order, the Fourth Amended Complaint attempts to impose liability against Zenith for the same alleged conduct that this Court previously held is not actionable as a matter of law.  Allegations regarding Zenith's objections, defense at the WCAB, petition to consolidate and Superior Court lawsuit should be stricken for the reasons stated in the November 5, 2009 Order.

Striking these allegations is especially appropriate given CPM's admission that, contrary to what this Court was led to believe, the alleged "lulling letters" are *not* separate and distinct from Zenith's objection letters, which this Court already held constitute protected activity.   To the contrary, CPM contends that "the garden variety objection letters . . . *are* the lulling letters." (Emphasis in original.)[1]  It is now clear that the Fourth Amended Complaint seeks to impose liability on Zenith based *exclusively* upon protected litigation activity: Zenith's objecting to CPM's bills and lien claims and defending at the Workers' Compensation Appeals Board.

Additionally, a portion of paragraph 31 should be stricken because it alleges an interpretation of California law recently rejected by the WCAB in a matter litigated by CPM, *Mendoza v. J. Buckbinder Indus., Inc.,* Case No. ADJ3069602 (April 15, 2010).   In *Mendoza*, the WCAB upheld objections to CPM's bills, finding: (i) CPM's interpretation of California law governing the amounts allowed for repackaged drugs is wrong; (ii) the maximum amount that CPM may recover is the actual cost of the drug plus a dispensing fee; and (iii) the amounts that CPM charged were unreasonable.

## II.    STATEMENT OF FACTS

### A.    CPM's Complaint And First Amended Complaint

CPM filed its Complaint in this action on February 26, 2009.  The Complaint alleged that, by filing a civil lawsuit in Superior Court asserting that CPM had violated California's Unfair Competition Law, objecting to and defending against CPM's lien claims and petitioning the WCAB to consolidate CPM's claims before one judge, Zenith committed mail and wire fraud in violation of the RICO laws.

On April 23, 2009, after Zenith indicated its intention to move to dismiss the Complaint, CPM filed a First Amended Complaint.  The First Amended Complaint

---

[1]  CPM's concession occurred during an exchange of letters regarding the sufficiency of documents produced by CPM.  For reference, true and correct copies of the June 23, 2010 letter from Zenith's counsel and the June 24, 2010 reply from CPM's counsel are attached and marked as Exhibits 1 and 2.

failed to correct the defects in CPM's Complaint and, on July 23, 2009, Zenith filed a motion to dismiss.

**B.      CPM Files A Second Amended Complaint After This Court Grants The BH Defendants' Motion To Dismiss In The Consolidated Action**

Zenith's motion to dismiss the First Amended Complaint was scheduled for hearing on August 17, 2009.  However, on July 29, 2009, this Court granted a motion to dismiss the second amended complaint that CPM filed against Redwood Fire and Casualty Insurance Company and other defendants (collectively the "BH Defendants") in a RICO lawsuit, which was later consolidated with this action.

The second amended complaint against the BH Defendants alleged that, by defending before the WCAB and filing a petition to consolidate with the WCAB, the BH Defendants engaged in predicate acts of mail fraud and wire fraud in violation of the RICO laws.  In its July 29, 2009 Minute Order granting the motion to dismiss, this Court found that CPM's second amended complaint against the BH Defendants was "subject to dismissal . . . due to the application of the *Noerr-Pennington* doctrine and [CPM's] failure to adequately allege the sham litigation exception."  The Court also found that CPM failed to state a claim for mail or wire fraud and that the alleged injury to CPM was too speculative to support a viable RICO claim.

After reviewing the Court's July 29, 2009 Minute Order, Zenith and CPM mutually believed that the Court likely also would grant Zenith's motion to dismiss the First Amended Complaint and give CPM leave to amend.  Accordingly, Zenith and CPM stipulated that Zenith would withdraw its motion to dismiss and CPM could have leave to amend.

CPM filed its Second Amended Complaint on August 18, 2009.  CPM again alleged that Zenith engaged in a "collusive and systematic campaign of sham litigation, fraudulent objections and dilatory conduct carried out by mail fraud and wire fraud."  Overall, the Second Amended Complaint made few meaningful changes from the First Amended Complaint.  Despite CPM's efforts to cloak its

allegations in a purported wrongful motive—to delay the resolution of CPM's bills and lien claims and thereby "destroy" CPM—the focus of CPM's RICO claims remained Zenith's filing of the Superior Court lawsuit and consolidation petition, and defense against CPM's lien claims before the WCAB.

Zenith moved to dismiss CPM's Second Amended Complaint on several grounds, including CPM's failure to allege fraudulent conduct or a scheme to defraud and CPM's improper attempt to impose liability based on Zenith's protected petitioning and litigation conduct.

**C.    The November 5, 2009 Order**

On November 5, 2009, this Court issued its Order denying Zenith's motion to dismiss CPM's Second Amended Complaint.[2]   In reaching its decision to deny Zenith's motion to dismiss, the Court held that many of the Second Amended Complaint's allegations against Zenith could not support a fraud-based RICO claim as a matter of law.  Specifically, this Court held that:

- CPM may *not* pursue a RICO claim against Zenith based upon the alleged "submission of baseless objections," the "consolidation of claims before the WCAB" or the "filing of [Zenith's] state court lawsuit."  (Nov. 5, 2009 Order at p. 6.)

- The "allegations of baseless objection letters, consolidation proceedings before the WCAB, and the filing of the lawsuit in state court" have "legal irrelevance."  (Nov. 5, 2009 Order at p. 7.)

- Zenith's alleged sending of "groundless and frivolous boilerplate objections to CPM regarding its bills and liens," petitioning to consolidate "proceedings before the WCAB in order to further delay resolution of CPM's bills

---

[2] The November 5, 2009 Order is reported at *California Pharm. Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152 (C.D. Cal. 2009).  On October 26, 2009, this Court issued a similar ruling in connection with the BH Defendants' motion to dismiss the Third Amended Complaint that CPM had filed against them.  *California Pharm. Mgmt., LLC v. Redwood and Cas. Ins. Co., et al.*, No. SACV 09-0141 DOC (ANx), 2009 U.S. Dist. LEXIS 105770 (C.D. Cal. Oct. 26, 2009).

4

1   and liens," and filing of a "state court action against CPM in an effort to avoid

2   paying valid claim" is alleged "activity [that] amounts to protected conduct

3   incidental to litigation" protected by the *Noerr-Pennington* doctrine."   (Nov. 5,

4   2009 Order at p. 13.)

5        The Court allowed CPM to proceed with the RICO claim on a narrow ground:

6   the allegation that Zenith "engaged in 'lulling' conduct that [CPM] contends is

7   separate and apart from [Zenith's] alleged misuse of the WCAB process." (Nov. 5,

8   2009 Order at p. 13.)  The so-called "lulling communications" allegedly consisted of

9   Zenith's "alleged representation that their objections were 'business-as-usual' and

10  that [Zenith] intended to 'resolv[e] the objections in good faith."  (Nov. 5, 2009

11  Order at p. 5.)

12  **D.    CPM's Third Amended Complaint**

13       CPM later stated its intention to request leave of Court to file another

14  amended pleading that would add state and federal antitrust claims against Zenith.

15  Rather than litigate whether CPM should be allowed to amend again, Zenith

16  stipulated that CPM could file a Third Amended Complaint subject to Zenith's right

17  to challenge the sufficiency of the pleading.

18       On April 23, 2010, CPM filed its Third Amended Complaint, which added

19  claims for alleged violations of Section 1 of the Sherman Act and the Cartwright

20  Act.  The gravamen of the Third Amended Complaint's antitrust claims was that

21  Zenith and other insurers jointly decided to stop paying CPM's bills and lien claims

22  in a purported "group boycott" that cut off CPM's "cash flow" and threatened to put

23  CPM out of business.

24       Zenith moved to dismiss the antitrust claims added in the Third Amended

25  Complaint.  In response to Zenith's motion, CPM again requested leave to file a

26  Fourth Amended Complaint to attempt to address the defects in its antitrust claims

27  identified in Zenith's motion.  Again, rather than litigate whether CPM should be

28

1   allowed to amend, Zenith stipulated that CPM could file a Fourth Amended

2   Complaint subject to Zenith's right to challenge the sufficiency of the pleading.

3   **E.    CPM's Fourth Amended Complaint**

4   On June 21, 2010, CPM filed its Fourth Amended Complaint.  As discussed

5   in Zenith's accompanying motion to dismiss the antitrust claims, the Fourth

6   Amended Complaint fails to state facts sufficient to constitute a claim for relief

7   under either the Sherman Act or California's Cartwright Act.  Additionally, the

8   Fourth Amended Complaint ignores the Court's November 5, 2009 Order and

9   realleges the same allegations of protected and litigation activity that this Court held

10  do not give rise to a claim against Zenith and, moreover, that are precluded by the

11  *Noerr-Pennington* doctrine.

12  By way of example only, CPM alleges Zenith engaged in "sham litigation,

13  fraudulent objections and dilatory conduct . . . to abuse the process of and defraud

14  the WCAB."  (Fourth Amended Complaint at ¶ 1.)  At paragraph 53, CPM alleges

15  that Zenith's and the Berkshire Hathaway companies' "petitions for consolidation

16  were and are completely frivolous and based on obvious misrepresentations of fact."

17  Similarly, in paragraph 60, CPM alleges that "[i]n addition to filing a petition for

18  consolidation in the WCAB to litigate the same issues raised by Everest/BH, Zenith

19  also has filed a Los Angeles Superior Court suit seeking restitution of $2.3 million

20  already paid on CPM liens and avoidance of payment on the $1 million in pending

21  liens, on the same issues.  Zenith, in other words, is attempting to litigate the same

22  issues in two different forums at the same time."

23  **F.    The WCAB's Decision in *Mendoza v. J. Buckbinder Indus., Inc*.**

24  The Fourth Amended Complaint also ignores the WCAB's April 15, 2010

25  decision against CPM in *Mendoza v. J. Buckbinder Indus., Inc.,* Case No.

26  ADJ3069602 (April 15, 2010).[3]  Decided by the WCAB on reconsideration from a

27

28  _____

[3] A copy of the *Mendoza* decision is attached and marked as Exhibit 3.

6

1   trial level decision by a Workers' Compensation Judge, *Mendoza* requires that many

2   of the allegations in paragraph 31 of the Fourth Amended Complaint be stricken.

3   *Mendoza* arose from a claim that a worker had injured himself working in

4   2005 and 2006.  On May 23, 2008, the worker settled his claim with his employer's

5   workers' compensation carrier by compromise and release approved by the WCAB.

6   CPM billed the insurer $11,660.14 for repackaged drugs purportedly dispensed by

7   Dr. Kahlid Ahmed, for whom CPM claimed to manage an in-office pharmacy.  The

8   insurer objected that the charges were unreasonable.   At trial, the Workers'

9   Compensation Judge awarded CPM $960.05.

10   CPM petitioned the WCAB for reconsideration of the Judge's award.[4]

11   CPM's argument to the Court of Appeal was based on the argument that, under

12   California law, the charges were reasonable because, according to CPM, repackaged

13   drugs dispensed before March 1, 2007 are to be billed in accordance with the 2003

14   Official Medical Fee Schedule.  In the relevant portion of the decision, the WCAB

15   rejected CPM's argument and interpretation of California law.  The WCAB held

16   that where prepackaged drugs were dispensed prior to March 1, 2007, the provider

17   may only recover the actual cost of the repackaged drugs plus a dispensing fee.  The

18   WCAB remanded the matter to the trial court with direction that CPM had the

19   burden of proving the amount that it or Dr. Ahmed paid for the repackaged drugs.

20   Paragraph 31 of the Fourth Amended Complaint alleges the same

21   interpretation of California law rejected by the WCAB.  Paragraph 31 alleges that

22   the amounts billed by CPM for drugs dispensed prior to March 1, 2007 "were

23   reasonable as a matter of law because they were calculated pursuant to the 2003

24   Official Medical Fee Schedule."  CPM has petitioned the California Court of Appeal

---

26   [4] Depending upon the nature of the ruling, a party to a workers' compensation
27   proceeding may challenge the decision of a Workers' Compensation Judge by
     petitioning the Workers' Compensation Appeals Board for reconsideration or
28   removal.

7

1    for review of the WCAB's ruling in *Mendoza*.  As of the date of this motion, the

2    Court of Appeal has not acted on CPM's petition.  Absent review and reversal of

3    *Mendoza*, *Mendoza* will be precedent and paragraph 31 will be contrary to

4    California law (as well as barred by collateral estoppel).

5                         **III.   ARGUMENT**

6    **A.   Allegations That Do Not Comply With The Court's November 5, 2009**

7           **Order Should Be Stricken As Redundant, Immaterial, Impertinent, Or**

8           **Scandalous Matter.**

9       Federal Rule of Civil Procedure 12(f) provides that a court "may order

10   stricken from any pleading . . . any redundant, immaterial, impertinent, or

11   scandalous matter."  "[T]he function of a 12(f) motion to strike is to avoid the

12   expenditure of time and money that must arise from litigating spurious issues by

13   dispensing with those issues prior to trial. . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d

14   1524, 1527 (9th Cir. 1993), *rev'd and remanded on other grounds, Fogerty v.*

15   *Fantasy, Inc*., 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) (citing

16   *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983)); *see also*

17   *Bassett v. Ruggles*, No. CV-F-09-528 OWW/SMS, 2010 U.S. Dist. LEXIS 37666, at

18   * 1 (E.D. Cal. Apr. 15, 2010).

19       "Immaterial matter" is that "which has no essential or important relationship

20   to the claim for relief being pleaded."   "Impertinent' matter" consists of "statements

21   that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*,

22   984 F.2d at 1527; *see also* 5 Charles A. Wright & Arthur R. Miller, *Federal*

23   *Practice and Procedure* § 1382, at 462-64 (3d ed. 2004); 2 William W. Schwarzer,

24   A. Wallace Tashima & James M. Wagstaffe, *Cal. Practice Guide: Fed. Civil*

25   *Procedure Before Trial*, Attacking the Pleadings, at 9:383.5 – 387 (Rutter Group

26   2010).

27       This Court ruled in the November 5, 2009 Order that CPM may *not* pursue a

28   RICO claim against Zenith based upon: (i) the alleged "submission of baseless

objections," the "consolidation of claims before the WCAB" or the "filing of [Zenith's] state court lawsuit"; (ii) "allegations of baseless objection letters, consolidated proceedings before the WCAB, and the filing of the lawsuit in state court"; and (iii) Zenith's alleged sending of "groundless and frivolous boilerplate objections to CPM regarding its bills and liens," petitioning to consolidate "proceedings before the WCAB in order to further delay resolution of CPM's bills and liens," and filing of a "state court action against CPM in an effort to avoid paying valid claim," which is alleged "activity [that] amounts to protected conduct incidental to litigation" protected by the *Noerr-Pennington* doctrine."

Striking the allegations seeking to impose liability for objections and other litigation conduct that this Court already has held is protected activity under the *Noerr-Pennington* doctrine effectively would end this lawsuit.  The Court denied the motion to dismiss the Second Amended Complaint, and allowed CPM to proceed with the RICO claim, only because it found that CPM had alleged that Zenith "engaged in 'lulling' conduct that [CPM] *contends is separate and apart from* [Zenith's] alleged misuse of the WCAB process."  (Nov. 5, 2009 Order at p. 13.) (emphasis added.)   However, CPM now concedes that Zenith's "garden variety objection letters" in fact "*are* the lulling letters."  (Exhibits 1 and 2 (emphasis in original).)  Accordingly, the motion to strike should be granted.

**B.     Allegations That Are Inconsistent With The WCAB's Decision In**
**        *Mendoza* Should Be Stricken**

In *Mendoza v. J. Buckbinder Indus., Inc*., Case No. ADJ3069602 (April 15, 2010), the WCAB rejected CPM's interpretation of California law and held that, where prepackaged drugs were dispensed prior to March 1, 2007, a provider may only recover the actual cost of the repackaged drugs plus a dispensing fee:

> However, the drugs and services at issue in this case were
> repackaged pharmaceuticals.   It is undisputed that the Medi-Cal
> payment system did not include repackaged pharmaceuticals.   [fn.]

1    Thus, LC's [CPM's] claim for reimbursement in this case is governed

2    by the 2003 OMFS [Official Medical Fee Schedule].

3        The 2003 OMFS provided:

4                                    * * *

5        Thus the rule requires that the provider (here the physician)

6    prove his usual charge, which means the amount that he or she paid for

7    the pharmaceuticals.  If the claims administrator does not agree to

8    reimburse the physician that amount plus the dispensing fee required

9    by the rule, the claims administrator must prove that the formula set

10   forth in the fee rule provides for a lesser reimbursement than the

11   physician's usual charge.

12   Ignoring *Mendoza*, paragraph 31 of the Fourth Amended Complaint alleges

13   the same interpretation of California law rejected by the WCAB:

14       Pre-2007 medications are billed in accordance with Labor Code

15   Section 5307.1.  That section provides for reimbursement of drugs at

16   100% of the Medi-Cal fee schedule for drugs and manufacturers in the

17   Medi-Cal database.  CPM, however, obtains the billing information for

18   medications dispensed by contracted physicians from a manufacturer

19   whose NDC number is not in the Medi-Cal base.   When a

20   manufacturer's NDC number is not contained in the Medi-Cal

21   database, Labor Code 5307.1 provides that reimbursement will be at

22   the fee schedule that was in effect on or before December 31, 2003.

23   That fee schedule authorizes payment for generic drugs at 1.4 times

24   the manufacturer's average wholesale price ("AWP"), plus a $7.50

25   handling fee.  Brand name drugs are paid at 1.1 times the AWP plus a

26   handling fee of $4.  CPM bills its contracted physicians' pre-2007

27   medications at exactly the fees so authorized.  (The law regarding

28

reimbursement of medications changed in March, 2007.  A new, much lower amount is specified in the statute, which is not retroactive.)

(Fourth Amended Complaint at ¶ 31, page 12, line 16 – page 13, line 2.)

*Mendoza* is binding upon CPM unless and until review is granted by the California Court of Appeal and the decision reversed.  Because the challenged allegations in paragraph 31 contradict the holding in *Mendoza*, those allegations are "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Rule 12(f) and should be stricken.

## IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, Zenith respectfully requests that the Court grant this motion in its entirety and strike the challenged allegations from CPM's Fourth Amended Complaint.

DATED:  July 13, 2010                              PROSKAUER ROSE, LLP

DEWEY & LEBOEUF, LLP


By:   _____/s/_____
          Lary Alan Rappaport
Attorneys for Defendants
ZENITH INSURANCE COMPANY
AND ZNAT INSURANCE COMPANY

 **Proskauer»** Proskauer Rose LLP  2049 Century Park East, 32nd Floor  Los Angeles, CA 90067-3206

Lary Alan Rappaport
Member of the Firm
d 310.284.5658
f 310.557.2193
lrappaport@proskauer.com
www.proskauer.com

June 23, 2010

**By Facsimile**

Terree A. Bowers, Esq.
Matthew J. Kitson, Esq.
Arent Fox LLP
Gas Company Tower
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013

Donald G. Norris, Esq.
Norris & Galanter, LLP
555 W. Fifth St., 31st Floor
Los Angeles, CA 90013

Re:  California Pharmacy Management, LLC v. Zenith Insurance Company
     and ZNAT Insurance Company, et al., USDC Case No. SA CV 09-0242 DOC

Dear Counsel:

As I told Matt earlier today, I have received the two CDs with documents being produced by
California Pharmacy Management ("CPM").  I have sent the CDs to be duplicated for Dean and
Ella, who were not sent copies.  Before doing, so, I briefly looked through each of the folders
contained on the Zenith Insurance Company ("Zenith") CD.  Based upon my quick initial
review, I have some general observations.

The folders on the Zenith CD appear to contain six types of documents: (i) CPM account
receivable lists or spreadsheets; (ii) bills sent to Zenith by CPM; (iii) explanations of payments
sent to CPM by Zenith; (iv) Zenith checks sent in payment of bills; (v) internal CPM reports of
hearings attended and collection calls, primarily dated after litigation began; and (vi) a small
number of Workers' Compensation Appeals Board documents, such as a completed hearing
form.

Comparing the documents produced to the documents requested is difficult because CPM has not
organized and labeled the documents to correspond to the categories in the document request.
However, there do not appear to be any documents responsive to the majority of categories in the
document request.

5477/79841-032 Current/19461066v1

Boca Raton | Boston | Chicago | Hong Kong | London | Los Angeles | New Orleans | New York | Newark | Paris | São Paulo | Washington, D.C.

EXHIBIT 1
Page 12

# Proskauer»

Terree A. Bowers, Esq.
Donald G. Norris, Esq.
June 23, 2010
Page 2

 Among other things, I did not see a single instance of a so-called "lulling letter" or an objection that was not a "garden variety" objection (i.e. claim denied, treatment not authorized, an excessive amount billed, no NDC code and/or insufficient information provided and the like). Nor do there appear to be any physician contracts, documents related to loans or other agreements with physicians, documents reflecting the purchase of pharmaceuticals from wholesale providers and other costs, documents related to communications with the Pharmacy Board, CPM's and the physicians' offices policies, procedures and memoranda, documents related to the "leasing" of pharmacy technicians, documents related to CPM's organization, ownership or employees, documents related to CPM's conspiracy allegations or documents related to CPM's claimed financial harm and damages. This list of the categories of documents that do not appear to have been produced is not exhaustive. The categories of documents that CPM appears not to have produced are too numerous to list.

If I am wrong, and CPM has produced documents responsive to these categories buried somewhere in the folders on the Zenith CD, please let me know the Bates ranges where I can find them. As you know, the only reason that Judge Carter did not dismiss the action was based upon CPM's allegation of purported "lulling letters" separate and distinct from the explanations of payments, objections and Board activities that Judge Carter held constitutes protected activity. Not surprisingly, we have asked repeatedly for the purported "lulling letters." No such "lulling letters" appear to have been produced.

I also did not see any documents related to ZNAT Insurance Company. If so, why is ZNAT Insurance Company a party in this action?

Very truly yours,

Lary Alan Rappaport

cc: Dean Hansell, Esq. (by facsimile)
    Ella Serrano, Esq. (by facsimile)

EXHIBIT 1
Page 13

Fax:13105572264

## ✳✳ Transmit Conf.Report ✳✳

P.1                                                                Jun 23 2010  14:15

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 5477#79841032#12136297401# | NORMAL | 23,14:15 | 0'50" | 3 | # O K | BRDCAST |

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 5477#79841032#12139968475# | NORMAL | 23,14:17 | 0'55" | 3 | # O K | BRDCAST |

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 5477#79841032#12136216100# | NORMAL | 23,14:18 | 0'43" | 3 | # O K | BRDCAST |

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 5477#79841032#12136216100# | NORMAL | 23,14:20 | 1'22" | 3 | # O K | BRDCAST |

# Proskauer»  Proskauer Rose LLP  2049 Century Park East, 32nd Floor  Los Angeles, CA 90067-3206

**Date:** June 23, 2010                    **Client-Matter:** 5480-79841-032

**Total Pages (Including Cover): 3**

**From:** Lary Alan Rappaport                **Sender's Voice Number:** 310.284.5658
**Sender's Email:** lrappaport@proskauer.com   **Sender's Room Number:** 3251
**Main Number:** 310.557.2900               **Main Fax Number:** 310.557.2193

# Fax Transmittal

| | | | |
|---|---|---|---|
| **To:** | Terree A. Bowers, Esq. | **Fax No.:** | (213) 629-7401 |
| **Company:** | Arent Fox LLP | **Voice No.:** | (213) 629-7400 |

| | | | |
|---|---|---|---|
| **To:** | Donald G. Norris, Esq. | **Fax No.:** | (213) 996-8475 |
| **Company:** | Norris & Galanter, LLP | **Voice No.:** | (213) 996-8465 |

EXHIBIT 1
Page 14

Arent Fox LLP / **Los Angeles, CA** / Washington, DC / New York, NY

# Arent Fox

June 24, 2010

**Terree A. Bowers**
Partner
213.443.7573 DIRECT
213.629.7401 FAX
bowers.terree@arentfox.com

**Reference Number**
**032492.00001**

**VIA EMAIL**

Lary Alan Rappaport, Esq.
**PROSKAUER ROSE LLP**
2049 Century Park East
Los Angeles, CA 90067
E-mail: lrappaport@proskauer.com

Re:  <u>California Pharmacy Management v Zenith Insurance, et al.</u>

Dear Lary:

This will respond to your letter dated June 23, 2010.

First, we disagree with the many mischaracterizations in your letter.  While you note that CPM has not labeled its document production to correspond to the categories of Zenith's production requests, Federal Rule of Civil Procedure 34 contains no such requirement.  CPM produced the documents as they were kept in the ordinary course of business, as it is permitted to do under the Rules.  With respect to your assertion that CPM has not produced documents responsive to many of the categories of Zenith's production requests, CPM has produced the responsive documents that it has been able to locate to date.  Discovery is ongoing in this matter.  To the extent additional responsive, non-privileged documents are located, they will be produced in due course, but CPM believed that delaying the production of responsive materials which already had been located would serve only to delay the progress of this litigation.  CPM notes that Zenith has yet to produce a single document in this matter.

Second, with regard to your assertion that the production did not contain "lulling letters," you misunderstand what is meant by a "lulling letter."  In fact, the "garden variety" objection letters to which your letter refers, and which are numerous in the document production, *are* the lulling letters.  By purporting to carry on with "business as usual," these letters served to deceive CPM into believing that Zenith was making, in your words, "garden variety" objections, which form a normal part of the workers' compensation claims process.  The deception delayed CPM's discovery that Zenith was, in fact, not conducting "business as usual," but was engaged in an unlawful scheme to deny all CPM claims on a blanket basis.  As such, the document production is replete with lulling letters.

LA/292257.1

555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
T 213.629.7400   F 213.629.7401

1050 Connecticut Avenue, NW
Washington, DC 20036-5339
T 202.857.6000   F 202.857.6395

1675 Broadway
New York, NY 10019-5820
T 212.484.3900   F 212.484.3990

EXHIBIT 2
Page 15

Lary Alan Rappaport, Esq.
June 24, 2010
Page 2

# Arent Fox

Please feel free to call me if you have any further questions or concerns.

Sincerely,

Terree A. Bowers

TAB:gw

LA/292257.1

EXHIBIT 2
Page 16

# WORKERS' COMPENSATION APPEALS BOARD

## STATE OF CALIFORNIA

RAMON MENDOZA,

*Applicant,*

vs.

J. BUCKBINDER INDUSTRY, INC.; INSURANCE COMPANY OF THE WEST,

*Defendant.*

Case No.   ADJ3069602 (LAO 0865677)

**OPINION AND DECISION AFTER RECONSIDERATION**

On January 7, 2010, we granted lien claimant's petition for reconsideration in order to allow sufficient opportunity to further study the factual and legal issues in this case. This is our decision after reconsideration.

Applicant Ramon Mendoza, while employed as a laborer on January 11, 2006, and from January 2005 through January 2006, sustained industrial injuries to his thoracic spine, lumbar spine, cervical spine and both legs. On May 23, 2008, he signed a compromise and release in which he stipulated, among other things: "Applicant stipulates he has not suffered injury to the psyche." The settlement was approved by Order Approving Compromise and Release and Award, Joint Order Approving C&R dated June 10, 2008.

On June 2, 2009, this matter came on for trial on the issue of the lien of California Pharmacy Management (LC) in the amount of $11,660.14. LC claims to have had an agreement with Khalid M. Ahmed, M.D.,[1] applicant's treating physician, "to administer his drug-dispensing program utilizing repackaged drugs which Dr. Khalid [sic] dispensed to injured workers."[2] LC's lien was not addressed in the compromise and release.

---

[1] In its petition for reconsideration, LC refers to "Dr. Ahmed Khalid." We assume that LC is referring to Dr. Ahmed.
[2] Petition, page 2.

EXHIBIT 3
Page 17

After two days of trial, the workers' compensation administrative law judge (WCJ) issued a Findings of Fact and Order, awarding reimbursement to LC in the amount of $960.05. LC contends that there was no evidence to support the finding that payment for alprazolam (generic Xanax) should be denied; that the amounts billed by LC were reasonable as a matter of law because they were calculated pursuant to the 2003 Official Medical Fee Schedule; and that Labor Code section 4603.2[3] requires imposition of penalties and interest in this case. We received an answer from defendant.

Section 5307.1(d) provides in relevant part: "If the administrative director determines that a pharmacy service or drug is not covered by a Medi-Cal payment system, the administrative director shall establish maximum fees for that item. However, the maximum fee paid shall not exceed 100 percent of the fees paid by Medi-Cal for pharmacy services or drugs that require comparable resources."

Section 5307.1(c) provides: "Prior to the adoption by the administrative director of a medical fee schedule pursuant to this section, . . . with regard to pharmacy services and drugs, for a pharmacy service or drug that is not covered by a Medi-Cal payment system, the maximum reasonable fee paid shall not exceed the fee specified in the official medical fee schedule in effect on December 31, 2003."

All of the pharmaceuticals in this case were dispensed between January 1, 2004, and February 28, 2007. On January 2, 2004, the administrative director filed Rule 9789.40 (Cal. Code Regs., tit. 8, § 9789.40), setting the maximum fee at 100% of the fee prescribed in the relevant Medi-Cal payment system and providing that services and drugs not covered by a Medi-Cal payment system were subject to the 2003 official medical fee schedule [OMFS]. Rule 9789.40 was amended effective February 28, 2007, but the amendment provided that the changes were applicable only to pharmaceuticals dispensed or provided after March 1, 2007.

---

[3] Unless otherwise specified, all statutory references are to the Labor Code.

**MENDOZA, RAMON**            2

EXHIBIT 3
Page 18

1    However, the drugs and services at issue in this case were repackaged pharmaceuticals. It

2    is undisputed that the Medi-Cal payment system did not include repackaged pharmaceuticals.[4]

3    Thus, LC's claim for reimbursement in this case is governed by the 2003 OMFS.

4    The 2003 OMFS provided:

> "[R]eimbursement of pharmaceuticals (99070) shall be the lesser of : (1) the provider's usual charge, or (2) the fees established by the formulas for brand-name and generic pharmaceuticals as described. This provision applies to the dispensing of all pharmaceuticals including those dispensed by a medical provider, regardless of the point of service. . . .
>
> "The formulas for establishing fair and reasonable fees and charges for brand-name and generic pharmaceuticals are:
>
> Brand-Name Pharmaceutical Formula:  average wholesale price (AWP) times 1.10 plus a $4.00 dispensing fee.
>
> Generic Pharmaceutical Formula:  average wholesale price (AWP) times 1.40 plus a $7.50 dispensing fee.
>
> "When a generic pharmaceutical costs more than a brand-name pharmaceutical, according to the formulas described in this section, the fair and reasonable price will be the brand name equivalent, as calculated under the above formula.  Documentation may be required."[5]

Thus the rule requires that the provider (here, the physician) prove his usual charge, which means the amount that he or she paid for the pharmaceuticals. If the claims administrator does not agree to reimburse the physician that amount plus the dispensing fee required by the rule, the claims administrator must prove that the formula set forth in the rule provides for a lesser reimbursement than the physician's usual charge.

In this case, there is no evidence as to what Dr. Ahmed paid for the pharmaceuticals that he dispensed to the applicant.  Therefore, we rescind the award and return the matter to the trial level to develop the record.  LC must prove Dr. Ahmed's actual charges.  If the pharmaceuticals dispensed were samples provided to him at no charge, there can be no reimbursement.  In any

---

[4] See testimony of Gabriela Guzman, Summary of Evidence (June 2, 2009), page 5, line 25.
[5] See www.dir.ca.gov/dwc/DWCPropRegs/OMFS~insertpagesasadopted.pdf.

**MENDOZA, RAMON**                                              3

EXHIBIT 3
Page 19

1    event, the charges cannot be higher than the brand name equivalent drug.  If defendant will not

2    agree to reimburse those amounts, defendant must prove that reimbursement under the formulas

3    provided by the rule is less than reimbursement of the actual charges.  Where there is no evidence

4    of the AWP for a pharmaceutical, which appears to be the case with Ketorub, Dr. Ahmed is

5    entitled to reimbursement for his actual charge if the medication was reasonably required.

6           With regard to reimbursement for anti-anxiety medication, we note first that LC was not a

7    party to the compromise and release and is not bound by the stipulations therein. Furthermore,

8    "[s]o long as the treatment is reasonably required to cure or relieve from the effects of the

9    industrial injury, the employer is required to provide the treatment, and treatment for nonindustrial

10   conditions may be required of the employer where it becomes essential in curing or relieving from

11   the effects of the industrial injury itself." (*Granado v. Workmen's Comp. Appeals Bd.* (1968) 69

12   Cal.2d 399 [33 Cal.Comp.Cases 647, 652].)  Therefore, LC may be reimbursed for anti-anxiety

13   medication if it was reasonably required to cure or relieve from the effects of the industrial injury,

14   whether applicant sustained a psychiatric injury or not.

15          Because of our disposition herein, we do not reach the issue of whether LC is entitled to

16   penalties and interest under section 4603.2.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

**MENDOZA, RAMON**                                    4                                    EXHIBIT 3
                                                                                           Page 20

1     For the foregoing reasons,

2     **IT IS ORDERED**, as the decision after reconsideration of the Workers' Compensation

3  Appeals Board, that the Findings of Fact and Order dated October 12, 2009, is **RESCINDED** and

4  that this matter is **RETURNED** to the trial level for such further proceedings and decisions by the

5  WCJ as may be required, consistent with this opinion.

6                         **WORKERS' COMPENSATION APPEALS BOARD**

7

8

9  *I CONCUR,*                           JAMES C. CUNEO

10

11

12          ALFONSO J. MORESI

13

14

15          NEIL P. SULLIVAN            DEPUTY

16  *DATED AND FILED IN SAN FRANCISCO, CALIFORNIA*

17  **APR 15 2010**

18  *SERVICE MADE BY MAIL ON ABOVE DATE ON THE PERSONS LISTED BELOW AT THEIR ADDRESSES AS SHOWN ON THE CURRENT OFFICIAL ADDRESS RECORD:*

19

20  *TOBIN LUCKS*
     *FRANCESCA HANNAN*

21

22

23

24

25  MR/rrm

26

27

**MENDOZA, RAMON**                   5

EXHIBIT 3
Page 21