LOCKE LORD BISSELL & LIDDELL LLP
Peter Roan (137379)
proan@lockelord.com
Ronald D. Kurtz (195918)
rkurtz@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071
Tel:   213-485-1500
Fax:   213-485-1200

Attorneys for Defendants
Redwood Fire and Casualty Insurance Company,
Cypress Insurance Company, Oak River Insurance
Company, American All Risk Insurance Services, Inc.,
American Commercial Claims Administrators, Inc. and
National Liability and Fire Insurance Company

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| CALIFORNIA PHARMACY MANAGEMENT, LLC., a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ZENITH INSURANCE COMPANY, a California corporation; and ZNAT INSURANCE COMPANY, a California corporation,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTION. | Case No. SACV09-00242-DOC (ANx) Consolidated with Case No. SACV 09-0141 DOC (ANx)<br><br>Honorable David O. Carter<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AND FOURTH CLAIMS FOR RELIEF IN THE FIFTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       August 23, 2010<br>Time:       8:30 a.m.<br>Place:      Courtroom 9-D<br>              (Santa Ana) |

1

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 23, 2010 at 8:30 a.m., or as soon thereafter as the matter may be heard in the above-titled Court, Defendants Redwood Fire and Casualty Insurance Company, Cypress Insurance Company, Oak River Insurance Company, American All Risk Insurance Services, Inc., American Commercial Claims Administrators, Inc. and National Liability and Fire Insurance Company (collectively, the "Defendants") will bring for hearing before the Honorable David O. Carter, United States District Judge, in Courtroom 9D of the United Stated Courthouse located at 411 West Fourth Street, Santa Ana, California 92701, their Motion to Dismiss the Third and Fourth Claims for Relief in the Fifth Amended Complaint.

Defendants move to dismiss on each of the following grounds.

1.     Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that CPM is required, and has failed, to plead a cognizable antitrust injury in order to maintain its third and fourth claims for relief.  CPM's allegation cannot amount to an antitrust injury because CPM itself concedes that its conduct was designed to raise, not lower, prices for the prescription medications dispensed in the offices of the physicians who contracted with CPM. As CPM alleges in its Fifth Amended Complaint ("5AC"), the alleged anticompetitive conduct was, incongruously, a conspiracy and "concerted action" to *lower* prices: "Zenith and BH strongly dislike the physician in-office medication dispensing programs even though such programs are explicitly authorized by law.  Because CPM is legally able to seek higher prices for medications than Zenith and BH would like to pay, Zenith and BH conspired and engaged in concerted action...".  5AC ¶ 3.  The Supreme Court has succinctly rejected such backward antitrust claims, stating that "antitrust laws . . . were enacted

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1   for the 'protection of competition, not competitors.'" *Brunswick*

2   *Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).

3   2.   Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal

4   Rules of Civil Procedure on the grounds that CPM is required, and has

5   failed, to plead a properly defined relevant market on the basis of

6   which its antitrust claims can be analyzed. See *Total Benefits*

7   *Planning Agency, Inc. v. Anthem*, 552 F.3d 430, 437 (6th Cir. 2008)

8   (dismissing Section 1 group boycott claim for failure to state a claim

9   under 12(b)(6) where plaintiffs "fail to indicate whether the relevant

10   market consisted of products or services. Within the insurance

11   industry there are a multitude of different policy types (for example,

12   life insurance, health insurance, and group policies), and each is part

13   of its own individual market. Without an explanation of the other

14   insurance companies involved, and their products and services, the

15   court cannot determine the boundaries of the relevant product market

16   and must dismiss the case for failure to state a claim.").

17   3.   Defendants move to dismiss pursuant to Rule 12(b)(1) of the Federal

18   Rules of Civil Procedure on the grounds that the Complaint should be

19   dismissed for lack of subject matter jurisdiction because, having failed

20   to allege antitrust injury and having failed to allege a properly defined

21   relevant market, CPM has no right to assert the alleged claims on its

22   own behalf. Such a right belongs to the physicians that allegedly

23   dispensed the medications to injured workers. CPM continues to

24   allege only that it has "assignments from its highest volume

25   contracting physicians and expects to have assignments from all or

26   most of its physicians of their RICO causes of action against

27   [Defendants] for [their] interference with the contractual relationships

28   between CPM and its physicians." 5AC ¶ 14. But such assignments

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1   are still — at this late date, more than a year into the case, and now

2   reaching the Fifth Amended Complaint — only something CPM

3   "expects" from "all or most" of its contracting physicians.  Even this

4   vague assertion is watered down from its prior formulations, in which

5   CPM stated that it "soon expects" to receive the assignments.  *See*

6   Third Amended Complaint at ¶ 12.  Even if the phantom assignments

7   exist, they are insufficient to establish any right to payment on the part

8   of CPM.

9      4.   Defendants move to dismiss pursuant to Rule 12(b)(7) of the Federal

10   Rules of Civil Procedure for failure to join necessary parties.  Because

11   CPM's claims are all ultimately based on the rights to receive

12   reimbursement, if any, of its contracting physicians for prescription

13   medications they dispensed to injured workers, unless the physicians

14   are joined, a judgment rendered in their absence would "leave an

15   existing party [the Defendants] subject to a substantial risk of

16   incurring double, multiple, or otherwise inconsistent obligations

17   because of the interest" of the absent physicians.  Fed. R. Civ. P.

18   19(a)(1)(b)(ii).

19      This Motion is based on this Notice of Motion and Motion, the incorporated

20   Memorandum of Points and Authorities, the pleadings, papers and records on file

21   in this action, and such oral argument as may be presented at the time of the

22   hearing.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

This Motion is made following the parties' compliance with Local Rule 7-3 which took place on and before July 2, 2010.

Dated:  July 26, 2010          LOCKE LORD BISSELL & LIDDELL LLP


                               By:  */s/ Ronald D. Kurtz*
                               _____

                                    Peter Roan
                                    Ronald D. Kurtz
                               Attorneys for Defendants
                               Redwood Fire and Casualty Insurance Company;
                               Cypress Insurance Company; Oak River Insurance
                               Company; American All Risk Insurance Services,
                               Inc.; American Commercial Claims Administrators,
                               Inc. and National Liability and Fire Insurance
                               Company

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

# **TABLE OF CONTENTS**

**Page No(s)**

INTRODUCTION ................................................................ 1

THE ALLEGATIONS IN THE FIFTH AMENDED COMPLAINT ............ 2

LEGAL ARGUMENT ........................................................... 6

    1.    CPM Has Not Alleged An Antitrust Injury, And CPM

           Cannot Do So Because The Antitrust Laws Do Not

           Protect A Business Model That Raises Prices ...................... 6

    2.    Even Accepting As True The Allegations That Defendants

           Engaged In A Group Boycott, CPM's Failure To Allege

           An Antitrust Injury Is Still Fatal To Its Antitrust Claims .......... 7

    3.    CPM Has Not Alleged A Properly Defined Relevant

           Market On Which An Analysis Of Any Section 1 Claim

           Can Be Based ................................................... 9

    4.    CPM Lacks Article III Standing As It Is Not The Service

           Provider With The Legal Right To Seek Payment, And The

           Complaint Should Be Dismissed For Lack Of Subject

           Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1) ............... 11

    5.    CPM Should Be Required To Join Its Contracted Physicians

           As Parties As Their Presence Is Needed For A Just

           Resolution Of The Matter Under Fed. R. Civ. P. 19, Or

           The Complaint Should Be Dismissed For Failure To Join

           Necessary Parties Under Fed. R. Civ. P. 12(b)(7) ................. 15

CONCLUSION ............................................................... 16

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

# TABLE OF AUTHORITIES

**Page No(s)**

**Federal Cases**

*Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.,*
    141 F.3d 947 (9th Cir. 1998)...................................................................... 8

*Annulli v. Panikkar,*
    200 F.3d 189 (3rd Cir. 1999) .................................................................... 12

*Atlantic Richfield Co. v. USA Petroleum,*
    495 U.S. 328 (1990) .................................................................................. 6

*Barton & Pittinos, Inc. v. Smithkline Beecham Corp.,*
    118 F.3d 178 (3d Cir. 1997) ...................................................................... 6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ............................................................................. 3, 7

*Connecticut v. Physicians Health Servs. Of Conn., Inc.,*
    287 F.3d 110 (2d Cir. 2002) ..................................................................... 14

*Disabled Rights Action Committee v. Las Vegas Events, Inc.,*
    375 F.3d 861 (9th Cir. 2004)..................................................................... 16

*Hunt v. Wash. Apple Adver. Com'n,*
    432 U.S. 333 (1977) ................................................................................. 12

*Indemnified Cap. Inv. v. R.J. O'Brien & Assoc.,*
    12 F.3d 1406 (7th Cir. 1993)..................................................................... 14

*Northwest Wholesale Stationers v. Pacific Stationery and Printing Co.,*
    472 U.S. 284 (1985) ................................................................................... 7

*Raines v. Byrd,*
    521 U.S. 811 (1997) ................................................................................. 11

*Sprint Communications Co. v. APCC Services, Inc.,*
    128 S. Ct. 2531 (2008) ....................................................................... 11, 13

*Tanaka v. University of Southern California,*
    252 F.3d 1059 (9th Cir. 2001).................................................................... 9

*Thurman Indus., Inc. v. Pay 'N Pack Stores, Inc.,*
    875 F.2d 1369 (9th Cir. 1989)................................................................... 10

*Total Benefits Planning Agency, Inc. v. Anthem,*
    552 F.3d 430 (6th Cir. 2008)................................................................. 3, 9

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP,*
    549 F.3d 100 (2d Cir. 2008)......................................................... 11, 13, 14

**State Cases**

*Ogden v. WCAB,*
    11 Cal.3d 192 (1974).............................................................................. 13

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

ii

**Federal Codes, Statutes & Rules**

15 U.S.C. § 1 ......................................................................................... 4
Fed. R. Civ. P. 12(b)(1)................................................................. 1, 11, 14
Fed. R. Civ. P. 12(b)(6)................................................................. 1, 2, 10
Fed. R. Civ. P. 12(b)(7).................................................................... 15
Fed. R. Civ. P. 19 ........................................................................... 15
Fed. R. Civ. P. 19(a)(1)(b)(i)............................................................ 15
Fed. R. Civ. P. 19(a)(1)(b)(ii)....................................................... 4, 15
Fed. R. Civ. P. 19(a)(2) .................................................................. 16

**State Codes, Statutes & Rules**

Cal. Labor Code § 4902 .................................................................. 13
Cal. Labor Code § 4903 .................................................................. 13

**Other Authorities**

Black's Law Dictionary 1209 (8th Ed. 2004)..................................... 11
U.S. Const. Art III .......................................................................... 11

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

## MEMORANDUM OF POINTS AND AUTHORITIES

Introduction

CPM's latest attempt[1] to allege antitrust claims against Defendants again fails because, among other defects, CPM does not allege the requisite injury to competition. On April 23, 2010, Defendants and Plaintiff entered into a stipulation granting Plaintiff leave to amend the TAC and file a Fourth Amended Complaint ("4AC") for the purpose of adding antitrust claims under the Sherman Act and the Cartwright Act, while expressly preserving Defendants' rights to challenge the legal sufficiency of those claims. The 4AC was deemed filed on April 26, 2010 by this Court's Order of the same date. On June 22, 2010, the Court entered an order granting the parties' stipulation permitting the filing of a Fifth Amended Complaint ("5AC") on or before June 23, 2010, and the filing of a responsive pleading by July 26, 2010. The 5AC was filed on June 23, 2010.

[1] Plaintiff filed its original Complaint on February 5, 2009, attempting to allege a RICO cause of action against Defendants based on mail and wire fraud. On March 12, 2009, Defendants filed their Motion to Dismiss CPM's Original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On March 23, 2009, in response to Defendants' Motion to Dismiss, CPM filed its First Amended Complaint ("FAC"). On April 1, 2009, Plaintiff and Defendants entered into a stipulation granting Plaintiff leave to amend the FAC and file a Second Amended Complaint ("SAC") so that Plaintiff could attempt to "clarify the issues in dispute" in this lawsuit and granting Defendants until April 27, 2009 to respond to the SAC. On April 7, 2009, Plaintiff filed its SAC. On April 30, 2009, this Court signed an order granting Defendants additional time to respond to Plaintiff's SAC, until May 29, 2009.

Defendants filed their Motion to Dismiss the Second Amended Complaint on May 15, 2009. By its Memorandum and Order dated July 29, 2009, this Court granted Defendants' Motion to Dismiss the Second Amended Complaint, with leave to amend within 20 days. Plaintiff filed its Third Amended Complaint ("TAC") on August 18, 2009. In its Memorandum and Order dated October 26, 2009, this Court denied Defendants' Motion to Dismiss the Third Amended Complaint, and the stipulation leading to the Fourth Amended Complaint discussed above followed.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

The antitrust allegations comprising the third and fourth claims for relief in the 5AC are insufficient to state a claim under Rule 12(b)(6) because Plaintiff has failed to allege, and demonstrates in its pleading that it cannot allege, an antitrust injury. The 5AC should be dismissed for the additional reason that the CPM does not have Article III standing and is precluded by California law from asserting claims on behalf of dispensing physicians, and therefore CPM's claims should be dismissed under Rule 12(b)(1). The Court should therefore dismiss the third and fourth claims for relief (the "Antitrust Claims"). Because CPM cannot cure the fatal legal and logical flaws in the Antitrust Claims through amendment, they should be dismissed without leave to amend.

The Allegations in the Fifth Amended Complaint

CPM bases its Antitrust Claims largely on a rehash of the same allegations that underly its RICO claims. CPM describes its business of "assisting physicians" in dispensing medications in their offices to workers' compensation patients:

- "CPM contracted with 164 physicians to assist them in their in-office medication dispensing programs." 5AC ¶ 2.
- "Among the patients treated by CPM contracting physicians are injured workers whose rights and those of medical providers who treat them are governed by California workers' compensation law." 5AC ¶ 29.
- "CPM does not . . . purchase medications – the physicians do, . . . CPM has never had any sales of medications to its contracting physicians." 5AC ¶ 26.
- "CPM has the responsibility to bill and collect for medications dispensed to injured workers. CPM submits bills to employers, and to insurers and claims companies like [Defendants]." 5AC ¶ 2.

CPM complains about Defendants' failure to pay CPM for those medications:

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

2

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

- Defendants "began objecting to CPM bills and liens by refusing to pay or negotiate CPM bills and liens with CPM collectors." 5AC ¶ 6.
- "[Defendants] are wrongfully withholding millions of dollars in workers' compensation premium revenue set aside for and rightfully owed to injured workers and their physicians . . . ." 5AC ¶ 47.

For its Antitrust allegations, CPM focuses on the assertion that Defendants acted in concert with Zenith and unnamed others to engage in an alleged "group boycott" of CPM:

- "Zenith and BH communicated to their agents and representatives the manner in which the scheme to defraud and engage in concerted action was to be implemented. BH, along with Zenith and at least one other workers' compensation insurer, Everest, instructed their agents and representatives to cease paying claims from CPM and other companies who assist physicians with their in-office medication dispensing programs, regardless of the merit of each individual claim, and to send deceptive objection letters and other communications" 5AC ¶ 4.
- Defendants have the unlawful objective "to withhold premium revenue for as long as possible and to avoid payment altogether, and to destroy CPM; the in-office medication dispensing programs of its contracting physicians; other companies that assist physicians with their in-office medication dispensing programs; and the market for physician in-office medication dispensing programs." 5AC ¶ 56.
- "For purposes of antitrust analysis, the relevant market is the in-office medication dispensing market in the State of California; and additionally, or in the alternative, the relevant market is the market that includes (a) traditional pharmacies that dispense medication to

3

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

injured workers in workers' compensation cases, and (b) pharmacy management companies like CPM that assist physicians with their in-office medication dispensing programs for injured workers in workers' compensation cases (collectively, the "Pharmacy/Pharmacy Management Market")." 5AC ¶ 78.

• "Beginning at the time, the precise date of which is unknown to Plaintiff, and continuing up to and including the date of this Fifth Amended Complaint, Zenith and BH have engaged in a horizontal combination and conspiracy the purpose of which was and is an unlawful or improper group boycott or concerted refusal to deal with Plaintiff and others in the same business as Plaintiff, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)." 5AC ¶ 80.

• "Zenith's and BH's unlawful combination and conspiracy constitutes a *per se* violation of Section 1 of the Sherman Act (15 U.S.C. § 1), or in the alternative, violates Section 1 under a Rule of Reason analysis."  5AC ¶ 81.

• "As part of the combination and conspiracy to illegally fix payment terms and/or engage in a concerted refusal to deal with Plaintiff and others in the same business as Plaintiff, Zenith and BH have agreed upon and implemented [nine alleged practices]."  5AC ¶ 82.

• "…[T]he California workers' compensation industry and various insurers, including BH and Zenith, have engaged in substantial campaigns under the guise of attacking workers' compensation 'fraud'… to the substantial detriment of Plaintiff and others in the same business as Plaintiff who bill and collect for medication dispensed to injured workers." 5AC ¶ 83(a).

• "BH and Zenith's combination and conspiracy has been undertaken for the purpose, and has had the effect, of injuring competition in the

market for workers' compensation insurance in the State of
California....". 5AC ¶ 85.

Undercutting all of its attempted antitrust allegations is CPM's express
admission that its business operations had the effect of raising, not lowering, prices
for prescription medications dispensed by CPM-contracting physicians to their
workers compensation patients through CPM's in-office program:

> • "Zenith and BH strongly dislike the physician in-office medication
> dispensing programs even though such programs are explicitly
> authorized by law.  Because CPM is legally able to seek higher prices
> for medications than Zenith and BH would like to pay, Zenith and BH
> conspired and engaged in concerted action ...".  5AC ¶ 3.

CPM frames its allegation as a "concerted refusal to deal" or "group
boycott" in an attempt to shoehorn this case into the "per se" violation category
under antitrust law, as opposed to the "rule of reason" category, because under
proper circumstances an antitrust plaintiff bears a lower burden of pleading and
proof when the conduct in question constitutes a per se violation of antitrust law.
CPM asserts in the alternative that its Antitrust Claims are justified under a rule of
reason analysis.  But the rule of reason versus per se violation analysis is not
dispositive here.  CPM's Antitrust Claims fail for the simple reason that, under
either standard, allegation and proof of antitrust injury is required.  CPM fails to
allege such an injury.  Indeed, CPM concedes that no antitrust injury is possible by
the remarkable admission that CPM's activities have the effect of raising prices for
prescription medications.

/ / /
/ / /
/ / /
/ / /
/ / /

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

Legal Argument

> 1.   **CPM HAS NOT ALLEGED AN ANTITRUST INJURY, AND CPM
> CANNOT DO SO BECAUSE THE ANTITRUST LAWS DO NOT PROTECT A
> BUSINESS MODEL THAT RAISES PRICES.**

The antitrust laws do not protect conduct that raises prices for consumers. Section 4 of the Clayton Act provides that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may maintain a private action for treble damages. "Despite this broad statutory language, however, the Supreme Court has held that the common-law background of the antitrust laws requires a narrower, less literal reading." *Barton & Pittinos, Inc. v. Smithkline Beecham* Corp., 118 F.3d 178, 181 (3d Cir. 1997) (*citing Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529-33 (1983) ("*AGC*")). The Supreme Court in *AGC* "focus[ed] on the nature of the plaintiff's alleged injury," asking "whether it is of the type that the antitrust statute was intended to forestall." *AGC*, 459 U.S. at 538, 540. "If the injury is not of the requisite type, even though the would-be plaintiff may have suffered an injury as a result of conduct that violated the antitrust laws, he or she has no standing to bring a private action under the antitrust laws to recover for it." *Barton & Pittinos*, 118 F.3d at 181.

Even if the conduct alleged by CPM amounted to a per se violation, CPM still must demonstrate its own antitrust injury to recover. *See Atlantic Richfield Co. v. USA Petroleum*, 495 U.S. 328, 344 (1990) ("[I]nsofar as the per se rule permits the prohibition of efficient practices in the name of simplicity, the need for the antitrust injury requirement is underscored."). The *Atlantic Richfield* court held that the antitrust injury requirement "prevents losses that stem from competition from supporting suits by private plaintiffs." *Id.* at 342. "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Id.* at 344.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA. 90071-3119

6

1   *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977),

2   establishes unequivocally that no antitrust remedy lies for injury from increased

3   competition.  In *Brunswick*, operators of bowling alleys claimed the defendant's

4   acquisition of several failing bowling alleys in their market violated the antitrust

5   laws. *Id.* at 479-81.  The plaintiffs alleged that the acquired alleys would have

6   failed had the defendant not acquired them and that the plaintiffs would have

7   realized more profit at their bowling alleys from the resulting loss of competition.

8   *Id.* at 481. The Supreme Court found that, in essence, the plaintiffs were claiming

9   that they could not obtain "profits they would have realized had competition been

10  reduced." *Id.* at 488. The Court stated that because the "antitrust laws . . . were

11  enacted for the 'protection of competition, not competitors,' . . . [i]t is inimical to

12  the purposes of these laws to award damages for the type of injury claimed here."

13  (citation omitted).  Because the plaintiffs' asserted losses did not result from the

14  alleged antitrust misconduct by defendant, but, rather, from the prospect of

15  continued competition from the merged bowling alleys, the Court found that

16  plaintiffs' injury "was not of 'the type that the statute was intended to forestall.'"

17  *Id.* (citation omitted).

18  **2.      EVEN ACCEPTING AS TRUE THE ALLEGATION THAT DEFENDANTS**

19  **ENGAGED IN A GROUP BOYCOTT, CPM'S FAILURE TO ALLEGE AN**

20  **ANTITRUST INJURY IS STILL FATAL TO ITS ANTITRUST CLAIMS.**

21          A per se analysis is applied to group boycotts when they have clear

22  anticompetitive effects. *Northwest Wholesale Stationers v. Pacific Stationery and*

23  *Printing Co.*, 472 U.S. 284, 294-95 (1985).  CPM's claim does not fall in the

24  category of per se boycotts as alleged.  CPM is really seeking recovery for its share

25  of *higher* prices charged for medications by in-office dispensers.  This

26  anticompetitive effect is antithetical to the purposes of the antitrust laws, and takes

27  the alleged group boycott out of the per se category of antitrust violations.

28  *///*

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

7

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    The allegedly wrongful conduct asserted by CPM amounts to a concerted

2   refusal to do business with a higher priced supplier. *Adaptive Power Solutions,*

3   *LLC v. Hughes Missile Systems Co.*, 141 F.3d 947 (9th Cir. 1998)("*APS*"), shows

4   that such allegations are subject to the rule of reason analysis. *APS* involved two

5   defense contractors who engaged in a concerted refusal to deal with a higher priced

6   supplier who claimed it was being "driven out of the market" for manufacture of a

7   missile power supply component.  The Ninth Circuit applied the rule of reason

8   analysis, and affirmed summary judgment, noting "[T]his is a case in which

9   manufacturers refuse to deal with a high-priced supplier.  This has nothing to do

10  with a price fixing conspiracy…".  *Id.*, 141 F.3d at 950.  CPM concedes that it is

11  seeking higher prices for the prescription medications dispensed through its

12  physician in-office medication dispensing program.

13    CPM also incongruously alleges that Defendants sought to gain a

14  competitive advantage over other workers' compensation insurance carriers by

15  lowering Defendants' costs of reimbursements to carriers.  How, according to

16  CPM's allegations, did Defendants carry out this alleged scheme to gain advantage

17  over its competitors?  CPM claims that Defendants distributed a "block list" to

18  other carriers in furtherance of Defendants' alleged desire to drive CPM out of

19  business.  Even if the alleged conspiracy and its objectives are taken as true, all

20  carriers would benefit from the lower prices and lower reimbursements associated

21  with the failure of CPM's program to raise prices.  CPM's allegation that

22  Defendants sought to gain a competitive advantage over other carriers is

23  nonsensical, and it undermines, rather than supports, the Antitrust Claims.  The

24  Antitrust Claims should be dismissed pursuant to Rule 12(b)(6) for this additional

25  reason.

26  / / /

27  / / /

28  / / /

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

### 3.   CPM HAS NOT ALLEGED A PROPERLY DEFINED RELEVANT MARKET ON WHICH AN ANALYSIS OF ANY SECTION 1 CLAIM CAN BE BASED.

As a threshold matter, CPM fails to properly define the relevant market necessary to its assertion of the Antitrust Claims. "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001); *see also Total Benefits Planning Agency, Inc. v. Anthem*, 552 F.3d 430, 437 (6th Cir. 2008) (dismissing Section 1 group boycott claim for failure to state a claim under 12(b)(6) where plaintiffs "fail to indicate whether the relevant market consisted of products or services. Within the insurance industry there are a multitude of different policy types (for example, life insurance, health insurance, and group policies), and each is part of its own individual market. Without an explanation of the other insurance companies involved, and their products and services, the court cannot determine the boundaries of the relevant product market and must dismiss the case for failure to state a claim.").

The relevant markets as alleged by CPM are the "in-office medication dispensing market in the State of California" and what CPM calls the "Pharmacy/Pharmacy Management Market" ("PPM"). 5AC ¶ 78. The "in-office medication dispensing market in the State of California" is not a properly alleged relevant market because CPM does not allege what products or services are provided and what other sources exist for those products and services. Even if it were properly alleged, CPM does not participate in the "in-office medication dispensing market". To the contrary CPM expressly alleges that it does not purchase or dispense medications (5AC ¶¶ 26).

Similarly, CPM does not allege what products, services and alternatives are included in the so-called PPM market. CPM would have the Court believe that this market includes (a) traditional pharmacies, which by CPM's own admission

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

9

1  actually dispense medications – something CPM does not do, and (b) pharmacy

2  management companies that do *not* dispense medication but assist in billing for

3  physicians that do.  (5AC ¶ 78).  A relevant market for antitrust purposes is a

4  "group or groups of sellers or producers who have actual or potential ability to

5  deprive each other of significant levels of business."  *Thurman Indus., Inc. v. Pay*

6  *'N Pack Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).

7         CPM's so-called PPM market contains separate sub-groups that *cannot* take

8  business away from each other, *i.e.*, CPM admits that it is legally precluded from

9  dispensing medication as traditional pharmacies do.  In addition, there are no

10  allegations suggesting any competition in the other direction, such that traditional

11  pharmacies are participating in CPM's business of assisting physicians with

12  billing.  CPM's attempts to allege a "PPM market" consisting of traditional

13  pharmacies and companies that assist physicians with billing for in-office

14  dispensing does not even come close to alleging a group of producers who by

15  virtue of the similarity of their products have the ability to take business away from

16  each other.  Because CPM does not allege a properly defined relevant market, the

17  Antitrust Claims should be dismissed pursuant to Rule 12(b)(6).[2]

18

19  _____

20         [2] CPM also makes a tangential reference to the market for workers

21  compensation insurance, another business in which CPM does not participate.

   (5AC ¶ 79 (alleging that Defendants "possess a dominant market position and

22  influence and direct the conduct of all carriers in the workers. compensation

   field").  This reference is difficult to understand because CPM removed its

23  allegation made in the Fourth Amended Complaint that the relevant product market

24  was the "workers compensation insurance market in the State of California."

   (*Compare* 4AC ¶ 72 *with* 5AC ¶ 78)

25         In any event, CPM has not properly alleged a relevant market for the

26  workers compensation insurance market in the State of California.  CPM does not

27  allege that it is a participant in that market such that could suffer any injury.  Nor

   does it allege facts showing that there has been a reduction in competition in the

28  "market for workers' compensation insurance in the State of California"(5AC ¶¶

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

4.   **CPM LACKS ARTICLE III STANDING AS IT IS NOT THE SERVICE PROVIDER WITH THE LEGAL RIGHT TO SEEK PAYMENT, AND THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1).**

The recent Supreme Court decision in *Sprint Communications Co. v. APCC Services, Inc.*, 128 S. Ct. 2531 (2008), as well as the even more recent decision of the Second Circuit in *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), demonstrate that CPM does not have standing to pursue its antitrust claims (or its other claims[3]) because it does not have legal title to, or a property interest in, those claims which may rightfully belong to the physicians.

Article III of the Constitution limits federal court jurisdiction to the resolution of "cases" and "controversies." U.S. Const. Art III § 2. The "case" or "controversy" requirement is established only where a plaintiff has standing to bring a claim. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To have standing, a plaintiff must establish: (1) an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) causation – there must be a fairly traceable connection between the alleged injury in fact and the alleged conduct of the

---

26) , as opposed to the market for the services that CPM alleges it provides, *i.e.*, assisting with billing and collection.

[3] In its ruling nine months ago on Defendants' motion to dismiss the Third Amended Complaint, the Court accepted "for the time being" or "for now" CPM's "vague reference to alleged assignments" in support of CPM's standing to "bring its contracting physicians' RICO claims...." Order Denying Motion to Dismiss, October 26, 2009, at pp. 9-10. CPM's new antitrust claims—the immediate subject of the present motion—are likewise undermined by CPM's lack of standing. Nine months have passed since CPM's "vague reference to alleged assignments" was last addressed by the Court, and the Court's patience then expressed "for the time being" and "for now" may justifiably have expired, in which case CPM's lack of standing is fatal not only to its antitrust claims, but to the entire 5AC.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

11

1  defendant; and (3) redressability – it is likely and not merely speculative that the

2  plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit.  A

3  limited exception to the strict standing requirement is the doctrine of associational

4  standing, where, in certain instances, an association has standing to sue on behalf

5  of its members.  *See, e.g., Hunt v. Wash. Apple Adver. Com'n*, 432 U.S. 333, 343

6  (1977).

7       CPM does not have standing to sue for injuries alleged to have been suffered

8  by the physicians who are authorized by law to dispense medications to injured

9  workers and to seek reimbursement through the WCAB processes.  CPM describes

10  itself as merely being responsible "to bill and collect for medications dispensed to

11  injured workers." 5AC ¶ 2, 83(a).  Because it is merely a billing and collections

12  manager, CPM has not suffered *any* injury sufficient to assert standing to bring this

13  lawsuit.

14       CPM attempts to cure this defect by alleging that it has "assignments from

15  its highest volume contracting physicians and expects to have assignments from all

16  or most of its physicians of their *RICO causes of action* against [Defendants] for

17  [their] *interference with the contractual relationships* between CPM and its

18  physicians." 5AC ¶ 14 (emphasis added).  There is still no allegation that CPM has

19  title to, or a property interest in the bills and liens that it has submitted "on behalf

20  of" its contracting physicians. 5AC ¶¶ 24, 31, 32, 49, and 71.  Without a right to

21  payment, CPM cannot allege an antitrust injury.  The alleged assignments from

22  physicians of a RICO action based on the Defendants' alleged interference with

23  contractual relationships between CPM and its contracting physicians is also

24  irrelevant because interference with contractual relations cannot serve as predicate

25  act for a RICO claim.  *Annulli v. Panikkar*, 200 F.3d 189, 199 (3rd Cir. 1999).

26       If CPM is merely a billing and collection manager, only the physicians will

27  have suffered an injury in fact if their bills and liens are found to be properly

28  payable under the WCAB processes.  If CPM's allegations are assumed to be true,

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

12

1   then CPM has no right to assert any liens or bills on its own behalf, and no antitrust

2   injury or other injury can flow from Defendants' failure to pay CPM.  California

3   Labor Code Section 4902 provides in part that "[n]o compensation, whether

4   awarded or voluntarily paid, shall be paid to any attorney at law or in fact or *other*

5   *agent*, but shall be paid directly to the *claimant entitled thereto*." (Emphasis

6   added).

7       Only the liens identified in Labor Code section 4903 may be asserted against

8   a workers' compensation claim.  But Labor Code section 4903 *does not authorize*

9   liens to be asserted on behalf of bill collectors rather than by providers who

10   actually possess the right to repayment.  *See Ogden v. WCAB*, 11 Cal.3d 192, 197

11   (1974) (holding that in order to assert a lien against a compensation award there

12   must be, among other things, a valid debt within the class of claims enumerated in

13   section 4903, and the creditor must possess a right of repayment).

14       Although the United States Supreme Court, in *Sprint Communications*, held

15   that an assignee of a legal claim for money owed had standing to pursue that claim

16   despite having promised to remit the proceeds of the litigation to the assignor, it

17   did so only because the assignee held *legal title* to the assigned claims.  128 S.Ct.

18   at 2540-42.  More recently, the Second Circuit applied *Sprint Communications* to

19   hold that an attorney-in-fact lacked standing to sue on behalf of its principal.  In

20   *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, an investment

21   advisor with authority to make investment decisions on its clients' behalf and a

22   power of attorney authorizing it to file suit, sought to pursue a securities action on

23   their behalf.  The Second Circuit dismissed the action for lack of standing because

24   "*Sprint* makes clear that the minimum requirement for injury-in-fact is that the

25   plaintiff have legal title to, or a property interest in, the claim." *Id*. at 108.  The

26   court concluded that "a mere power-of-attorney – i.e., an instrument that authorizes

27   the grantee to act as an agent or an attorney-in-fact for the grantor, *see* Black's

28   Law Dictionary 1209 (8th ed. 2004) – does not confer standing to sue in the

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

13

holder's own right because a power of attorney does not confer an ownership interest in the claim." *W.R. Huff*, 549 F.3d at 108.

Requiring a plaintiff to have legal title to, or a property interest in, a claim in order to have Article III standing is consistent with numerous decisions pre-dating *Sprint* that hold that an agent does not have standing to sue on behalf of its principal. *See, e.g., Connecticut v. Physicians Health Servs. Of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002) ("[A] valid and binding assignment of a claim (or portion thereof)—not only the right or ability to bring suit—may confer standing on the assignee."); *Indemnified Cap. Inv. v. R.J. O'Brien & Assoc.*, 12 F.3d 1406 (7th Cir. 1993) ("if [plaintiff]'s customers were interested in bringing this claim against the defendants, they could very easily have assigned their rights to [plaintiff]. . . . Thus, in regard to the customer accounts . . . [plaintiff] has failed to satisfy . . . standing.")

CPM's antitrust allegations are not ultimately based on injury suffered by CPM directly, but rather on alleged injury suffered by the physicians.  It is the physicians who have had their bills and liens denied. See 5AC ¶¶ 24, 31, 32, 49, and 71 (CPM bills and liens submitted *on behalf of* its contracted physicians.) (emphasis added).  There is no allegation that the physicians who CPM claims have been harmed have assigned their right to payment to CPM.

Recent decisions from the Supreme Court and the Second Circuit, combined with general principles of Article III standing, demonstrate that CPM's submissions of bills and liens *on behalf* of physicians it has contracted with is insufficient to confer standing.  Consequently, CPM may not pursue this action, and its antitrust claims and other claims should be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

/ / /

/ / /

/ / /

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

5.    **CPM SHOULD BE REQUIRED TO JOIN ITS CONTRACTED PHYSICIANS
AS PARTIES AS THEIR PRESENCE IS NEEDED FOR A JUST RESOLUTION
OF THE MATTER UNDER FED. R. CIV. P. 19, OR THE COMPLAINT
SHOULD BE DISMISSED FOR FAILURE TO JOIN NECESSARY PARTIES
UNDER FED. R. CIV. P. 12(b)(7).**

CPM should be required to join as necessary parties under Rule 19 – the physicians with whom it purportedly contracts, or the Complaint should be dismissed for failure to join necessary parties under Rule 12(b)(7). Because all of CPM's claims are based on the rights to receive reimbursement, if any, of its contracting physicians for services provided to injured workers, unless the physicians are joined, a judgment rendered in their absence would "leave an existing party [the Defendants] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest" of the absent physicians. Fed. R. Civ. P. 19(a)(1)(b)(ii). To the extent CPM's physicians have not yet been paid for any properly payable services provided to injured workers, their interests would also be protected by their participation. Fed. R. Civ. P. 19(a)(1)(B)(i).

Because the physicians are not parties to this action, it is not possible to determine in this Court whether *anyone* was ever entitled to payment of anything, without converting the District Court into a workers' compensation tribunal. Even worse, adjudication of CPM's claims requires that the Court undertake this task in the absence of the only parties who might actually be entitled to some payment – the dispensing physicians.

While the motion to dismiss under Rule 12(b)(7) may be denied if the absent parties are subject to service of process and joinder will not deprive the court of subject matter jurisdiction, the motion may be treated as a motion to compel joinder of the absent physician parties and plaintiff would be granted leave to add those parties as plaintiffs or face dismissal of the action. *Disabled Rights Action*

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1   *Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 fn. 5 (9th Cir. 2004).  The

2   Court should order joinder of the absent physicians as parties because both their

3   rights and those of the Defendants would be protected by so doing.  Fed. R. Civ. P.

4   19(a)(2).

5   <u>Conclusion</u>

6       Because the admitted effect of CPM's business practices is to raise prices for

7   prescription drugs dispensed to injured workers, there can logically be no antitrust

8   injury.  CPM is not the provider of service entitled to any payment for medications

9   allegedly dispensed by its contracting physicians in any event.  Defendants request

10   that their Motion to Dismiss the Third and Fourth Claims in the Fifth Amended

11   Complaint be in all respects granted.

12

13   Dated:  July 26, 2010     LOCKE LORD BISSELL & LIDDELL LLP

14

15           By:   */s/ Ronald D. Kurtz*

16               Peter Roan
               Ronald D. Kurtz

17              Attorneys for Defendants Redwood Fire and Casualty

18              Insurance Company; Cypress Insurance Company;
             Oak River Insurance Company; American All Risk

19              Insurance Services, Inc.; American Commercial
             Claims Administrators, Inc. and National Liability and

20              Fire Insurance Company

21

22

23

24

25

26

27

28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1

2

## CERTIFICATE OF SERVICE

3

   I, Ronald D. Kurtz, an attorney, do hereby certify that on July 26, 2010, I caused the foregoing to be served through the Court's Case Management/Electronic Case Files (CM/ECF) system upon all persons and entities registered and authorized to receive such service.

4

5

6

7   Dated: July 26, 2010            By:    /s/ Ronald D. Kurtz

8                                          Ronald D. Kurtz

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

MOTION TO DISMISS THIRD AND FOURTH CLAIMS FOR RELIEF
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*