LOCKE LORD BISSELL & LIDDELL LLP
Peter Roan (137379)
proan@lockelord.com
Ronald D. Kurtz (195918)
rkurtz@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071
Tel:   213-485-1500
Fax:  213-485-1200

Attorneys for Defendants
Redwood Fire and Casualty Insurance Company,
Cypress Insurance Company, Oak River Insurance Company,
American All Risk Insurance Services, Inc., American
Commercial Claims Administrators, Inc. and National Liability and Fire
Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| CALIFORNIA PHARMACY MANAGEMENT, LLC., a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ZENITH INSURANCE COMPANY, a California corporation; and ZNAT INSURANCE COMPANY, a California corporation,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTION. | Case No. SACV09-00242-DOC (ANx)<br>Consolidated with Case No. SACV 09-0141 DOC (ANx)<br><br>Honorable David O. Carter<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER STRIKING ALLEGATIONS OF THE FIFTH AMENDED COMPLAINT; JOINDER IN MEMORANDUM FILED BY ZENITH**<br><br>Date:     August 23, 2010<br>Time:    8:30 a.m.<br>Place:   **Courtroom 9-D**<br>            **(Santa Ana)** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 23, 2010 at 8:30 a.m., before the Honorable David O. Carter, United States District Judge, in Courtroom 9D of the United Stated Courthouse located at 411 West Fourth Street, Santa Ana, California 92701, Defendants Redwood Fire and Casualty Insurance Company, Cypress Insurance Company, Oak River Insurance Company, American All Risk Insurance Services, Inc., American Commercial Claims Administrators, Inc. and National Liability and Fire Insurance Company (collectively, the "Defendants") will and hereby do move pursuant to Rule 12(f) of the Federal Rules of Civil Procedure for an order striking certain allegations of the Fifth Amended Complaint filed by plaintiff California Pharmacy Management, LLC ("CPM") set forth below.

This motion will be and is made upon the ground that the challenged allegations seek relief that is unavailable as a matter of law.

Defendants seek an order striking those portions of the Fifth Amended Complaint that repeat allegations from the Third Amended Complaint that this Court found deficient in its October 26, 2009 denying Defendant's motion to dismiss CPM's RICO claims. While Defendants' motion to dismiss the Third Amended Complaint was denied, the Court held that many of the Third Amended Complaint's allegations improperly attempted to impose liability against Defendants based upon protected activity.[1] Among other things, the Court held that:

- "Lamentations" about the WCAB process are "entirely irrelevant." (October 26, 2009 Order at p. 5, note 1).

---

[1] The Third Amended Complaint alleged two claims for violation of the RICO laws. CPM obtained leave to add new claims for purported violation of the Sherman Act and California's Cartwright Act. Concurrently with this motion to strike Defendants are filing a motion to dismiss the new antitrust claims. By this motion, Defendants seek an order striking the Fifth Amended Complaint's allegations seeking to impose liability against Defendants for purported conduct that this Court already held constitutes protected activity and is not actionable.

- "The Court has already stated that it will not entertain Plaintiff's generalized challenge to the WCAB's dispute resolution mechanism and/or the legitimacy of WCAB proceedings.... Indeed, this Court noted that the WCAB is capable of resolving all of Plaintiff's concern about Defendants' 'stonewalling'." (October 26, 2009 Order at p. 6, n. 1).

- "The TAC alleges that pursuant to their scheme to defraud CPM, Defendants instructed their agents and representatives to submit baseless objection letters and consolidate claims before the WCAB. *See* TAC ¶ 3. As previously mentioned, these allegations are duplicative of the SAC and the conduct alleged constitutes protected conduct taken in anticipation of litigation before the WCAB." (October 26, 2009 Order at p. 6, n. 2).

The challenged allegations seek to impose liability based upon alleged conduct that this Court held in its October 26, 2009 Order is protected by the Noerr-Pennington doctrine and not actionable. Contrary to the October 26, 2009 Order and controlling law, the challenged allegations seek to impose liability based upon Defendants: (i) objecting to CPM's lien claims; (ii) defending against lien claims before the Workers' Compensation Appeals Board (the "WCAB"); (iii) and petitioning the WCAB to consolidate lien claims before one judge. The following allegations therefore constitute "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Rule 12(f) and should be stricken to avoid the expenditure of time and money that would arise from litigating spurious issues:

1. Page 2, lines 7-8: "of sham litigation, fraudulent objections and dilatory conduct."

2. Page 2, lines 12-13: "and to abuse the process of and defraud the WCAB."

///

///

///

3

NOTICE OF MOTION AND MOTION FOR ORDER STRIKING ALLEGATIONS OF FIFTH AMENDED COMPLAINT
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

3. Page 3, lines 18-19: "and to send deceptive objection letters and other communications in order to make it look like the carriers had legitimate objections to the claims."

4. Page 3, lines 20 – page 4, line 8: "Zenith and BH then instructed their agents and representatives, in concert with Zenith and at least one other insurance carrier, Everest, to consolidate all CPM lien claims before the WCAB in order to further delay payment and put CPM out of business and destroy the physician in-office medication dispensing market. Zenith's and BH's resort to the WCAB procedures was not to litigate claims in good faith, but was a subsequent component of its scheme to defraud CPM and other companies who assist physicians with their in-office medication dispensing programs and to destroy the market for in-office medication dispensing. From the inception of the fraud, Zenith and BH intended only to use the WCAB *process* to delay payment and destroy CPM and other companies who assist physicians with their in-office medication dispensing programs. Zenith and BH have never been concerned with the *outcome* of the WCAB process. The fraud and concerted action was pre-planned with the intent to initially deceive CPM and other companies who assist physicians with their in-office medication dispensing programs into thinking it was simply experiencing legitimate, individual objections to claims, as opposed to a preconceived, comprehensive and collusive plan to put them out of business."

5. Page 4, lines 9-14: "Starting in approximately 2007, Zenith and BH began objecting to CPM bills and liens by refusing to pay, or negotiate, CPM bills and liens with CPM collectors. Zenith and BH began sending objection letters that did not state the true purposes of their objections: to destroy the physician in-office medication dispensing market and to put CPM and other companies who assist physicians with their in-office medication dispensing programs out of business."

6. Page 4, lines 22-27: "The objection letters that Zenith and BH sent to CPM and other companies who assist physicians with their in-office medication

4

dispensing programs initially appeared to be contesting individual claims as a good faith effort to resolve individual claims over which Zenith and BH had honest, legitimate objections. (It is not uncommon for insurance carriers to object to claims on a variety of legitimate grounds.)"

7. Page 5, lines 7-8: "...were not objecting and litigating in the normal course of business, but..."

8. Page 5, lines 14-15: "After several months of objections, and after BH and Zenith, and Everest, sought to consolidate all of their objections (claims) before the WCAB,..."

9. Page 5, lines 23-28: "It also became apparent that Zenith and BH were defrauding the WCAB, in that Zenith and BH truly had no interest whatsoever in the actual *outcome* of any of their individual objections before the WCAB, but intended to use the WCAB *process* to stonewall CPM and shut off its cash flow. (WCAB consolidation proceedings can take many months, or even years, to resolve and can cause the demise of a company like CPM.)"

10. Page 6, lines 1-6: "Zenith's and BH"s proceedings before the WCAB were baseless because their objections, as they have eventually been revealed, were based on false assumptions that Zenith and BH knew were false. CPM fully complied with the law in implementing such programs and is not unlawfully operating a pharmacy. If CPM had the immediate opportunity to rebut all of Zenith's and BH's unfounded objections, it would prevail, as Zenith and BH well know."

11. Page 6, lines 9-10: "...before they have a chance to litigate the bogus objections of Zenith and BH."

12. Page 15, lines 3-9: "(c) defrauding the WCAB by pretending to use the WCAB procedures and consolidation process in order to resolve lien disputes, when in truth and in fact as Zenith and BH knew, Zenith and BH were not interested in the actual *outcome* of WCAB proceedings or lien disputes, but were

simply interested in abusing the process of the WCAB to delay payments and destroy CPM, other companies who assist physicians with their in-office medication dispensing programs and the physician in-office medication dispensing market."

13. Page 18, line 7: "...wrongly object and..."

14. Page 18, lines 14-15: "The Zenith model of doing business consists of providing spurious objections as a means to deny payment for valid bills and liens."

15. Page 18, lines 25-27: "Zenith and BH were initially engaged in a concerted, blanket denial of valid bills and liens submitted by CPM on behalf of its contracted physicians for tens of thousands of needed medications dispensed to over 800 injured workers;"

16. Page 19, lines 1-7: "and that they were simply objecting to individual claims on a variety of grounds, including failure to obtain appropriate signatures, among others, with the intent of resolving the objections in good faith. In truth and in fact as Zenith and BH well knew, all of the initial objections were part of a preplanned scheme and concerted action to defraud CPM, other companies who assist physicians with their in-office medication dispensing programs, and destroy the physicians' in-office medication dispensing market."

17. Page 20, lines 2-8: "The California workers' compensation system is a very slow moving system that does not have the resources to try every one of the thousands of CPM bills and liens. It relies on settlement and on the duty of insurers and claims Companies to negotiate injured worker claims in good faith. By refusing to pay or negotiate, Zenith and BH delay resolution of CPM bills and liens for years in an attempt to avoid payment altogether."

18. Page 20, lines 16-19: "...that they were objecting and negotiating in good faith, had investigated in good faith and were seeking resolution in the WCAB proceedings in good faith, when in truth and in fact, they were not."

19. Page 20, lines 21-22: "If they did, they could litigate those objections promptly in any single WCAB case."

20. Page 20, line 23 – page 21, line 5: "As alleged above, Zenith filed a petition in the WCAB to consolidate and to stay all CPM liens with Zenith based on issues never presented in Zenith objection letters. Everest did the same thing as Zenith. Zenith's and Everest's objections stated in their consolidation petitions were frivolous and based on facts not reasonably open to dispute which it would have known are false if Zenith, and ACCA or BHHC adjustors had not refused to speak with CPM collectors. BH filed a petition for joinder in Zenith's and Everest's petitions for consolidation, seeking to stay all CPM liens with BH entities, yet the issues it sought to raise were never raised by BH in its objection letters. The Zenith/Everest/BH petitions prove that their objection letters in individual cases were a sham."

21. Page 21 lines 6 – page 22, line 8: "The Zenith/Everest/BH petitions for consolidation were completely frivolous and based on obvious misrepresentations of fact. (When CPM is able to actually get its case heard before the WCAB, it generally prevails at 100% of the fee schedule). The Zenith/Everest/BH petitions claimed that CPM is operating a pharmacy but completely failed to acknowledge that California specifically authorizes physician in-office medication dispensing drugs, which California courts have held is not operating a retail pharmacy that would require licensing by the Board of Pharmacy. As already noted, CPM's licensing status is not a valid objection to physician liens. Zenith/BH/Everest were not injured by CPM's licensing status and had no standing to assert an objection based on CPM's licensing status. The Zenith/Everest/BH petitions alleged that CPM sold drugs to its physicians but CPM neither purchased drugs (its contracting physicians did) nor resold drugs to its physicians and thus could not be a wholesaler. The Zenith/Everest/BH petitions asserted that CPM was a repackager and wholesaler but CPM physicians purchased their medications from

7

a third-party wholesaler, not from CPM, and those medications were delivered directly to the physicians, not to CPM which never took title to or possession of the drugs, and did no package or repackage anything. The Zenith/Everest/BH petitions asserted that CPM employees dispensed medications but the pharmacy technicians were not CPM employees; they were the physicians' leased employees from a third-party registry. The Zenith/Everest/BH petitions say that the pharmacy technician does not notify or allow patients to obtain their prescriptions elsewhere but every patient receives the notice required by law. The Zenith/Everest/BH petitions accuse CPM of price gouging but CPM charged exactly the price authorized by statute. The Zenith/Everest/BH petitions asserted illegal referral and kickback arrangements, but there was no referral and a percentage compensation arrangement is a standard arrangement authorized by California Business and Professions Code Section 650(b). The assertion that physicians may not profit from the sale of drugs is frivolous – California Business and Professions Code Section 4170(a) and California courts applying that statute specifically have held that physicians may do so."

22. Page 22, lines 9-16: "Zenith/Everest/BH knew that their allegations in their petitions were frivolous and either knew that the factual premises are plainly false or would have learned that these facts are false if they had not refused to speak with CPM collectors, in violation of their duty to investigate and their duty to deal fairly with claimants. Zenith/Everest/BH were not interested in the truth even in resolution of the issues presented in their petitions. They filed their petitions for delay and to destroy CPM. They win by delay even if their objections ultimately are rejected or there is no resolution at all."

23. Page 22, line 17 – page, 23 line 10: "There was also no physician self-referral violation as to CPM because there was no pharmacy and there was no referral and all patients were advised in writing that they can obtain their prescriptions elsewhere. There was no legal requirement that its contracted

physicians obtain prior authorization before dispensing medications to injured workers who need them. There was no requirement that the physician or CPM be licensed by the Board of Pharmacy – physicians are authorized by law to dispense medications to their own patients in their own offices pursuant to California Business and Professions Code Section 4170(a). Neither CPM nor its contracted physicians were selling medications to the general public or operating a pharmacy and did not need to be licensed as a pharmacy. CPM contracted physicians are governed by the California Medical Board, not the Board of Pharmacy. Everything done by CPM or by pharmacy technicians were done under the supervision of the contracting physician. CPM did not purchase medications (its contracting physicians did) or resell medications to its contracting physicians. Zenith's and BH's unlicensed pharmacy contention was also frivolous and irrelevant because CPM's licensing could have no effect on the validity of physician liens. That would be like saying a physician cannot recover for X-rays because the company that sold the machine did not have a business license. CPM's licensing status caused no injury to Zenith and BH because it did not affect the price or necessity of medications. Thus, Zenith and BH plainly had no standing to assert their unlicensed pharmacy objection as an objection to the bills and liens of CPM contracting physicians."

24. Page 23, lines 19-20: "..., and the grounds stated in objection letters and in WCAB prodeedings are not the true reasons for the refusal to pay or negotitate."

25. Page 23, line 27 – page 24, line 13: "Consolidation proceedings in the WCAB take years and can result in the bankruptcy of providers and/or their management companies without ever achieving any resolution. Other insurers aware of a consolidated proceeding may seek to join and stay payment of all their liens too which further jeopardizes a provider's economic viability. Still other insurers simply delay and refuse to pay in hopes that the provider and/or

management company will go under. In one recent case, a consolidated proceeding was reversed on appeal by a WCAB panel after five years. Insurers are aware of the leverage consolidated proceedings gives to them and regularly seek to abuse that process. The WCAB requires no showing of likelihood of success, declarations or evidence before ordering a consolidation or stay. Simply a listing of common issues by insurers will do. The Zenith/Everest/BH petitions, conjure up every conceivable theory without regard to the merits because they know that, because the issues raised will take years to resolve, the process itself will destroy CPM and Zenith/Everest/BH will avoid payment altogether."

26. Page 24, lines 19-23: "It is no coincidence that BH too began objecting to CPM bills and liens around the same time that Zenith began doing so and on the same basis. As discussed above, Zenith filed a petition to consolidate CPM liens and to stay all its CPM liens, raising essentially the same issues as Everest, and BH joined in those petitions. Zenith's petition simply lists issues."

27. Page 25, lines 8-16: "In addition to filing a petition for consolidation in the WCAB to litigate the same issues raised by Everest/BH, Zenith also has filed a Los Angeles Superior Court suit seeking restitution of $2.3 million already paid on CPM liens and avoidance of payment on the $1 million in pending liens, on the same issues. Zenith, in other words, is attempting to litigate the same issues in two different forums at the same time. Zenith's Superior Court lawsuit is barred because the WCAB has exclusive jurisdiction over lien claims, and no restitution is permitted. This is yet another example of Zenith using frivolous litigation to destroy a lien claimant that has been "put in play.""

28. Page 25, lines 17-22: "Zenith and BH are intent on CPM's destruction because they believe that, if they succeed in destroying CPM, they also will succeed in ending all physician in-office medication dispensing programs for injured workers in workers' compensation cases. Zenith, along with other insurance companies such as BH and Everest, then, use the process of litigation,

NOTICE OF MOTION AND MOTION FOR ORDER STRIKING ALLEGATIONS OF FIFTH AMENDED COMPLAINT
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

rather than its outcome, to achieve an unlawful objective, which constitutes a fraud on the WCAB, as well as CPM."

29. Page 25, lines 26-28: "In reliance on the fraudulent objections of the BH, CPM has hired attorneys and incurred substantial attorneys' fees."

30. Page 30, line 23 – page 31, line 2: "(c) defrauding the WCAB by pretending to use the WCAB procedures and consolidation process in order to resolve lien disputes, when in truth and in fact as Zenith and BH well knew, Zenith and BH were not interested in the actual *outcome* of WCAB proceedings or lien disputes, but simply interested in abusing the *process* of the WCAB to delay payments and destroy CPM, and other companies that assisted physicians with their in-office medication dispensing programs."

31. Page 31, lines 13-18: "Zenith and BH put forth their objections to CPM bills and liens in writing through the U.S. mails or by telephone, and communicated with each other in writing through the U.S. mails or electronically in carrying out their fraudulent scheme to delay and deny payment of CPM bills and liens submitted on behalf of its contracting physicians."

32. Page 34, lines 1-5: "c. Uniformly making sham or pretextual objections to bills and liens for medication submitted by and through Plaintiff and others in the same business as Plaintiff and characterizing the bills and liens as false or fraudulent, without justification, individual investigation or knowledge of the merits of the bills or liens."

33. Page 34, lines 18-23: "e. Significantly changing historic patters of litigation of claims before the WCAB by uniformly stating that all cases would be taken to court by significantly increasing the number of cases challenged or litigated, and by making the WCAB litigation more expensive and burdensome in an effort to financially harm Plaintiff and others in the same business as Plaintiff and drive them out of business;"

///

34.     Page 36, lines 3-7: " b. BH/Everest and Zenith filed petitions in the WCAB to consolidate and stay all Plaintiff's liens with the intent that prolonging resolution of these liens in a consolidation proceeding for the indefinite future would cause substantial prejudice to Plaintiff by choking off Plaintiff's cash flow and to drive it out business;"

35.     Page 35, lines 4-6: "by threatening, engaging in, and encouraging sham litigation and its attendant publicity, which will seriously burden the administrative law and judicial systems.

36.     Page 36, lines 3-7: "BH/Everest and Zenith filed petitions in the WCAB to consolidate and stay all Plaintiff's liens with the intent that prolonging resolution of these lines in a consolidation proceeding for the indefinite future would cause substantial prejudice to Plaintiff by choking off Plaintiff's cash flow and to ultimately drive it out of business."

37.     Page 36, lines 8-13: "c. Zenith filed a Superior court suit raising the same issues raised in their WCAB petition to consolidate which not only causes Plaintiff to incur additional legal costs defending this frivolous lawsuit, but with the intent to creating a significant chilling effect on Plaintiff and others in the same business as Plaintiff who have been denied payment on valid bills and liens for medication dispensed to injured workers."

38.     Page 36, lines 14-17: "d. Zenith and BH attempted to persuade law enforcement agencies throughout the United States to investigate Plaintiff and others in the same business as Plaintiff as part of a plan to intimidate them and put them out of business."

39.     Page 37, lines 7-10: "In furtherance of this scheme, BH and Zenith have filed sham litigation and pleadings containing false charges against several of the largest of these companies that specialize in assisting physicians with their in-office medication dispensing programs."

///

40. Page 38, lines 7-11: "e. By initiating baseless lawsuits and proceedings against Plaintiff, alleging that Plaintiff is engaged in illegal or fraudulent business practices, BH and Zenith are deterring other companies in the same business as Plaintiff from submitting legitimate bills and liens because of the implicit threat that seeking payment will result in the company being named as a defendant in the similar lawsuit;"

Defendants also seek an order striking certain allegations in paragraph 31 of the Fifth Amended Complaint regarding CPM's assertion of how "Pre-2007 medications" are to be billed and paid under California law. This issue recently was decided adversely to CPM by the Workers' Compensation Appeals Board upon petition for reconsideration in *Mendoza v. J. Buckbinder Industry, Inc.*, Case No. AD13069602 (April 15, 2010). In *Mendoza*, the Appeals Board upheld objections by finding that the amounts charged by CPM for medication are unreasonable as a matter of law. The Appeals Board also rejected the same description of California law as appears in paragraph 31 of the Fifth Amended Complaint:

1. Page 12, line 17 — page 13, line 4: "Pre-2007 medications are billed in accordance with Labor Code Section 5307.1. That section provides for reimbursement of drugs at 100% of the Medi-Cal fee schedule for drugs and manufacturers in the Medi-Cal database. CPM, however, obtains the billing information for medications dispensed by contracted physicians from a manufacturer whose NDC number is not in the Medi-Cal base. When a manufacturer's NDC number is not contained in the Medi-Cal database, Labor Code 5307.1 provides that reimbursement will be at the fee schedule that was in effect on or before December 31, 2003. That fee schedule authorizes payment for generic drugs at 1.4 times the manufacturer's average wholesale price ("AWP"), plus a $7.50 handling fee. Brand name drugs are paid at 1.1 times the AWP plus a handling fee of $4. CPM bills its contracted physicians' pre-2007 medications at

13

exactly the fees so authorized. (The law regarding reimbursement of medications changed in March, 2007. A new, much lower amount is specified in the statute, which is not retroactive.)"

Accordingly, these allegations in paragraph 31 of the Third Amended Complaint also should be stricken.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on and before July 2, 2010.

This motion is and will be based upon this Notice, the Memorandum of Points and Authorities accompanying defendant Zenith's motion to strike identical allegations in the Fourth Amended Complaint against Zenith in the consolidated action (in which memorandum Defendants hereby join), the Court's October 26, 2009 Order, the Fifth Amended Complaint, the papers, pleadings and records on file herein, Federal Rules of Civil Procedure Rule 12(f), Local Rule 7-3 and such oral argument as may be presented at the time of the hearing.

Dated: July 26, 2010          LOCKE LORD BISSELL & LIDDELL LLP


By: /s/ Ronald D. Kurtz
    Peter Roan
    Ronald D. Kurtz
Attorneys for Defendants
Redwood Fire and Casualty Insurance Company; Cypress Insurance Company; Oak River Insurance Company; American All Risk Insurance Services, Inc.; American Commercial Claims Administrators, Inc. and National Liability and Fire Insurance Company

## JOINDER IN MEMORANDUM FILED BY ZENITH

Defendants Redwood Fire and Casualty Insurance Company, Cypress Insurance Company, Oak River Insurance Company, American All Risk Insurance Services, Inc., American Commercial Claims Administrators, Inc. and National Liability and Fire Insurance Company hereby adopt and incorporate by reference the Memorandum of Points and Authorities filed by defendants Zenith Insurance Company and ZNAT Insurance Company on July 13, 2010 in support of their motion for an order striking allegations in the Fourth Amended Complaint in that consolidated action. Defendants adopt and incorporate Zenith's memorandum because the challenged allegations in the Fifth Amended Complaint in the instant action are identical to the allegations addressed in Zenith's memorandum, and the legal grounds for striking the allegations are the same in both of these consolidated actions.

Dated: July 26, 2010     LOCKE LORD BISSELL & LIDDELL LLP


By: /s/ Ronald D. Kurtz

Peter Roan
Ronald D. Kurtz
Attorneys for Defendants
Redwood Fire and Casualty Insurance Company;
Cypress Insurance Company; Oak River Insurance Company; American All Risk Insurance Services, Inc.; American Commercial Claims Administrators, Inc. and National Liability and Fire Insurance Company

1
NOTICE OF MOTION AND MOTION FOR ORDER STRIKING ALLEGATIONS OF FIFTH AMENDED COMPLAINT
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*

# CERTIFICATE OF SERVICE

I, Ronald D. Kurtz, an attorney, do hereby certify that on July 26, 2010, I caused the foregoing to be served through the Court's Case Management/ Electronic Case Files (CM/ECF) system upon all persons and entities registered and authorized to receive such service.

Dated: July 26, 2010                    By:   /s/ Ronald D. Kurtz
                                              Ronald D. Kurtz

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1

NOTICE OF MOTION AND MOTION FOR ORDER STRIKING ALLEGATIONS OF FIFTH AMENDED COMPLAINT
*California Pharmacy v Zenith Insurance Company, et al. - SACV09-00242-DOC (ANx)*