1  Terree A. Bowers (SBN 89334)
   bowers.terree@arentfox.com
2  Matthew J. Kitson (SBN 254246)
   kitson.matthew@arentfox.com
3  ARENT FOX LLP
   555 West Fifth Street, 48th Floor
4  Los Angeles, CA  90013-1065
   Telephone:  213.629.7400
5  Facsimile:  213.629.7401

6  Donald G. Norris (SBN 90000)
   dnorris@norgallaw.com
7  NORRIS & GALANTER LLP
   555 West Fifth Street, 31st Floor
8  Los Angeles, CA  90013
   Telephone:  (213) 996-8465
9  Facsimile:  (213) 996-8475

10 Attorneys for Plaintiff
   CALIFORNIA PHARMACY
11 MANAGEMENT, LLC

12                UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15

| | |
|---|---|
| 16 CALIFORNIA PHARMACY MANAGEMENT, LLC, a California limited liability company, | Case No.  SACV 09-0242 DOC (ANx) |
| 17 | (Consolidated with SAC 09-141 DOC (ANx)) |
| 18    Plaintiff, | |
| | Honorable David O. Carter |
| 19    v. | |
| 20 ZENITH INSURANCE COMPANY, a California corporation; and ZNAT INSURANCE COMPANY, a California corporation, | **CALIFORNIA PHARMACY MANAGEMENT, LLC'S OPPOSITION TO ZENITH'S MOTION TO DISMISS THE FOURTH COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 21 | |
| 22 | |
| 23    Defendants. | |
| 24 AND CONSOLIDATED ACTION. | Date:    August 23, 2010 |
| 25 | Time:    8:30 a.m. |
| 26 | Place:   Courtroom 9-D (Santa Ana) |

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

PLAINTIFF'S OPPOSITION TO ZENITH'S
MOTION TO DISMISS
SACV 09-0242 DOC (ANx)

1    Plaintiff California Pharmacy Management, LLC hereby files its opposition

2  to the Motion to Dismiss the Fourth Amended Complaint filed by defendants

3  Zenith Insurance Company and ZNAT Insurance Company ("Zenith").  This

4  opposition is based on the attached Memorandum of Points and Authorities, Federal

5  Rule of Civil Procedure 12; and any such argument or evidence that may be

6  presented at a hearing on this matter.

7

8  Dated:  August 2, 2010                    ARENT FOX LLP

9

10                                  By: _Terree A Bowers_ with permission mjk

11                                      Terree A. Bowers
                                        Attorneys for Plaintiff
12                                      CALIFORNIA PHARMACY
                                        MANAGEMENT, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................1

FACTUAL BACKGROUND ...............................................................................3

ARGUMENT .......................................................................................................7

I.   FACTUAL ARGUMENTS ARE NOT APPROPRIATE FOR A
MOTION TO DISMISS ..............................................................................7

II.  DEFENDANTS' ILLEGAL GROUP BOYCOTT IS NOT IMMUNIZED
BY THE NOERR-PENNINGTON DOCTRINE ........................................9

III. CPM PLEASE ALL THE ELEMENTS OF A VALID ANTITRUST
CLAIM........................................................................................................15

    A. CPM ALLEGES AN ANTITRUST INJURY SUFFICIENT FOR
STANDING .................................................................................................15

    B. CPM HAS ADEQUATELY ALLEGED THAT ZENITH AND BH
FORMED AN ILLEGAL BOYCOTT IN VIOLATION OF SECTION 1 OF
THE SHERMAN ACT ................................................................................17

        1. CPM ALLEGES THAT ZENITH AND BH HAVE CUT OFF
ACCESS TO A VITAL SUPPLY NECESSARY FOR CPM AND OTHERS
TO COMPETE - PAYMENT ......................................................................18

        2. CPM HAS ALLEGED THAT ZENITH AND BH HAVE
DOMINANT POWER IN THE RELEVANT MARKET ...........................19

        3. CPM ADEQUATELY ALLEGES THAT ZENITH'S AND BH'S
ILLEGAL BOYCOTT HAS NO PRO-COMPETITIVE JUSTIFICATION........21

    C. CPM ADEQUATELY ALLEGES ANTITRUST HARM TO
SEVERAL MARKETS ...............................................................................22

        1. CPM ALLEGES INJURY IN THE WCI MARKET ............................22

        2. CPM ADEQUATELY ALLEGES INJURY IN THE IOMD
MARKET.....................................................................................................23

        3. CPM ADEQUATELY ALLEGES HARM TO THE P/PM
MARKET.....................................................................................................24

CONCLUSION ..................................................................................................25

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.,*
141 F.3d 947 (9th Cir. 1998) .................................................................... 17, 18

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
486 U.S. 492 (1988)................................................................................ 10,12, 14

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)....................................................................................7

*Assoc. General Contractors of Cal. Inc. v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983)................................................................................ 15, 17

*Atlantic Richfield v. USA Petroleum Co.,*
486 U.S. 492 (1988)................................................................................15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................ 1, 7, 8

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
182 F.3d 1096 (9th Cir. 1999) .................................................................18

*California Pharmacy Mgmt., LLC v. Zenith Ins. Co.,*
669 F. Supp. 2d 1152, 1162 (C.D. Cal. 2009) ........................................... passim

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,*
690 F.2d 1240 (9th Cir. 1982) .................................................................. 3, 13, 14

*Daghlian v. DeVry University, Inc.,*
461 F. Supp. 2d 1121 (C.D. Cal. 2006) ..................................................14

*Harman v. Valley Nat'l Bank of Ariz.,*
339 F.2d 564 (9th Cir. 1964) ..................................................................13

*High Technology Careers v. San Jose Mercury News,*
996 F.2d 987 (9th Cir. 1993) ..................................................................19

*Hughes v. Getronics Wang LLC,*
No. 97 Civ. 10356 (LAK), 2008 WL 2778885 (S.D.N.Y. July 8, 2008) .............1

*In re Flash Memory Antitrust Litigation,*
643 F. Supp. 2d 1133 (N.D. Cal. 2009)..................................................15

*Murphy Tugboat Co. v. Shipowners & Merchants Towboat, Co.,*
467 F. Supp. 841 (N.D. Cal. 1979)........................................................20

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1
LA/308311.1

- ii -

PLAINTIFF'S OPPOSITION TO ZENITH'S
MOTION TO DISMISS
SACV 09-0242 DOC (ANx)

*Newcal Indus. Inc. v. Ikon Office Solution,*
  513 F.3d 1038 (9th Cir. 2008) ........................................................ 19, 20

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,*
  472 U.S. 284 (1985).................................................................. 17, 18, 21

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.,*
  467 F.3d 283 (2d Cir. 2006)..................................................................24

*Victory v. Barber,*
  No. 1:05-cv-015-LJO-DLB, 2009 WL 2986418 (E.D. Cal. Sept. 16, 2009) .......7

*Von Brimer v. Whirlpool Corp.,*
  536 F.2d 838 (9th Cir. 1976) ...............................................................14

*Woods Exploration & Producing Co. v. Aluminum Co. of America,*
  438 F.2d 1286 (5th Cir. 1971) .............................................................12

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................................................1

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- iii -

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

"**The motion to dismiss…seems to rest on the proposition that lawsuits are germs and that _Bell Atlantic Corp. v. Twombly_, 127 S.Ct. 1955 (2007) is penicillin. Just as penicillin does not kill all germs, _Twombly_ does not kill all lawsuits, let alone require dismissal of…allegations in an otherwise legally sufficient complaint.**"[1]

Defendants' motion cannot succeed unless the Court accepts Defendants' version of the facts over the facts alleged in the complaint. While such factual arguments are appropriate at trial – or at the very least, after the parties have had the opportunity to exchange discovery – the existence of factual disputes like those raised by Defendants militates against disposition of this matter pursuant to F.R.C.P. 12(b)(6). Given the detailed and extensive allegations contained in Plaintiff's complaint, which must be taken as true for purposes of Defendants' motion to dismiss, Plaintiff has, as a matter of law, stated a plausible claim for antitrust violations under the Sherman Act and the Cartwright Act.

The Defendant insurers conspired between themselves and with other insurers and engaged in concerted action to drive CPM, and other companies who assist physicians with their in-office medication dispensing programs, out of business, thereby maximizing the profits of Zenith and BH. (Compl. ¶ 3). Defendants and their co-conspirators: (1) refused and failed to pay CPM's bills and

---

[1] _Hughes v. Getronics Wang LLC_, No. 97 Civ. 10356 (LAK), 2008 WL 2778885 (S.D.N.Y., July 8, 2008)

Arent Fox LLP
Attorneys At Law
Los Angeles

LA/308311.1
LA/308311.1                    - 1 -                    PLAINTIFF'S OPPOSITION TO ZENITH'S
MOTION TO DISMISS
SACV 09-0242 DOC (ANx)

liens (Compl. ¶¶ 6, 49-50); (2) secretly developed a "do not pay" or "block" list of companies, including Plaintiff, whose claims would automatically be denied without any investigation into the merit of any individual claim (Compl. ¶¶ 42, 45); (3) conducted secret meetings to devise and further their "agreement to ultimately put these companies out of business" (Compl. ¶ 40); and (4) used "lulling" letters and conduct to trick Plaintiff into believing that Defendants were engaging in a good faith effort to resolve the claims, when Defendants in fact had no intention of ever investigating, negotiating or paying any claims submitted by Plaintiff or others in its business. (Compl. ¶¶ 7, 37, 49, 51).

The only activities protected under the *Noerr-Pennington* doctrine are those designed to secure favorable *government* action. There is no law supporting the proposition that *Noerr-Pennington* protects Defendants' failure to pay claims, development of a "do not pay" block list, scheming and secret meetings among insurance carriers and "lulling" activity. To the contrary, just as the Second Circuit admonished defendants that "*Twombly* is not penicillin," the Ninth Circuit has warned defendants that:

> First Amendment rights may not be used as the means or the pretext for achieving "substantive evils"... The defendants' actions do not enjoy immunity, even though a part of the actions may have involved protected first amendment petitioning. **The reach of the *Noerr-Pennington* doctrine is not that extensive, and the antitrust laws are not that impotent.**

Arent Fox LLP
Attorneys At Law
Los Angeles
LA/308311.1                                    - 2 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1263-65 (9th Cir. 1982) (emphasis supplied).

Thus, while Defendants may choose to disagree with the facts alleged, Defendants cannot genuinely dispute that, when taken as true, the facts alleged by Plaintiff are sufficient as a matter of law to state a claim under the antitrust laws. Defendants' motion to dismiss should therefore be denied in its entirety.

## FACTUAL BACKGROUND

Given that the Court is already well-versed[2] in the factual and procedural background relating to this litigation, to avoid burdening the Court with lengthy papers, the following sets forth the key facts relevant to the instant motion. For more detailed background , we respectfully refer this Court to the Plaintiff's Fourth Amended Complaint, filed June 21, 2010, at Docket No. 98 (the "Complaint" or "Compl.") and the Plaintiff's opposition to the Defendants' motions to strike, filed concurrently with this motion.

CPM assists physicians with their in-office medication dispensing ("IOMD") programs for injured workers in workers' compensation cases.  (Compl. ¶ 14). Pursuant to its contracts with physicians, CPM bills and collects for medications prescribed and dispensed by CPM-contracting physicians to injured workers in

---

[2] Zenith previously  moved to dismiss the SAC pursuant to F.R.C.P. 12(b)(6), asserting, *inter alia*, that CPM had failed to state a claim for relief under the RICO statute.  The Court rejected Defendants' claims and held that, "In short, Plaintiff alleges that Defendants intended to deceive CPM about Defendants' good faith in resolving CPM's claims and using the WCAB process. Accordingly, the Court finds that the SAC's allegations are sufficient to support a RICO claim..." *California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1162 (C.D. Cal. 2009) (Carter, J.).

Arent Fox LLP
Attorneys At Law
Los Angeles
LA/308311.1                          - 3 -          PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

workers' compensation cases.  (Compl. ¶¶ 14, 25-27).  Defendants and their co-conspirators are insurers who sell workers' compensation insurance. (Compl. ¶¶ 15-24). CPM-contracting physicians treated injured workers and purchased medications for them in reliance on the fact that employers through workers' compensation insurance or self-insurance have made funds available to Defendants and their co-conspirators to pay valid medical claims of injured workers who are entitled to that premium revenue. (Compl. ¶ 30). CPM submits medication bills/liens for reimbursement to workers' compensation carriers on behalf of its physicians.  (Compl. ¶ 31).  If an insurer fails to pay, CPM files a lien with the California Workers' Compensation Appeals Board ("WCAB").  (Compl. ¶¶ 2, 37).

Beginning in March 2007, Defendants and their co-conspirators undertook a scheme designed to shut off CPM's cash flow, eliminate CPM's ability to compete in the market, and ultimately to drive it out of the market and out of business. (Compl. ¶¶ 4, 8).  Defendants' ultimate plan was to destroy the market for companies that assist physicians with IOMD programs in its entirety.  (Compl. ¶ 84).  Plaintff has even alleged the motive for Defendants' scheme, namely, that Defendants and their co-conspirators "strongly dislike the physician [IOMD] programs" because "they did not want to pay the prices legally submitted by CPM," even though the programs and prices submitted are explicitly authorized by law. (Compl. ¶¶ 3-4).

Simply stated, Defendants stopped paying the claims submitted by CPM and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                          - 4 -                    PLAINTIFF'S OPPOSITION TO
                                                          DEFENDANTS' MOTION TO STRIKE
                                                           SACV 09-0242 DOC (ANx)

others in its business. This is plainly alleged in the Complaint, along with specific information concerning the number of claims denied over a certain time period.[3]

To ensure that payments to CPM and others in its business would be denied, Defendants' co-conspirators developed a list of "blocked vendors" which included most, if not all, of the vendors in CPM's business, including CPM. (Compl. ¶¶ 42, 45). Once a vendor was included on the block list, the claims examiners lost the authority to pay bills/liens submitted by that vendor, which payments were automatically blocked without any investigation into the claim. (*Id.*). Once a vendor was added to that block list, it was never removed. (*Id.*).

The block list was given to the managers and claims personnel of Defendants' co-conspirators, including a confidential informant formerly employed there, and those individuals were instructed not to pay any claim submitted by CPM or any other vendor appearing on the block list. (Compl. ¶ 44). Defendants developed their own block list, and, not coincidentally, stopped paying all claims submitted by CPM at or about the same time its co-conspirators' block list prohibited payments to CPM. (Compl. ¶ 45). Defendants and their co-conspirators "believed that other insurance carriers would learn about which medical providers were on their block lists and would also begin to wrongly object and cease to pay

---

[3] *See, e.g.,* Compl. ¶¶ 6, 49-50 ("adjustors for Zenith and BH systematically began denying CPM charges…and offering fraudulent explanations for denying all CPM bills and liens for medications dispensed to injured workers in over 800 currently pending WCAB cases. Zenith's and BH's adjustors sometimes refused to speak with CPM collectors and, when they did, offered to pay $0 or $1, or referred CPM collectors to outside attorneys who claimed not to have the file and who never called back").

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 5 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

CPM and other companies who assist physicians with their [IOMD] programs, in order to choke off their cash flow and ultimately drive them all out of business." (Compl. ¶ 47).[4]

Finally, Defendants used "lulling" letters to trick Plaintiff into believing that Defendants were attempting in good faith to resolve CPM's claims, when in reality, Defendants had collectively and internally announced their intention not to investigate, negotiate or pay *any* claims submitted by Plaintiff or others in its business. This ensured that Defendants would continue to collect premiums, while avoiding the payment of benefits. This scheme was thus designed to (and did) tie up Plaintiff's cash flow, line Defendants' own pockets with premium, and ultimately drive Plaintiff and others out of the market. (Compl. ¶ 7, 37, 49, 51).

CPM has alleged in great detail and in numerous instances throughout the Complaint how Zenith's and BH's actions harmed it directly while violating the antitrust laws.[5] Under a heading conspicuously labeled "Harm to Consumers and Harm to Competition," Plaintiff also details the various ways in which Defendants' illegal group boycott/concerted refusal to deal harmed the physicians and their

---

[4] The Complaint also details the secret meetings held between Defendants and their co-conspirators as part of their scheme, providing in detail the "who, what, when and where" of those meetings. *See, e.g.,* Compl. ¶¶ 40-49.
[5] First, CPM alleges that Zenith's and BH's actions of refusing to pay its submitted claims has injured CPM by significantly impairing its cash flow, operations, and business relationships. (Compl. ¶¶ 8, 10, 14, 61-62, 83-84). Second, CPM also alleges how Zenith and BH created a block list in order to ensure that payments to CPM were automatically blocked and to blacklist it among other insurers and to encourage other insurers to discontinue payments to CPM, in the hopes of eventually driving CPM out of business. (Compl. ¶¶ 4-5, 38, 40-49, 58, 83). CPM also describes how Zenith used the WCAB process to lull CPM into thinking that Zenith was operating "business-as-usual" when it fact it was engaging in anticompetitive tactics to ultimately drive CPM out of business. (Compl. ¶¶ 7, 37, 49).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                    - 6 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

injured worker-patients.[6]

## ARGUMENT

### I.   Factual Arguments Are Not Appropriate for a Motion to Dismiss

A court grants a motion to dismiss only if the allegations contained in the complaint are insufficient to sustain a cause of action.  Under the *Twombly/Iqbal* standard, particularly for antitrust actions, a complaint survives a motion to dismiss if it contains "enough factual matter (*taken as true*) to suggest that an agreement was made."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added).  *Twombly* and *Iqbal* do not require a heightened fact pleading standard, but merely require plaintiff to allege sufficient facts to "raise a right to relief above the speculative level."  *Id.* at 545; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) Under this standard, which is based on FRCP Rule 8, the plaintiff need not establish how probable it is to ultimately succeed in proving its claims.  A well-pled complaint can survive a motion to dismiss, even if neither the court, nor the defendant, believes that the plaintiff will eventually prevail on its claims.  *Twombly*, *id.* at 1965.  The *Twombly* and *Iqbal* standards should not be conflated with the summary judgment standard.  Summary judgment involves the parties and the court making legal and factual arguments and conclusions; a motion to dismiss does not. *See Victory v. Barber*, No. 1:05-cv-01578-LJO-DLB, 2009 WL 2986418 at *2

---

[6] *See* Compl. ¶¶ 62-64. Plaintiffs further allege, in detail, how Defendants' anticompetitive activity has harmed the injured worker-patients and the physicians by, *inter alia*, eliminating the in-office medication dispensing program and thus the patients' ability to obtain needed medications in-office, and leaving doctors and patients with no choice but to obtain needed medications from traditional pharmacies. (Compl. ¶ 85).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                  - 7 -                  PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

1   (E.D. Cal. Sept. 16, 2009). For this reason, in considering a motion to dismiss, the

2   court accepts as true plaintiff's allegations, and should deny the motion to dismiss if

3   the allegations at least set forth the "specific time, place, or person involved in the

4   alleged conspiracies . . . ." *Twombly, id.* at 564, n. 10.  CPM has satisfied this

5   pleading standard.

6

7

8       CPM alleges that Zenith, BH, Everest, and other insurance companies, along

9   with their agents and representatives, began an illegal conspiracy beginning in

10  March 2007 which continues through today.  Compl. ¶¶ 1, 3-5, 17-24.  CPM further

11  alleges that Zenith, BH, and the other conspirators "conducted meetings or

12  otherwise regularly communicated about the terms of their conspiracy, and on how

13  to injure CPM and other similarly-situated IOMD programs.  Compl. ¶¶ 40-41.

14  CPM also alleges throughout the Complaint how the conspirators created "blocked

15  vendor lists" to facilitate their illegal boycott (Compl. ¶¶ 42-48), how they

16

17  communicated with other industry players to join the boycott (Compl. ¶¶ 47-48),

18  and how Zenith and BH withheld millions of dollars in revenue from CPM which

19  created a serious cash flow problem.  (Compl. ¶¶ 49-51).  Last, CPM alleges that

20  the conspirators "agreed and pledged to engage in the conduct described . . .

21  because they believed that a single insurance company acting alone might not be

22  able to ultimately put companies like CPM out of business." (Compl. ¶ 41).  Thus,

23  CPM explains the "who, what, when, where, and why" of its antitrust claims.

24

25

26

27

28      Zenith's motion is replete with factual arguments, but patently missing are

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
LA/308311.1                    - 8 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

any *legal bases* for dismissing the Complaint. A motion to dismiss is not the proper avenue through which to make factual arguments—it is to test the plaintiff's allegations to ensure that they are sufficient to entitle plaintiff to discovery.  At this stage, the Court should look only to the sufficiency of CPM's allegations, taken as true.   CPM's allegations concerning the relevant market, Zenith's and BH's dominant power in the relevant market (Compl. ¶ 80), and the allegations concerning the "who, what, when, where, and why" of the illegal antitrust conspiracy/boycott (Compl. ¶¶ 78-90) are the type of allegations that make CPM's antitrust claims plausible. As such, Zenith's motion should be denied.

## II.   Defendants' Illegal Group Boycott Is Not Immunized By The *Noerr-Pennington* Doctrine

Defendants engaged in a group boycott/concerted refusal to deal in violation of the Sherman Act, in a scheme designed to ultimately drive Plaintiff and others in Plaintiff's business out of the market by, *inter alia*:

- Denying payment on all CPM bills and liens (Compl. ¶ 6, 49-50);

- Developing a "do not pay" list to *automatically* block *all claims* submitted by Plaintiff and others in its business (Compl. ¶¶ 42, 45); and

- Using "lulling" letters and conduct to pretend that they were evaluating each claim on its merits, when Defendants had collectively and internally announced their intention not to pay *any* of Plaintiff's claims.  (Compl. ¶¶ 7, 37, 49, 51).

By contrast, the *Noerr-Pennington* doctrine only provides immunity from antitrust liability for "those who petition any department of the government for redress."  *California Pharmacy Mgmt., LLC v. Zenith Ins. Co.* *("CPM I")*, 669 F.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                                    - 9 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

Supp. 2d 1152, 1167 (C.D. Cal. 2009) (Carter, J.)   (internal quotation/citation omitted).   No immunity attaches where the conduct of defendants is private action, or otherwise not aimed at procuring favorable government action. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988).

Thus, the *Noerr-Pennington* doctrine has no bearing on, and does not immunize Defendants' private conduct in connection with Defendants' illegal group boycott/concerted refusal to deal.   Defendants' *Noerr-Pennington* diversion is particularly inappropriate given the Court's prior ruling in this case:

> [T]his Court declines to prospectively apply the *Noerr-Pennington* doctrine to activity that may have been conducted antecedent to and without contemplation of litigation before the WCAB.  If the SAC's allegations are taken as true, then Defendants' fraudulent conduct predated their protected petitioning activity, such that the WCAB process was merely a vehicle to effectuate Defendants' scheme. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 506-07, 108 S. Ct. 1931 (1988) ("[T]he mere fact that an anticompetitive activity is also intended to influence governmental action is not alone sufficient to render that activity immune from antitrust liability.").

*CPM I*, 669 F. Supp. 2d at 1168.

In *CPM I*, the Court acknowledged Plaintiff's allegations that "Defendants conspired with other carriers and devised a scheme to put CPM out of business and destroy the physician IOMD program.   To effectuate their scheme, Defendants allegedly communicated to their agents and representatives and the agents and representatives of other carriers the manner in which the scheme to defraud was to be implemented." *Id.* at 1158 (quotations and citations omitted).   These allegations remain in the Complaint (*see* ¶ 4), and are supported with further allegations detailing that, pursuant to this scheme, Defendants, among other things: (1) ceased

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 10 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

payment for all claims submitted by CPM; (2) developed a "do not pay" list and automatically blocked payments to Plaintiff and others in its business; and (3) delivered "lulling" letters to CPM offering pretextual objections to CPM claims. (*See, e.g.,* Compl. ¶¶ 6, 7, 37, 40-51).

Defendants now argue – contrary to law and to the Court's earlier decision in *CPM I* – that Defendants' subsequent activity in the WCAB proceedings shields them entirely from any liability for their illegal group boycott/concerted refusal to deal. First, Defendants were not the initiators of the WCAB lien proceedings. As alleged in the Complaint, *CPM – after, and as a result of* Defendants' failure to pay claims pursuant to Defendants' scheme – filed liens in the WCAB, in response to which Defendants moved for consolidation. (Compl. ¶¶ 2, 37).

Second, even if, as a result of the *Noerr-Pennington* doctrine, Defendants' consolidation petition alone would not support a Sherman Act claim, the rest of Defendants' conduct (*i.e.,* the failure to pay claims, the development and implementation of the "block list," the secret meetings alleged, the failure to evaluate individual claims in good faith and "lulling" activity designed to wrongfully obtain and retain premium revenue) – which *precipitated* CPM's filing of the liens in the WCAB – is not protected activity, and properly forms the basis for Plaintiff's Sherman Act claim. Indeed, Defendants' "lulling" conduct was arguably designed, not to result in any petitioning activity, but rather to discourage CPM from taking further action or submitting further claims/liens against

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 11 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

Defendants in the WCAB, to wrongfully retain premium revenues and ultimately to drive Plaintiff out of the market and out of business.[7]

The law provides that a defendant cannot immunize itself under *Noerr-Pennington* from its illegal group boycott/concerted refusal to deal just by strategically adding an incidental "petitioning" component to its activity; in other words, the mere presence of some petitioning activity, where that activity is not the crux of the scheme, is insufficient to confer *Noerr-Pennington* immunity upon the conspirators. *See, e.g., Allied,* 486 U.S. at 503 ("We cannot agree with petitioner's absolutist position that the *Noerr* doctrine immunizes every concerted effort that is genuinely intended to influence government action"); *CPM I,* 669 F. Supp. 2d at 1168 (quoting *Allied* for the proposition that "the mere fact that an anticompetitive activity is also intended to influence governmental action is not alone sufficient to render that activity immune from antitrust liability").

The Fifth Circuit has emphasized that:

> The policies of the Sherman Act should not be sacrificed simply because defendants employ governmental processes to accomplish anti-competitive purposes. Otherwise, with governmental activities abounding about us, government could engineer many to antitrust havens.

*Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d 1286,

---

[7] The Court noted in declining to apply the *Noerr-Pennington* doctrine to dismiss the RICO complaint, that Defendants' "scheme to defraud was allegedly designed well in advance of litigation before the WCAB; indeed, Plaintiff alleges that Defendants conspired with other carriers to put CPM out of service and implemented a scheme to deny all payments to CPM and fabricate pretextual objections to CPM's claims. It was only in effectuating this scheme that Defendants allegedly submitted fraudulent objection letters and issued blanket denials of CPM's claims in telephone calls with CPM's collectors. In short, Plaintiff alleges that Defendants intended to deceive CPM about Defendants' good faith in resolving CPM's claims and using the WCAB process. Accordingly, the Court finds that the SAC's allegations are sufficient to support a RICO claim..." *CPM I,* 669 F. Supp. 2d at 1162.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                           - 12 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

1296-97 (5th Cir. 1971). Similarly, in *Harman v. Valley Nat'l Bank of Ariz.*, the Ninth Circuit acknowledged that "*Noerr* does not necessarily bar relief" where "[t]he complaint can be read as alleging that appellees' joint effort to influence the Attorney General was *but one element in a larger, long-continued scheme to restrain and monopolize....*" 339 F.2d 564, 566 (9th Cir. 1964) (emphasis added); *see also Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982) (antitrust "violations do not become immune simply because the defendants used legal means ... as a means to enforce the violations").

In *Clipper Exxpress*, the Ninth Circuit reversed the Northern District of California's dismissal of the complaint, held that *Noerr-Pennington* did not immunize defendants' conduct, and emphasized that "[e]ven if the protests to the ICC were legitimate, if they were part of a larger antitrust conspiracy, the conspiracy is subject to the antitrust laws." 690 F.2d at 1264. In allowing the Plaintiffs' antitrust claims to proceed, the *Clipper Exxpress* court made clear that "[a]n antitrust violation does not enjoy immunity simply because an element of that violation involves an action which itself is not illegal." *Id.* at 1263. The *Clipper Exxpress* court explicitly recognized "the existence of liability for antitrust violations, even though an *integral part* of the violation may involve otherwise legal and protected activity." *Clipper Exxpress*, 690 F.2d 1263 (emphasis supplied) (citation omitted). The *Clipper Exxpress* court went even farther, noting:

First Amendment rights may not be used as the means or the pretext

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                    - 13 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

1    for achieving "substantive evils"…which the legislature has power to
2    control.  Certainly the constitutionality of the antitrust laws is not open
3    to debate…If the end result is unlawful, it matters not that the means
4    used in violation may be lawful.

5  *Id.* at 1263-64 (citation omitted).

6      Here, any petitioning activity in the WCAB came long after the group

7  boycott/concerted refusal to deal was concocted and implemented, and the WCAB

8
9  proceedings were merely used as a subsequent means to continue the violation.[8]

10  The *Clipper Exxpress* holding definitively disposes of Defendants' *Noerr-*

11  *Pennington* defense as a basis for their motion to dismiss.

12
13  Defendants' memorandum in support of its motion to dismiss lacks any case

14  in which the *Noerr-Pennington* doctrine was applied to confer immunity under

15  these circumstances.[9]   Defendants cannot explain how failure to pay claims,

16
17  development of a "do not pay" block list, scheming and secret meetings among

18  insurance carriers and "lulling" activity (all of which preceded any "petitioning

19  activity") are protected by the *Noerr-Pennington* doctrine.  The *Noerr-Pennington*

20
21  doctrine arises out of the First Amendment right to petition government, and *not*

22  any right to engage in an illegal group boycott.  *See, e.g., Allied*, 486 U.S. 492;

23
24  [8] As in *Clipper Exxpress*, the plaintiff "is not challenging merely the petitioning activity," but instead "challenges the defendants' entire course of conduct," which, as alleged, resulted in violations of the Sherman Act. *Id.* at 1265. Thus, as in *Clipper Exxpress*, "[t]he defendants'
25  actions do not enjoy immunity, even though a part of the actions may have involved protected first amendment petitioning.  The reach of the *Noerr-Pennington* doctrine is not that extensive,
26  and the antitrust laws are not that impotent." *Id.*
   [9] We note that, under long-established law, "use of new material in a reply brief transgresses
27  against the canons of fair forensics," [*Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976) (citation omitted)] because, *inter alia*, it "robs" the opposing party "of the opportunity…to
28  present an analysis of the pertinent legal precedent that may compel a contrary result." *Daghlian v. DeVry University, Inc.*, 461 F. Supp. 2d 1121, 1144, n.37 (C.D. Cal. 2006) (citation omitted).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
LA/308311.1                    - 14 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

*Clipper Exxpress*, 690 F.2d at 1254-55.   Defendants' group boycott/concerted refusal to deal is not immunized by *Noerr-Pennington*, and Plaintiff's antitrust claims against it – like the earlier RICO claims – should be allowed to proceed.

### III.   CPM Pleads All the Elements of a Valid Antitrust Claim

CPM adequately states all the elements to sustain an antitrust claim under *Twombly* and *Iqbal*.  Zenith's disagreement with CPM's facts is inappropriate for a motion to dismiss and Zenith's motion should be denied.  CPM should have the opportunity to engage in discovery to prove the veracity of its claims.

### A.   CPM Alleges An Antitrust Injury Sufficient for Standing

A plaintiff must establish standing to bring an antitrust action by alleging that it has personally been injured by the defendant's conduct, in addition to suffering from market injury.  The plaintiff's antitrust injury must be "of the type the antitrust laws are intended to prevent," and must flow directly from the defendant's anticompetitive behavior.  *Atlantic Richfield v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990); *In re Flash Memory Antitrust Litigation*, 643 F. Supp. 2d 1133, 1153 (N.D. Cal. 2009).  In addition, a plaintiff must show that the injury directly affects its business "in the market in which the trade is constrained."  *Assoc. General Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 539 (1983).  In sum, plaintiff's injury must be in "the chain of causation" between the predator firm's actions and the market restraints.  *Id.* at 541.

CPM has alleged in great detail how Zenith's actions harmed it directly while

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 15 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

violating the antitrust laws.  CPM alleges that Zenith's refusal to pay submitted claims has significantly impaired CPM's cash flow, operations, and business relationships.  Compl. ¶¶ 8, 10, 14, 61-62, 83-84.  CPM also alleges how Zenith and BH created a "block list" to ensure that payments to CPM were automatically blocked, and to blacklist CPM among other insurers.  Compl. ¶¶ 4-5, 38, 40-49, 58, 83.  CPM also explains how Zenith lulled CPM into thinking that Zenith was operating "business-as-usual" when it was actually engaging in anticompetitive tactics to ultimately drive CPM out of business.  Compl. ¶¶ 7, 37, 49.  These allegations satisfy CPM's burden to allege harm/antitrust standing.

Additionally, CPM alleges that its injuries flow *directly* from Zenith's conduct by alleging that "Zenith and BH have always disliked the physician [IOMD] business," and that Zenith developed and implemented a scheme to destroy this market, and to ultimately put "CPM and other companies . . . out of business . . . ."  Compl. ¶¶ 3-4, 6-7, 10, 37-38, 49-50.  These allegations connect CPM's status as an IOMD provider directly to the injury it suffered at the hands of Zenith, and establish the connection between Zenith's actions and CPM's harm.

Zenith cites several cases which are factually distinguishable or inoperative to this case. For example, *Atlantic Richfield* dealt with a vertical, maximum-price-fixing agreement, and the court held that Respondent ARCO was not harmed by any anticompetitive effects because ARCO was part of a non-predatory price system which actually *helped* it and other competitors, thereby *increasing*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                                          - 16 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

competition.  *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (emphasis added). CPM's case is different from *Atlantic Richfield* because CPM specifically alleges that Zenith's and BH's illegal boycott actually *hurts* CPM *and* hurts competition in the market, thereby *decreasing* competition.

In *Associated General Contractors*, the Union claimed that it had suffered antitrust injury because the Union members/contractors suffered injury. The court rejected this argument, and held that any injuries to the Union were indirect of whatever harm was suffered by the union members. *Id.* at 541. CPM is not alleging that a third party is causing injury to its representative, which then injures it.  CPM alleges that because it is the party to whom the insurers issue reimbursements, it suffers direct injury when the insurers stop making those reimbursements.[10]

CPM's Complaint includes sufficient allegations that, taken as true, demonstrate that Zenith and BH harmed CPM's business and caused CPM direct injury.  This is the type of injury that must be alleged for antitrust standing.

**B.    CPM Has Adequately Alleged That Zenith and BH Formed An Illegal Boycott In Violation of Section 1 of the Sherman Act[11]**

To establish the existence of an illegal boycott, the plaintiff must allege that

---

[10] Zenith wrongly argues that only the physicians can suffer any possible harm from an illegal restraint on trade in the relevant market. The physicians have a business relationship with CPM that is separate from the relationship that CPM has with insurers who are statutorily required to reimburse CPM's valid workers' compensation claims.  Thus, when the insurers establish a boycott against CPM, CPM suffers the direct effects of that boycott, not the physicians.

[11] Zenith states the incorrect standard for analyzing a group boycott in its section II, B.  CPM has specifically alleged that Zenith and BH engaged in an illegal boycott, not just a Section 1 violation.  CPM's allegations are sufficient to survive the pleading stage based on the correct boycott standard as pronounced by the Supreme Court and the Ninth Circuit. *See Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284 (1985); *see also Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*, 141 F.3d 947 (9th Cir. 1998).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                              - 17 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

(1) the boycott cuts off access to a supply, facility, or market necessary for the victim firm to compete; (2) the boycotting firm possesses a dominant market position; and (3) the anticompetitive practices are not plausibly aimed at efficiency or promoting competition.   *Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*, 141 F.3d 947, 950 (9th Cir. 1998) (citing *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 293-94 (1985)). CPM has alleged a plethora of facts to satisfy these three requirements.

> 1.   <u>CPM Alleges that Zenith and BH Have Cut Off Access To A Vital Supply Necessary for CPM and Others To Compete—Payment</u>

The first defining element of an illegal boycott is that the dominant firm cuts off access of an essential supply for the injured firm.  This requirement focuses on whether there are substitutes or other sources by which the injured firm may obtain the materials necessary to compete effectively in the market.  *See generally Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1103 (9th Cir. 1999).  A lack of viable substitutes for the materials that are stripped from the market by the dominant firm is evidence of an illegal boycott designed to stifle competition.  *Id.* (citing *Northwest Wholesale Stationers*, 472 U.S. at 294).  Also, another sign of cutting off an essential supply is when the dominant firm coerces suppliers or customers to "deny relationships that the competitors need in the competitive struggle."  *Northwest Wholesale Stationers*, 472 U.S. at 294.  When this occurs, the boycotting firm disables the injured firm from competing on a fair and open basis.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                           - 18 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

CPM has alleged that dominant firms Zenith and BH cut off access to the most vital necessity CPM and other companies need to survive in the IOMD market—money. CPM bases its Third Claim for Relief on the allegations that Zenith and BH have discontinued payments to it and have coerced other insurers to do the same, all with the intent of ultimately driving CPM and others out of business. Complaint, ¶¶ 4-11, 37-38, 40-50, 58, 61, 83-88. Payment or reimbursement by the insurers is the *primary* material/supply needed to succeed in the IOMD market. CPM's allegations that Zenith cut off this supply of money and coerced others to do the same satisfies the first element of an illegal boycott.

2. CPM Has Alleged that Zenith and BH Have Dominant Power in the Relevant Market

A plaintiff must also plead that the boycotting firm has dominant power in the relevant market. The relevant market must be a product market, and must encompass "the product at issue as well as all economic substitutes for the product." *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008). By this definition, the relevant market is defined by "the cross-elasticity of demand between the product itself and substitutes for it," and includes the sellers and producers of products who have "actual or potential ability to deprive each other of significant levels of business." *Id.* Courts hold that the relevant market is generally an issue of fact to be decided at trial. *Id.*; see also *High Technology Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993). Thus,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 19 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

plaintiff's allegations concerning the relevant market are sufficient so long as the relevant market is plausible, and so long as the relevant market allegations "do not suffer a fatal defect." *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d at 1045. In terms of dominance, the allegations must state that the boycotting firm has dominant power—which means the type of power that "tend[s] to inhibit the free choice of customers" or which "tend[s] to foreclose access of competitors to the market." *Murphy Tugboat Co. v. Shipowners & Merchants Towboat, Co.*, 467 F. Supp. 841, 861 (N.D. Cal. 1979).

As to the relevant market, CPM alleges that the relevant market is the "[IOMD] market in the State of California; and additionally, or in the alternative, the relevant market is the market that includes (a) traditional pharmacies . . . and (b) pharmacy management companies like CPM . . . ." Compl. ¶ 78. Thus, CPM alleges three markets that have sustained damage as a result of Zenith's scheme.

CPM also adequately alleges Zenith's and BH's dominance in the relevant markets by detailing how they have used their size and reach throughout the markets to impose an *in terrorem* effect on competitors. Compl. ¶ 85. CPM alleges that "defendants possess a dominant market position and influence and direct the conduct of all carriers in the workers' compensation field." Compl. ¶ 80. CPM further alleges that Zenith, BH, and several other co-conspirators together possess an overwhelming power to "use[] [their] resources in major assault on physician in-house medication dispensing programs." Compl. ¶ 64. These allegations, taken as

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 20 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

true, paint a picture of two dominant firms working to discourage and displace CPM and smaller, less powerful firms for anticompetitive purposes. CPM has therefore pled dominant power in the relevant market.

> 3. CPM Adequately Alleges That Zenith's and BH's Illegal Boycott Has No Pro-Competitive Justifications

The third element of an illegal boycott requires the boycotting firm to offer a plausible argument that it intended to "enhance overall efficiency and make markets more competitive." *Northwest Wholesale Stationers*, 472 U.S. at 294. Absent pro-competitiveness justifications, the boycott is illegal.

In this case, CPM has alleged that Zenith and BH operated a per se illegal boycott, or in the alternative, an illegal boycott subject to the Rule of Reason analysis. Compl. ¶ 82. Zenith has done nothing in its motion to rebut this categorization. Zenith argues that "it is at least equally likely that Zenith's objections, as well as [payment] objections by other insurers, were motivated by lawful, independent decisions." *Id.* at p. 15. However, this is a factual disagreement, and the Court should reject Zenith's factual arguments at this stage of the proceedings. CPM has alleged that these boycotting firms strip existing companies of cash flows, utilize a flawed WCAB system to put a litigation stranglehold on such firms, and coerce other companies to refuse to deal with the victim firms, all with the purpose of eventually driving the victim firms out of business. These allegations satisfy the showing of anticompetitiveness.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 21 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

Furthermore, CPM alleged that if left unchecked, the boycott will: (i) stifle growth of already-operating IOMD companies; (ii) decrease total output for medication dispensing services; (iii) limit consumers' choice for medication dispensing services; (iv) create barriers to entry for new IOMD companies; and (v) eventually drive the existing IOMD companies out of business.  *See* Compl. ¶ 85. CPM's allegations demonstrate that there are no pro-competitive justifications for Zenith's boycott.  Thus, the allegations suffice to survive a motion to dismiss.

**C.**    **CPM Adequately Alleges Antitrust Harm to Services In Several Markets**

Zenith's contentions that CPM fails to allege antitrust injury in various markets systematically fails given the breadth of allegations CPM provides in the Complaint as to Zenith's harm to these markets.  When the Court accepts CPM's allegations as true, they are adequate to allege antitrust injury to services in several markets.

1.    CPM Alleges Injury in the WCI Market

As to the first market in CPM's complaint, CPM identifies the WCI market as the "workers' compensation insurance market in the State of California." Compl. ¶ 86.  Next, CPM alleges that its personal harm results from Zenith and BH coercing other insurers to discontinue payment to CPM and other companies, thereby depriving the companies of much-needed cash flows.  *Id.*   Then, CPM alleges harm to the market—explaining that the Zenith and BH boycott harms

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 22 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

competition because without the illegal constraint, the carriers "would compete with each other for business as companies would want to sign policies with insurers that have a reputation for paying promptly on claims." *Id.* All of these allegations demonstrate injury to competition and to CPM personally.

CPM also alleges that it directly competes in the WCI market as a main source of prescription medications for injured workers who are covered by California Worker's Compensation Insurance. Compl. ¶ 29. Injured workers visit physicians, who have contracted with CPM for their IOMD services. Compl. ¶ 30. CPM is one of the competing sources where injured workers can go for prescription medications. Compl. ¶ 63. CPM is a direct participant in and member of the WCI market—and competes with others in the WCI market. CPM thus adequately alleges harm directly to itself and the WCI market.

> 2. CPM Adequately Alleges Injury in the IOMD Market

Based on practically the same flawed logic, Zenith argues that CPM does not allege an antitrust injury in the IOMD market. Zenith is wrong, given CPM's multiple allegations concerning its participation in this market (Compl. ¶¶ 3-10, 14, 25-27, 31, 37-38, 41-43, 47, 49-51, 56, 61-63, 78, 83). Additionally, CPM has adequately alleged the direct connection between Zenith's and BH's concerted refusal to deal and the impact it has had on CPM's business and the market as a whole. Compl. ¶¶ 3-11, 14, 37-38, 40-52, 54, 56-58, 62-63, 81-85. CPM alleges that, left unchecked, the boycott will be the ultimate demise of CPM and other

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                                        - 23 -                    PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

similarly-situated companies in the IOMD market. Compl. ¶¶ 1-11, 14, 37-38, 40-51, 54, 56-58, 61-64, 81, 83-87.  This is the type of direct injury in the IOMD market that the antitrust laws are meant to address.

Zenith compares CPM to the plaintiff in *Paycom Billing Servs., Inc. v. Mastercard Int'l*, Inc. by arguing that CPM is an agent for the physicians, and therefore cannot suffer antitrust injury in the identified market.  However, simply because CPM conducts business with the physicians' market does not merge the two markets. The IOMD and the physicians market remain separate and distinct markets.  As such, CPM has alleged antitrust harm in the distinct IOMD market as a direct competitor in that market, not merely as an agent.

3.     CPM Adequately Alleges Harm to the P/PM Market

CPM defines the Pharmacy/Pharmacy Management ("P/PM") market as (a) traditional pharmacies that dispense medication to injured workers in workers' compensation cases, and (b) pharmacy management companies like CPM that assist physicians . . . with their [IOMD] programs for injured workers in workers' compensation cases.  Compl. ¶¶ 78-79. Zenith wrangles with the merits of CPM's definition of the P/PM market, yet fails to show the basis as to why CPM's Complaint should be dismissed.  CPM alleges that it is one of the options injured workers have for filling prescriptions through the Workers' Compensation Insurance system, in addition to traditional pharmacies.  Compl. ¶¶ 85, 87.  CPM also alleges that Zenith and BH have "a dominant market position and influence"

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1

- 24 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)

that takes away consumers' choices to choose between these options.  Thus, CPM alleges a plausible relevant market, and demonstrates harm in that market.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss or stay in all respects.

Dated:  August 2, 2010                      ARENT FOX LLP

By: _Terree A Bowers_ with permission mjk

Terree A. Bowers
Attorneys for Plaintiff
CALIFORNIA PHARMACY
MANAGEMENT, LLC

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/308311.1                      - 25 -                      PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
SACV 09-0242 DOC (ANx)