1   LARY ALAN RAPPAPORT (SBN 87614)
    PROSKAUER ROSE LLP
2   2049 Century Park East, 32nd Floor
    Los Angeles, California 90067-3206
3   Tel:  (310) 557-2900 Fax:  (310) 557-2193
    lrappaport@proskauer.com
4
    DEAN HANSELL (SBN 93831)
5   ELLA R. SERRANO (SBN: 228216)
    DEWEY & LEBOEUF LLP
6   333 South Grand Avenue, Suite 2600
    Los Angeles, California  90071-1530
7   Tel:  (213) 621-6000 Fax:  (213) 621-6100
    dhansell@dl.com; eserrano@dl.com
8
    Attorneys for Defendants **ZENITH INSURANCE**
9   **COMPANY** and **ZNAT INSURANCE COMPANY**

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  CALIFORNIA PHARMACY<br>    MANAGEMENT, LLC, a California<br>15  limited liability company,<br>16            Plaintiff,<br>17       v.<br>18  ZENITH INSURANCE COMPANY, a<br>    California corporation; and ZNAT<br>19  INSURANCE COMPANY, a California<br>    corporation,<br>20            Defendants. | Case No.  SA CV 09-0242 DOC(ANx)<br>(Consolidated with<br>Case No. SAC 09-141 DOC (ANx)<br><br>**DEFENDANTS ZENITH<br>INSURANCE COMPANY'S AND<br>ZNAT INSURANCE COMPANY'S<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN REPLY TO<br>PLAINTIFF CALIFORNIA<br>PHARMACY MANAGEMENT'S<br>OPPOSITION TO MOTION TO<br>DISMISS THE THIRD AND<br>FOURTH CLAIMS FOR RELIEF OF<br>THE FOURTH AMENDED<br>COMPLAINT**<br><br>Date:    August 23, 2010<br>Time:    8:30 a.m.<br>Place:   Courtroom 9-D<br>         (Santa Ana) |

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2
Page

3   I.   INTRODUCTION ...................................................................................... 1

4   II.   ARGUMENT .............................................................................................. 2

5   A.   CPM's Antitrust Claims Are Barred By The Noerr-Pennington Doctrine..................................................................................................... 2

6

7   B.   CPM Fails To State A Group Boycott Claim. ........................................ 4

8   1.   CPM Fails To Allege An Agreement. ........................................... 4

9   2.   CPM Fails To Allege Antitrust Injury And Standing.................. 6

10   3.   CPM Fails To Account For The Pro-Competitive Justifications For Zenith's Alleged Conduct................................ 9

11   III.   CONCLUSION .......................................................................................... 10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*
  141 F.3d 947 (9th Cir. 1998) ........................................................... 4, 10

*American Ad Mgmt., Inc. v. GTE*
  190 F.3d 1051 (9th Cir. 1999) ............................................................... 6

*Ashcroft v. Iqbal*
  -- U.S. --, 129 S. Ct. 1937, __ L. Ed. 2d __ (2009) ...................... 1, 2, 10

*Atlantic Richfield Co. v. USA Petrol. Co.*
  495 U.S. 328, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990) ................... 8

*Bell Atlantic Co. v. Twombly*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......... 1, 2, 4, 5, 10

*Clipper Exxpress v. Rocky Mtn. Motor Tariff Bureau*
  690 F.2d 1240 (9th Cir. 1982) .......................................................... 3, 4

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*
  647 F. Supp. 2d 1250 (W.D. Wash. 2009) .......................................... 5

*Newcal Indus. Inc. v. Ikon Office Solution*
  513 F.3d 1038 (9th Cir. 2008) .......................................................... 6, 9

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*
  472 U.S. 284 (1985) ....................................................................... 4, 10

*Paladin Assoc., Inc. v. Montana Power Co.*
  328 F.3d 1145 (9th Cir. 2003) ............................................................. 9

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*
  467 F.3d 283 (2d Cir. 2006) .............................................................. 7, 8

*United States v. Jones*
  712 F.2d 1316 (9th Cir. 1983) ............................................................. 4

*United States v. Lo*
  231 F.3d 471 (9th Cir. 2000), *abrogated in non-relevant part by United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007) ........................... 4

*United States v. Maze*
  414 U.S. 395, 94 S. Ct. 645, 38 L. Ed. 2d 603 (1974) ......................... 4

*White v. Lee*
  227 F.3d 1214 (9th Cir. 2000) ............................................................. 2

1

**CALIFORNIA CASES**

2

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
2 Cal. App. 4th 153 (1991) ...................................................................................... 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendants Zenith Insurance Company and ZNAT Insurance Company
2    (collectively "Zenith") hereby submit their memorandum of points and authorities in
3    reply to plaintiff California Pharmacy Management, LLC's ("CPM") opposition to
4    Zenith's motion to dismiss the Fourth Amended Complaint's Third and Fourth
5    Claims for Relief for alleged violation of Section 1 of the Sherman Act and
6    California's Cartwright Act (the "Motion").

## I.    INTRODUCTION

8    Zenith moved to dismiss CPM's antitrust claims on three grounds.  First, the
9    claims improperly seek to impose antitrust liability based upon alleged petitioning
10   activity protected by the *Noerr-Pennington* doctrine.  Second, CPM's allegations of
11   a purported agreement between Zenith and Berkshire Hathaway (BH") are
12   insufficient to meet CPM's heavy pleading burden under *Bell Atlantic Co. v.*
13   *Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)
14   ("*Twombly*") and *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d 868
15   (2009) ("*Iqbal*").  Third, CPM does not allege facts sufficient to plead antitrust
16   injury and therefore lacks standing to bring antitrust claims against Zenith.

17   CPM's opposition argues that a portion of Zenith's alleged conduct is distinct
18   from Zenith's petitioning activity and therefore sufficient to withstand dismissal.
19   (*See* Opp. at 9-14.)  This argument is undermined both by the Court's November 5,
20   2009 Order (the "Order") and the plain language of the pleading.  CPM asserts that
21   its claims are based on Zenith's allegedly baseless objection letters. The Order,
22   however, clearly holds that even purportedly "groundless and frivolous boilerplate
23   objections" were conduct incidental to litigation and, therefore, protected.  (Order at
24   13.)  CPM also cites a so-called "block list," despite the fact that the Fourth
25   Amended Complaint merely alleges, on information and belief, that Zenith *might*
26   have developed such a list.[1]  (*See* Fourth Amended Complaint ("FAC") at ¶ 45.)
27   Additionally, CPM wrongly relies on its "lulling" allegation as a proper basis for its

---

[1] Zenith has no such "block list" and never ceased paying CPM.

antitrust claims.  As explained in Zenith's opening brief, lulling is immaterial to the antitrust analysis.  (*See* Memo. in Supp. Mot. Dismiss at 10-11.)  Thus, application of the *Noerr-Pennington* doctrine to CPM's actual allegations requires dismissal.

CPM's argument that it has pleaded "all the elements" of an antitrust claim misses the point.  Simply reciting legal elements of a claim is insufficient; a party must adequately allege specific *facts* to meet the pleading standard described in *Twombly*, 550 U.S. at 570, and *Iqbal*, 129 S. Ct. at 1949.  CPM has failed to meet this standard, and its antitrust claims should be dismissed.

## II.   ARGUMENT

**A.   CPM's Antitrust Claims Are Barred By The *Noerr-Pennington* Doctrine.**

As discussed in Zenith's moving papers, this Court previously ruled that virtually all of the conduct CPM claims constitutes an illegal group boycott is privileged under the *Noerr-Pennington* doctrine.  Specifically, this Court held that Zenith's alleged (i) sending of "groundless and frivolous boilerplate" objections, (ii) petitioning to consolidate "proceedings before the WCAB," and (iii) filing of a "state court action against" CPM is protected conduct incidental to litigation that is privileged under the *Noerr-Pennington* doctrine and cannot subject Zenith to liability.  (Order at 13.)

By ruling that such conduct is protected by *Noerr-Pennington*, the Court has established that **none** of the foregoing activity, ***even if purportedly done in concert with other insurers***, can form the basis of an antitrust claim against Zenith.  *Id.* (citing *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("The *Noerr-Pennington* doctrine ensures that those who petition the government for redress of their grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved.")).

In its opposition, CPM asserts that its claims are not barred by *Noerr-Pennington* because Zenith's purported antitrust scheme consisted of allegedly unprotected conduct:  (i) ceasing payments on CPM's claims; (ii) developing a

"block" list; and (iii) alleged "lulling" conduct. (Opp. at 10-11.) CPM's argument fails for several reasons.

First, CPM's claims must be tested on the allegations *actually made* in the Fourth Amended Complaint, not the version it spins in the Opposition. CPM's assertion that protected conduct constitutes only a small portion of the antitrust scheme alleged in the complaint is disingenuous. CPM's antitrust claims are based *almost entirely* on protected conduct. Once the protected conduct is subtracted from CPM's allegations, all that remains are the "lulling" allegations, which, as discussed in Zenith's moving papers, are not a proper basis for an antitrust claim.

Second, the alleged denial of payment is not illegal. As CPM acknowledges, insurers routinely deny or reduce claims for a variety of legitimate reasons. (FAC at ¶ 7.) CPM cannot state an antitrust claim simply by alleging nonpayment. As discussed in Zenith's opening brief, CPM's allegation, on information and belief, that "Zenith *may* have developed a similar block list" is insufficient to form a cognizable basis for an antitrust claim (as well as factually inaccurate).

The case principally cited by CPM, *Clipper Exxpress v. Rocky Mtn. Motor Tariff Bureau*, 690 F.2d 1240 (9th Cir. 1982), is distinguishable. In *Clipper Exxpress*, the plaintiff, a regulated freight forwarder, brought antitrust claims against trucking companies and the rate bureau, through which carriers establish rates and fares for members of the bureau. *Id.* at 1245-46. Over the years, plaintiff published progressively lower rates which the rate bureau protested with the Interstate Commerce Commission. *Id.* Plaintiff sued the rate bureau and trucking companies for antitrust violations, alleging the rate protests were a sham and part of a larger independent antitrust violation. *Id.* at 1246-47. Reversing a grant of summary judgment, the Ninth Circuit found that plaintiff's allegations were within the sham exception to *Noerr-Pennington*, and that the petitioning activity was part of a larger conspiracy to fix rates and allocate customers that was not protected by the *Noerr-Pennington* doctrine. *Id.* at 1254 and 1264. Notably, the Ninth Circuit specifically

1   relied upon defendants' admission that, for the purposes of the summary judgment
2   motion, the purpose of their protests was simply to eliminate competition.  *Id.* at
3   1253.  Here, this Court already has found that CPM has not alleged facts sufficient
4   to support a claim that Zenith's petitioning activity falls within the sham litigation
5   exception.  Moreover, Zenith denies CPM's allegations of wrongdoing.

6   While "lulling" activity has been recognized as playing a role in schemes to
7   defraud (*see, e.g., United States v. Maze*, 414 U.S. 395, 94 S. Ct. 645, 38 L. Ed. 2d
8   603 (1974); *United States v. Lo*, 231 F.3d 471 (9th Cir. 2000), *abrogated in non-*
9   *relevant part by United States v. Larson*, 495 F.3d 1094, 1100 (9th Cir. 2007);
10  *United States v. Jones*, 712 F.2d 1316 (9th Cir. 1983)), it has *never* been recognized
11  as a basis to allege an antitrust claim.

12  For these reasons, Zenith submits that its motion should be granted and
13  CPM's antitrust claims be dismissed.

14  **B.    CPM Fails To State A Group Boycott Claim.**

15  CPM apparently asserts that a purported group boycott Section 1 violation is
16  subject to *per se* treatment as opposed to Rule of Reason analysis.  (Opp. at 17-18.)
17  That is inaccurate.  In *Northwest Wholesalers, v. Pacific Stationary & Printing Co.*,
18  472 U.S. 284, 297 (1985), the Supreme Court observed that, "not all concerted
19  refusals to deal should be accorded *per se* treatment."  Similarly, in *Adaptive Power*
20  *Solutions v. Hughes Missile Sys. Co.*, 141 F.3d 947, 950 (9th Cir. 1998), the Ninth
21  Circuit rejected application of a *per se* analysis to the alleged boycott at issue after
22  finding that the alleged boycott did not meet the three characteristics of a *per se*
23  illegal boycott.

24  CPM fails to allege facts sufficient to state a group boycott claim for several
25  independent reasons.

26  **1.    CPM Fails To Allege An Agreement.**

27  CPM fails to allege facts that, if true, would be sufficient to show that an
28  illegal agreement is plausible, not just possible.  *See Twombly*, 550 U.S. at 570.

4

Conduct that is just as likely to be undertaken unilaterally as it is to be the product of an agreement is not enough to support an inference of an antitrust conspiracy. *Id.* at 554. As one court has recently noted, post-*Twombly*, a "distinguishing factor" between complaints that survive motions to dismiss and those that do not, "has been the inclusion of specific allegations concerning time, place, and person versus general allusions to 'secret meetings,' 'communications,' or 'agreements.'" *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1256-57 (W.D. Wash. 2009).

CPM acknowledges the burden of making such specific allegations and purports to meet it with the following allegations:

- Zenith and others "conducted meetings or otherwise regularly communicated about the terms of their conspiracy, and on how to injure CPM . . . ";

- "the conspirators" used "'blocked vendor lists' to facilitate their illegal boycott";

- "they communicated with other industry players to join the boycott";

- "Zenith and BH withheld millions of dollars in revenue from CPM . . . ";

- "the conspirators 'agreed and pledged to engage in the conduct described . . . because they believed that a single insurance company acting alone might not be able to ultimately put companies like CPM out of business.'"

(Opp. at 8.) According to CPM, these allegations "explain the 'who, what, when, where, and why' of its antitrust claims." (*Id.*)

These allegations, however, are inadequate as a matter of law. For example, there is no "who" identified in any of these allegations. CPM's reference to "Zenith" does not put the company on notice as to which Zenith employees allegedly conducted the alleged meetings or had the alleged communications. *Cf. Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991). Nor is there any indication of what was said or agreed to, where the agreement was reached, or when. CPM's vague allegations of secret meetings and unspecified

communications are precisely the type of allegations that courts refuse to countenance as bases for antitrust claims.  CPM's claim to have carried its burden of identifying "the 'who, what, when, where, and why' of its antitrust claims," is made without the benefit of a single citation to governing case law and without any attempt to rebut Zenith's arguments in its moving papers.

### 2.   CPM Fails To Allege Antitrust Injury And Standing.

CPM fails to allege antitrust injury flowing from harm to competition in the WCI market.

In its complaint, CPM identifies, but does not define, a market for workers' compensation insurance (the "WCI market").  (FAC at ¶ 86.)  As CPM recognizes, relevant antitrust markets are defined by "the cross-elasticity of demand between a product itself and substitutes for it."  (Opp. at 19 (citing *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).)  CPM appears to posit that Zenith and BH compete in the WCI market.  (FAC at ¶ 86.)  Because Zenith and BH sell insurance, the product whose substitutability with other like products defines the WCI market appears to be insurance because Zenith and BH compete in the market for the sale of workers' compensation insurance.

CPM fails to allege antitrust injury from harm to competition in the purported WCI market.  CPM alleges that Zenith and BH should, but do not, compete "to make economically efficient decisions regarding the payment, compromise, or litigation of bills and liens submitted to them by" CPM and other similar companies.  (FAC at ¶ 86.)  However, Zenith and BH do not compete regarding claims for benefits submitted to insured employers with whom they already have contracts.  (Memo. in Supp. Mot. to Dismiss at 18.)  The only competition between Zenith and BH would be over who sells policies.  Moreover, CPM does not participate in the WCI market, so it cannot have suffered antitrust injury even if there were harm to competition in that market.  (Memo. in Supp. Mot. to Dismiss at 19 (citing *American Ad Mgmt., Inc. v. GTE*, 190 F.3d 1051, 1057 (9th Cir. 1999).)

6

CPM fails to allege antitrust injury flowing from harm to competition in the purported in-office medication dispensing market (the "IOMD market"). (FAC at ¶ 78.) CPM claims that this market includes "companies that assist physicians with in-office medication dispensing programs." (*See, e.g.*, FAC at ¶ 85.) This market would appear to consist of the provision of certain services to physicians, and anything reasonably interchangeable with those services. (*Id.*)

As Zenith explained in its moving papers, any injury CPM suffers in this market is necessarily an *indirect* consequence of Zenith's alleged conduct. (Memo. in Supp. Mot. to Dismiss at 20-21.) CPM asserts in its Opposition "that because it is the party to whom the insurers issue reimbursements, it suffers direct injury when the insurers stop making those reimbursements." (Opp. at 17.) This assertion, however, is contrary to CPM's own allegations. According to CPM, its role is to handle "the billing and collection for medications prescribed and dispensed by physicians." (FAC at ¶ 14.) CPM seeks reimbursement for amounts paid by physicians. (FAC at ¶ 26.) The physicians then pay CPM a fee for its services. (FAC at ¶ 14.) CPM does not allege that it keeps some portion of the reimbursements for itself. Nor does CPM allege that the fee that physicians pay it is based on the amounts or percentages of the reimbursements it receives. Thus, CPM would suffer harm, if at all, as a direct result of the physicians' failure to pay its fee, and only indirectly as a result of Zenith's alleged failure to pay the physicians' bills. This type of indirect injury is virtually identical to the payment processors' indirect injury in *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 287-291 (2d Cir. 2006), which the court found too remote to constitute antitrust injury.

CPM simply announces that it has "adequately alleged the direct connection between Zenith's and BH's concerted refusal to deal and the impact it has had on CPM's business . . . ." (Opp. at 23.) Such assertions of direct injury are illogical and also undermined by *Paycom Billing*. Based on CPM's own allegations concerning how its business works, there is no obvious or logical connection

between Zenith's alleged refusal to pay bills submitted on behalf of contracting physicians and CPM's allegation that *it* suffers a loss when Zenith refuses to pay the physician's bill.  Further, *Paycom Billing* involved payment agents who, like CPM, also accepted payments on behalf of customers.  *Paycom Billing*, 467 F.3d at 285-87.  The *Paycom Billing* payment agents' injury, which is structurally identical to CPM's alleged injury, was held too indirect to constitute antitrust injury.

It is unclear ho CPM's allegations concerning Zenith's alleged "dislike" for CPM's business and Zenith's alleged intent to "destroy [the IOMD] market" and put CPM out of business purportedly "connect CPM's status as an IOMD provider directly to the injury it suffered at the hands of Zenith, and establish the connection between Zenith's actions and CPM's harm."  (Opp. at 16.)  The antitrust injury requirement is not about intent (nor is it about connecting CPM's status as an IOMD provider to its injury); rather, it is about causation.  *See Atlantic Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 344, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990) ("The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior").  CPM's insistence that Zenith dislikes the services that CPM provides is not a response to *Paycom Billing*.  Regardless of Zenith's purported state of mind, CPM's alleged injury remains too remote to qualify as antitrust injury and to thereby confer antitrust standing on CPM.

CPM also fails to allege antitrust injury flowing from harm to competition in the purported Pharmacy/Pharmacy Management market (""P/PM market").  (FAC at ¶ 78.)  CPM claims that this market includes "(a) traditional pharmacies that dispense medication to injured workers in workers' compensation cases, and (b) pharmacy management companies like CPM that assist physicians . . . with their in-office medication dispensing programs . . . ."  (*See, e.g.*, FAC at ¶ 78-79.)

CPM's attempt to merge two markets is incoherent.  (Memo. in Supp. Mot. to Dismiss at 22-23.)  The services allegedly provided by "traditional pharmacies" are

not "reasonably interchangeable" with the services allegedly provided by CPM and companies like it.  *Cf. Paladin Assoc., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1163 (9th Cir. 2003).  CPM assertion in its Opposition that "it is one of the options injured workers have for filling prescriptions through the Workers' Compensation Insurance system, in addition to traditional pharmacies" (Opp. at 24) is simply inaccurate based on CPM's Fourth Amended Complaint.  Indeed, CPM went to great lengths in the Fourth Amended Complaint to allege that physicians, not CPM, purchased and dispensed medications to injured workers.  (*See, e.g.*, FAC at ¶ 14.)  According to CPM, it merely provides billing and management services to the physicians.  (FAC ¶ 14.)  Even if the physicians' purchasing and dispensing of medications could be considered reasonably interchangeable with a traditional pharmacy's services, CPM's services cannot.  CPM cannot have it both ways.  Because the purported P/PM market is "facially unsustainable," CPM's claims based on it should be dismissed.  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).

Each of CPM's three attempts to define a relevant market in which it has suffered antitrust injury fails.  Because CPM has not adequately alleged facts sufficient to confer standing, its antitrust claims should be dismissed.

### 3.   CPM Fails To Account For The Pro-Competitive Justifications For Zenith's Alleged Conduct.

As CPM agrees, in addition to the basic requirements of a Section 1 claim, it also must meet requirements unique to group boycott claims.  (Opp. at 17 n.11, 18.)  Those additional requirements include alleging facts showing that "the anticompetitive practices alleged in the complaint are not plausibly aimed at efficiency or promoting competition."  (Opp. at 17 (citing *Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*, 141 F.3d 947, 950 (9th Cir. 1998), and *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 293-94 (1985).)  The Fourth Amended Complaint itself sets forth Zenith's

pro-competitive justification for the conduct alleged against it, namely, the detection and elimination of fraudulent overbilling and other illegal conduct by CPM. (Memo. in Supp. Mot. to Dismiss at 19 (citing FAC at ¶ 53).)

CPM claims that Zenith's arguments are simply a factual disagreement, and thus inappropriate for consideration at the motion to dismiss stage. CPM is wrong. Under *Twombly* and *Iqbal*, CPM must provide sufficient factual allegations to make a claimed illegal agreement plausible and must plead facts that are more than merely consistent with a defendant's liability. Whether CPM has met its pleading burden is a *legal* issue for the court.

Having failed to even address the primary pro-competitive justification of fraud detection and prevention for Zenith's alleged conduct (Opp. at 21-22), CPM necessarily fails to carry its burden of alleging a group boycott claim. For this further reason, CPM's antitrust claims should be dismissed.

### III.   CONCLUSION

WHEREFORE, for the foregoing reasons, Zenith respectfully requests that this Court grant its motion and dismiss the Fourth Amended Complaint's Third and Fourth Claims for Relief in their entirety and with prejudice.

DATED:  August 9, 2010

PROSKAUER ROSE, LLP

DEWEY & LEBOEUF, LLP


By:  _____/s/_____
Lary Alan Rappaport
Attorneys for Defendants
ZENITH INSURANCE COMPANY
AND ZNAT INSURANCE COMPANY

10