| | |
|---|---|
| 1 | LARY ALAN RAPPAPORT (SBN 87614) |
| | PROSKAUER ROSE LLP |
| 2 | 2049 Century Park East, 32nd Floor |
| | Los Angeles, California 90067-3206 |
| 3 | Tel: (310) 557-2900 Fax: (310) 557-2193 |
| | lrappaport@proskauer.com |
| 4 | |
| | DEAN HANSELL (SBN 93831) |
| 5 | ELLA R. SERRANO (SBN: 228216) |
| | DEWEY & LEBOEUF LLP |
| 6 | 333 South Grand Avenue, Suite 2600 |
| | Los Angeles, California 90071-1530 |
| 7 | Tel: (213) 621-6000 Fax: (213) 621-6100 |
| | dhansell@dl.com; eserrano@dl.com |
| 8 | |
| | Attorneys for Defendants **ZENITH INSURANCE** |
| 9 | **COMPANY** and **ZNAT INSURANCE COMPANY** |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA PHARMACY MANAGEMENT, LLC, a California limited liability company, | Case No. SA CV 09-0242 DOC(ANx) (Consolidated with Case No. SAC 09-141 DOC (ANx) |
| Plaintiff, | **DEFENDANTS ZENITH INSURANCE COMPANY'S AND ZNAT INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF CALIFORNIA PHARMACY MANAGEMENT'S OPPOSITION TO MOTION FOR AN ORDER STRIKING ALLEGATIONS OF THE FOURTH AMENDED COMPLAINT** |
| v. | |
| ZENITH INSURANCE COMPANY, a California corporation; and ZNAT INSURANCE COMPANY, a California corporation, | |
| Defendants. | |
| | Date: August 23, 2010 |
| | Time: 8:30 a.m. |
| | Place: Courtroom 9-D (Santa Ana) |

Defendants Zenith Insurance Company and ZNAT Insurance Company (collectively "Zenith") hereby submit their memorandum of points and authorities in reply to plaintiff California Pharmacy Management, LLC's ("CPM") opposition to Zenith's motion for an order striking certain allegations of CPM's Fourth Amended Complaint (the "Motion").

## I.  INTRODUCTION

CPM argues that Zenith's motion to strike should be denied as an effort "to circumvent" the Court's November 5, 2009 Order (the "Order") denying Zenith's motion to dismiss CPM's Second Amended Complaint. (Opposition at page 2, lines. 17-20.) In fact, the opposite is true: CPM's Fourth Amended Complaint ignores the Order by including allegations that this Court previously ruled cannot be the basis for asserting liability against Zenith. It is pursuant to the Order that the Motion requests that allegations be stricken as "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Federal Rule of Civil Procedure 12(f).

CPM also argues that the Motion should be denied because leaving legally deficient allegations in the pleading allegedly would not prejudice Zenith. (Opposition at page 14, line 1 – page 15, line 10.) CPM is wrong again. Granting the motion would require CPM to focus on the only purported conduct that this Court has held might be actionable: alleged "lulling activity" that is separate and distinct from Zenith's protected objections and other litigation activity. Denying the motion, however, would result in time consuming and costly disputes regarding whether CPM may conduct discovery related to the grounds on which Zenith defended against, and objected to, thousands of charges for drugs dispensed to workers making claims for workers' compensation benefits. Moreover, because it is now clear that the Fourth Amended Complaint seeks to impose liability on Zenith based *exclusively* upon protected litigation activity, granting the motion will facilitate disposing of this unmeritorious action through summary judgment.

Finally, CPM opposes Zenith's motion to strike a portion of paragraph 31 by arguing that, even though the allegations are inconsistent with California law as explained in *Mendoza v. J. Buckbinder Indus., Inc.,* Case No. ADJ3069602 (April 15, 2010) ("*Mendoza*"), CPM purportedly "has appealed" to the Court of Appeal and, in any event, CPM contends that "a single decision . . . has no precedential value." (Opposition at page 15, lines 11 – 23.) CPM is wrong a third time. CPM has not *appealed Mendoza*; CPM has filed a petition for writ of review pursuant to Labor Code § 5950. Under Labor Code § 5956, *Mendoza* remains effective throughout the writ proceedings absent a stay. CPM's June 1, 2010 request for a stay was denied by the Court of Appeal on June 4, 2010. (See, accompanying Declaration of Lary Alan Rappaport at ¶¶ 2 – 3 and Exhibit 4.) CPM is bound by *Mendoza* and collaterally estopped from litigating the same issue here; moreover, a federal court is bound to apply California law, even a "single decision."

## II. ARGUMENT

### A. The Motion To Strike Seeks To Enforce, Rather Than Circumvent, The Order

CPM's claim that the motion to strike seeks to circumvent, rather than enforce, the Order is based upon a tortured and selective reading. A review of Section A 2 and C 1 of the Order demonstrates the lack of merit in CPM's argument.

In Section A 2, this Court held that CPM's allegations that Zenith (i) made baseless objections, (ii) petitioned to consolidate claims before the Workers' Compensation Appeals Board (the "WCAB") and (iii) filed a civil lawsuit against CPM do not allege conduct that would constitute mail or wire fraud sufficient to support a RICO claim against Zenith:

> **The Court agrees that the SAC's allegations do not concern fraudulent conduct to the extent that they discuss: (1) the submission of baseless objections, see SAC ¶ 39; (2) the**

**consolidation of claims before the WCAB,** *see id*. **¶ 40; and/or (3) the filing of Defendants' state court lawsuit,** *see id*. **¶ 42**. First, an action for fraud cannot lie "where the sender knows the recipient will not be deceived by the falsehoods." Sosa, 437 F.3d at 941 (citing *United States v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002)). To the extent that the objections submitted by Defendants had no "factual basis," CPM could not have been defrauded. Moreover, "misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions." Id. at 940. **The alleged existence of the objection letters delivered to CPM by Defendants therefore cannot support a claim for fraud where CPM claims that the letters lacked a legal or factual basis**. See SAC ¶ 39.

Second, **Defendants' alleged consolidation of claims before the WCAB is likewise incapable of supporting the existence of a scheme to defraud.** Even without considering the important considerations of the *Noerr-Pennington* doctrine, the Court notes that CPM has failed to demonstrate how delay, even if intentional, before the WCAB is sufficient to evince a specific intent to deceive or defraud. Instead, CPM's allegations concerning the WCAB appear to be consistent with a general pattern of lamenting the WCAB's inability to resolve claims at a speed that satisfies Plaintiff. The Court therefore admonishes Plaintiff that this is not the appropriate forum to air general grievances against the WCAB process, especially when it is unclear how the mere use of an allegedly defective process by Defendants is sufficient to constitute fraud.

**Third, CPM's claim that Defendants intend to "us[e] the process of litigation, rather than its outcome, to achieve an**

>  **unlawful objective, which constitutes fraud on the WCAB, as well as CPM," is equally unavailing.** *See* SAC ¶ 42. As an initial matter, it appears that CPM re-packages a claim intended to address the "sham litigation" exception to the *Noerr-Pennington* doctrine in terms intended to support a vague claim of fraud upon the WCAB. However, CPM fails to substantiate the precise manner in which the mere filing of a lawsuit (or even the consolidation of claims before the WCAB) has the effect of defrauding the WCAB. Such conclusory allegations are insufficient to sustain Plaintiff's cause of action under Rule 12(b) (6). *See Twombly*, 550 U.S. at 562.

(Order at pages 9 – 10.)[1] (emphasis in bold added.)

These paragraphs make abundantly clear this Court already has ruled that allegations about purported baseless objections, the petition to consolidate and civil lawsuit are not actionable under RICO.

The only allegations in the Second Amended Complaint that saved CPM's lawsuit from dismissal allege purported "lulling conduct" "well in advance" of, and distinct from, Zenith's alleged objections or litigation before the WCAB and the superior court:

> Notwithstanding the **legal irrelevance of the SAC's allegations concerning the submission of baseless objection letters, consolidation proceedings before the WCAB, and the filing of the lawsuit in state court**, the "lulling" claims are sufficient to demonstrate predicate acts of mail and wire fraud. In relevant part, Plaintiff alleges that Defendants "lulled" it into believing that they had investigated CPM's claims for payments and that Defendants intended to resolve their objections with haste and in good faith. *See* SAC ¶ 49.

---

[1] The Order is Docket No. 50; a copy is appended to the Declaration of Terree A. Bowers as Exhibit B.

> **This scheme to defraud was allegedly designed well in advance of litigation before the WCAB**; indeed, Plaintiff alleges that Defendants conspired with other carriers to put CPM out of service and implemented a scheme to deny all payments to CPM and fabricate pretextual objections to CPM's claims. *Id.* ¶ 3. It was only in effectuating this scheme that Defendants allegedly submitted fraudulent objection letters and issued blanket denials of CPM's claims in telephone calls with CPM's collectors. *Id.* ¶¶ 28-36. In short, Plaintiff alleges that Defendants intended to deceive CPM about Defendants' good faith in resolving CPM's claims and using the WCAB process. Accordingly, the Court finds that the SAC's allegations are sufficient to support a RICO claim under 18 U.S.C. § 1962(c) with predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

(Order at page 10.) (emphasis in bold added.)

Similarly, this Court held in Section C 1 that, under the *Noerr-Pennington* doctrine, Zenith's objections and conduct before the WCAB and superior court are protected petitioning activity that bars CPM's RICO claims as a matter of law, but nonetheless allowed CPM to proceed on the narrow allegation that Zenith engaged in "lulling" conduct that CPM contends is *separate and apart* from Zenith's alleged misuse of the WCAB process:

> The SAC alleges, inter alia, that Defendants sent groundless and frivolous boilerplate objections to CPM regarding its bills and liens, consolidated proceedings before the WCAB in order to further delay resolution of CPM's bills and liens, and ultimately filed their state court action against CPM in an effort to avoid paying valid claims. *See* SAC ¶¶ 28-41. **Such activity amounts to protected conduct incidental to litigation.** *See Sosa*, 437 F.3d 95-26. **First, Defendants' alleged objection letters were intended to lay the foundation for eventual**

**recourse to the WCAB process. Second, the WCAB consolidation petitions undeniably represent protected petitioning activity, and CPM's arguments about alleged defects in the way that process functions are both unavailing and inappropriate.** The *Noerr-Pennington* doctrine, in relevant part, to prevent courts from interfering with the accessibility and integrity of schemes like the WCAB. **Third, to the extent that Plaintiff intends to invoke Defendants' state court lawsuit as relevant to its fraud claims, the *Noerr-Pennington* doctrine bars Plaintiff's claim.** *See Kottle*, 146 F.3d at 1059.

However, the SAC additionally avers that Defendants engaged in "lulling" conduct **that Plaintiff contends is separate and apart from Defendants' alleged misuse of the WCAB process**. Specifically, the SAC alleges that Defendants **induced CPM into believing that they intended to resolve CPM's claims in good faith**. SAC ¶ 28(a). The SAC also alleges that **Defendants falsely communicated to other carriers and administrators "that CPM was being investigated for fraud or illegal practices**." *Id*. ¶ 28(d). Neither allegation necessarily concerns petitioning activity before the WCAB; **indeed, the latter concerns fraudulent activity entirely outside the scope of the WCAB**. Thus, this Court declines to prospectively apply the *Noerr-Pennington* doctrine to activity that may have been conducted **antecedent to and without contemplation of litigation before the WCAB**. If the SAC's allegations are taken as true, then Defendants' fraudulent conduct **predated their protected petitioning activity, such that the WCAB process was merely a vehicle to effectuate Defendants' scheme**. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 506-07, 108 S. Ct. 1931 (1988) ("[T]he mere

1     fact that an anticompetitive activity is also intended to influence
2     governmental action is not alone sufficient to render that activity
3     immune from antitrust liability.").
4 (Order at pages 13 - 14.) (emphasis in bold added.)
5     The Fourth Amended Complaint ignores the Order by repeating allegations
6 about Zenith's objections and litigation before the WCAB and superior court that
7 this Court held cannot support a RICO claim and are privileged under the *Noerr-*
8 *Pennington* doctrine. Indeed, the vast majority of CPM's charging allegations seek
9 to impose liability based on such allegations. Zenith's motion simply asks this
10 Court to implement the Order by striking allegations about Zenith's objections and
11 litigation before the WCAB and superior court, and allowing CPM to proceed on its
12 RICO claim only based on Zenith's alleged "lulling" conduct that CPM "contends is
13 separate and apart from Defendants' alleged misuse of the WCAB process." (Order
14 at page 13.)
15     CPM may not circumvent the November 5, 2009 by asserting, as CPM has
16 done in discovery, that Zenith's objections *were* the alleged "lulling" conduct.
17 CPM's assertion contradicts the allegations. CPM alleges that the purported
18 "lulling" conduct *preceded* Zenith's objections, consolidation petition and civil
19 lawsuit. Moreover, CPM cannot transform conduct that is privileged under the
20 *Noerr-Pennington* doctrine into actionable conduct simply by ascribing a motive to
21 such conduct. Zenith respectfully submits that the motion should be granted.
22 **B. Leaving Legally Deficient Allegations In The Fourth Amended**
23     **Complaint Would Be Prejudicial**
24     CPM's assertion that leaving dozens of legally deficient allegations in the
25 pleading would not be prejudicial is wrong in two respects.
26     First, CPM has admitted that, contrary to what this Court was led to believe,
27 the alleged "lulling letters" are not separate and distinct from Zenith's privileged
28 objections. Indeed, as discussed in the moving papers, CPM now contends that "the

garden variety objection letters . . . are the lulling letters." It is clear that the Fourth Amended Complaint seeks to impose liability on Zenith based exclusively upon protected litigation activity: Zenith's objecting to CPM's bills and lien claims and litigating at the WCAB. It would be prejudicial to force Zenith to litigate claims based on conduct that this Court already ruled is privileged and not actionable.

Second, denying the motion would result in time consuming and costly disputes between the parties over whether CPM may conduct discovery about the grounds on which Zenith, defended against, and objected to, thousands of charges for drugs dispensed to workers making claims for workers' compensation benefits. Conversely, granting the motion would require CPM to focus on the only purported conduct that this Court has held might be actionable: alleged "lulling activity" that is separate and distinct from Zenith's protected objections and other litigation activity.

## C. Allegations That Are Inconsistent With The WCAB's Decision In *Mendoza* Should Be Stricken

CPM does not dispute that its allegations in paragraph 31 are inconsistent with the Board's decision adverse to CPM in *Mendoza*. CPM instead argues that it is entitled to ignore *Mendoza*, and make inconsistent allegations, because (i) CPM purportedly "appealed" to the Court of Appeal and (ii) "a single decision . . . has no precedential value." (Opposition at page 15, lines 11 – 23.) CPM is wrong in both regards.

Decisions of the Board are not *appealed* to the Court of Appeal; rather, they are subject to discretionary review upon a *petition for a writ of review*. California Labor Code § 5950. Under California Labor Code § 5956, where a Board decision is challenged by petition for writ of review, the decision remains in effect absent a stay by the appellate court:

> The filing of a petition for, or the pendency of, a writ of review *shall not of itself stay or suspend the operation of any order, rule, decision, or award of the appeals board*, but the court before which the

petition is filed may stay or suspend, in whole or in part, the operation of the order, decision, or award of the appeals board subject to review, upon the terms and conditions which it by order directs, except as provided in Article 3 of this chapter

(emphasis added.) On June 1, 2010, CPM requested that the Court of Appeal issue an immediate stay of *Mendoza* during the pendency of its writ petition. But, on June 4, 2010, the Court of Appeal denied CPM's stay request. (Rappaport Decl. at ¶¶ 2 – 3 and Exhibit 4.) *Mendoza* therefore remains in effect.

CPM is bound by *Mendoza* in two respects. First, CPM is collaterally estopped from litigating the issues decide against it in *Mendoza*. Second, federal courts sitting in California apply California law as interpreted by California courts, even where the law consists of a "single decision." Accordingly, the motion should be granted and the allegations in paragraph 31 stricken from the Fourth Amended Complaint.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Zenith respectfully requests that the Court grant this motion in its entirety and strike the challenged allegations from CPM's Fourth Amended Complaint.

DATED: August 9, 2010

PROSKAUER ROSE, LLP

DEWEY & LEBOEUF, LLP

By: /s/
Lary Alan Rappaport
Attorneys for Defendants
ZENITH INSURANCE COMPANY
AND ZNAT INSURANCE COMPANY