TERREE A. BOWERS (SBN 89334)
bowers.terree@arentfox.com
MATTHEW J. KITSON (SBN 254246)
kitson.matthew@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401

DONALD G. NORRIS (SBN 90000)
dnorris@norgallaw.com
**NORRIS & GALANTER LLP**
555 West Fifth Street, 30th Floor
Los Angeles, CA  90013
Telephone:  (213) 996-8477
Facsimile:   (213) 996-8475

Attorneys for Plaintiff CALIFORNIA
PHARMACY MANAGEMENT, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| CALIFORNIA PHARMACY MANAGEMENT, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ZENITH INSURANCE COMPANY, a California corporation; and ZNAT INSURANCE COMPANY, a California corporation, et al.,<br><br>Defendants.<br><br>―――――――――――<br><br>AND CONSOLIDATED ACTION | Case No.  SACV 09-0242 DOC (ANx)<br><br>(Consolidated with SAC 09-141 DOC (ANx))<br><br>Honorable David O. Carter<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[DECLARATIONS OF MICHAEL R. DROBOT AND TERREE A. BOWERS; AND STATEMENT OF GENUINE ISSUES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FILED CONCURRENTLY HEREWITH]**<br><br>Date:  December 6, 2010<br><br>Time:  8:30 a.m. |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1
LA/362047.1

-1-

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANX)

# TABLE OF CONTENTS

**Page**

INTRODUCTION................................................................................1

ARGUMENT ......................................................................................2

A.  STANDARDS GOVERNING SUMMARY JUDGMENT ................................2

B.  CPM'S MANAGEMENT OF IN-OFFICE MEDICATION DISPENSING PROGRAMS RENDERED IT VULNERABLE TO DIRECT INJURY ..........................................................................................3

C. BH'S CAUSATION CHALLENGE TO CPM'S RICO CLAIM FAILS ...........4

   1. CPM'S DAMAGES WERE THE DIRECT, PROXIMATE RESULT OF BH'S FRAUDULENT SCHEME ........................................................4

   2. THE POLICY CONCERNS ARTICULATED IN *HOLMES* ARE NOT PRESENT IN THIS CASE ........................................................9

      A. CPM IS THE ONLY VICTIM OF BH'S ILLEGAL ACTIONS WILLING AND ABLE TO PURSUE ITS CLAIM .................................10

      B. DETERMINING DAMAGES ATTRIBUTABLE TO BH'S CONDUCT WILL NOT GIVE RISE TO THE CONCERNS ARTICULATED IN *HOLMES* AND *ANZA* .................................10

      D. CPM'S DAMAGES WERE CAUSED BY THE RICO PREDICATE ACTS.............................................................................11

      E. HYPOTHETICAL "INDEPENDENT CONTRIBUTING FACTORS" DO NOT PRECLUDE A FINDING THAT BH'S ILLEGAL CONDUCT PROXIMATELY CAUSED CPM'S LOSSES ......................................11

      F. DAMAGES TO CONTRACTING PHYSICIANS DO NOT BREAK THE CHAIN OF CAUSATION .................................................13

      G. THE ASSIGNABILITY OF CLAIMS IS IRRELEVANT TO WHETHER BH'S CONDUCT HAS PROXIMATELY CAUSED CPM'S INJURIES ..................................................................13

      H. CPM HAS SUFFERED ANTITRUST INJURY AS A RESULT OF DEFENDANTS' ILLEGAL ACTIONS..............................................14

      I. CPM HAS SUFFERED DIRECT INJURY THAT IS OF THE TYPE THAT THE ANTITRUST LAWS WERE INTENDED TO PREVENT ..............16

      J. CPM HAS ADEQUATELY IDENTIFIED RELEVANT MARKETS..........18

      K. CPM HAS PROVIDED EVIDENCE OF RELEVANT PRODUCT MARKETS ...............................................................18

      L. DEFENDANTS HAVE MARKET POWER BECAUSE THEIR ACTIONS HAVE DESTROYED ALL OF THE COMPANIES IN THE IN-OFFICE MEDICATION DISPENSING MARKET...............................19

      M. THIS COURT HAS ALREADY RULED THAT THE NOERR-PENNINGTON DOCTRINE DOES NOT APPLY TO BAR CPM'S CLAIMS ..................................................................19

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362067.1

- i -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
SACV 09-0242 DOC (ANx)

1

**TABLE OF CONTENTS**
(continued)

Page

N. THE DEFENDANTS' ACTIVITIES ARE NOT EXEMPT FROM THE
REACH OF THE ANTITRUST LAWS BY REASON OF THE
MCCARRAN-FERGUSON ACT ...........................................................................20

CONCLUSION ........................................................................................................25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENTSACV 09-0242 DOC

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc..,*
    477 U.S. 242 (1986).........................................................................2, 3

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006) ..........................................................................10

*Blue Shield of Virginia v. McCready,*
    457 S. Ct. 1937 (2009) ................................................................ 15, 16

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639 (2008).................................................................. 5, 8 12

*California Pharmacy Mgmt., LLC v. Zenith Ins. Co.,*
    669 F. Supp. 2d 1152 (C.D. Cal. 2009) ............................................11

*City of New York v. Smokes-Spirits.com, Inc.,*
    541 F.3d 425 (2d Cir. 2008)...............................................................6

*Diaz v. Gates,*
    420 F.3d 897 (9th Cir. 2005) ..............................................................5

*Eastman Kodak Co. v. Image Technical Servs., Inc.,*
    504 U.S. 451(1992)........................................................................3, 18

*Glen Holly Entm't v. Tektronix, Inc.,*
    352 F.3d 367 (9th Cir. 2003) ............................................................17

*Grantham and Mann v. American Safety Products,*
    831 F.2d 596 (6th Cir. 1987) ..............................................................7

*Group Life & Health Ins. Co. v. Roya Drug Co.,*
    440 U.S. 205 (1979)................................................. 22, 23, 24, 25

*Hartford Fire Ins. Co. v. California,*
    509 U.S. 764 (1993)..........................................................................23

*Hemi Group, LLC v. City of New York,*
    130 S. Ct. 983 (2010) ............................................................... 5, 7, 8

*Holmes v. Sec. Investor Prot. Corp.,*
    503 U.S. 258 (1992) ............................................................. 5, 7, 8, 9

*In re Workers' Comp. Ins. Antitrust Litig.,*
    867 F.2d 1552 (8th Cir. 1989) ..........................................................21

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362067.1
LA/362067.1

- iii -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
SACV 09-0242 DOC (ANx)

1   *Iolab Corp. v . Seaboard Sur. Co.,*
2       15 F.3d 1500 (9th Cir. 1994) ..................................................................5

3   *Mendoza v. Zirkle Fruit Co.,*
4       301 F.3d 1163 (9th Cir. 2002) ..............................................................6

    *Newcal Indus. Inc. v. Ikon Office Solution,*
5       513 F.3d 1038 (9th Cir. 2008) ....................................................... 18, 19

6   *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,*
7       210 F.3d 1099 (9th Cir. 2000) ..............................................................2

    *Oki Semiconductor Co. v. Wells Fargo Bank,*
8       298 F.3d 768 (9th Cir. 2002) ................................................ 5, 6, 11, 12

9   *Ostrofe v. H.S. Crocker Co.,*
10      740 F.2d 739 (9th Cir. 1984) ................................................................6

11  *Proctor & Gamble Co. v. Amway Corp.,*
        242 F.3d 539 (5th Cir. 2001) ..............................................................12
12
    *Sedima, S.P.R.L. v. Imrex Co., Inc.,*
13      473 U.S. 479 (1985)...............................................................................5

14  *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,*
        720 F. Supp. 805 (N.D. Cal. 1989) ......................................................12
15
16  *St. Paul Fire & Marine Ins. Co. v. Barry,*
        438 U.S. 531 (1978)..............................................................................22

17  *Union Life Ins. Co. v. Pireno,*
18      458 U.S. 119 (1982)................................................................. 23, 24, 25

19  *United States Dept. of Treasury v. Fabe,*
        508 U.S. 491 (1993)..............................................................................24
20
21  *Weatherby v. RCA Corp.,*
        1986 WL 21336 (N.D.N.Y. May 9, 1986).........................................22
22
23  *Williams v. Mohawk Indus., Inc.,*
        465 F.3d 1277 (11th Cir. 2006) .........................................................6, 10

24  *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.,*
        951 F.2d 1158 (9th Cir. 1991) .............................................................15
25
26
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362067.1
LA/362067.1                                    - iv -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
SACV 09-0242 DOC (ANx)

**STATE CASES**

*Prudential Ins. Co. of America v. WCAB,*
22 Cal. 3d 776 (1978) ........................................................................14

*Richey v. Ziegler,*
89 Cal. App. 35 (1928) ......................................................................14

**FEDERAL STATUTES**

15 U.S.C. § 1013(b) ...............................................................................21

**STATE STATUTES AND REGULATIONS**

Labor Code § 4902 ..................................................................................14

8 Cal. Code Regs. § 10550 ......................................................................14

**RULES**

Fed. R. Civ. P. 56(f) ...............................................................................19

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362067.1
LA/362067.1

- v -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
SACV 09-0242 DOC (ANx)

## I.    **INTRODUCTION**

The Berkshire Hathaway ("BH") Defendants' summary judgment motion reads in large part like a motion for discovery sanctions rather than a summary judgment motion. Such issues have no bearing on whether summary judgment should be granted, and are not properly considered here.[1] Much of the delayed discovery of which BH complains has either been produced or is currently being produced. Numerous depositions have been taken and California Pharmacy Management, LLC ("CPM") has produced most of the requested discovery even though there is a comprehensive discovery motion presently before the Court. CPM has challenged BH's discovery requests because BH is trying to put CPM out of business and is using the discovery process as a fishing expedition to develop additional technical and unfounded objections to paying CPM liens.

Once BH's unfounded complaints about CPM's legitimate responses to discovery are stripped away, little of substance remains. Defendants fail to meet their burden on summary judgment of showing that there is an absence of evidence supporting plaintiff's claims.

The principal contention of defendants' motion is that CPM cannot establish that that the injuries it suffered were a direct result of defendants' violations of RICO. This issue presents a question of fact, not law, so it is not appropriately

---

[1] Defendants complain that plaintiff has not produced all contracts relating to its business and financial damages. Defendants ignore that plaintiff's document production is continuing. Defendants ignore the enormous effort CPM undertook to give accurate figures to BH in a good faith effort to settle the case. BH has used a series of administrators and carriers to obfuscate its handling of CPM claims. CPM has expended enormous time and effort to untangle BH's web and present reliable numbers on the claims at issue. CPM has a small staff and their good faith effort to settle the case slowed some of the discovery responses. Defendants further ignore special circumstances bearing on this discovery process: that plaintiff's lead counsel Terree Bowers was recently in the hospital for 13 days, from October 14 to 26, and has been required to undergo intensive and exhausting treatment three days a week since leaving the hospital. Defendant also ignore that plaintiff has acted well within its rights in appealing aspects of the magistrate judge's order compelling discovery.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1
LA/362047.1

-1-

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANX)

determined on summary judgment. Although defendants concede that they have received a representative sample of plaintiff's contracts with the physicians whose medications dispensing programs CPM manages, defendants' argument inexplicably fail to analyze or in any way address what that material shows. These documents conclusively demonstrate that CPM's injuries, far from being a remote or indirect result of defendants' conduct, were in fact a direct, proximate result of such conduct.

Defendants' remaining grounds for summary judgment all bear on CPM's antitrust claim: that plaintiff cannot prove antitrust injury or establish a relevant market, and that the *Noerr-Pennington* doctrine and the McCarran-Ferguson Act bar recovery. Antitrust injury and the relevant market involve factual issues that are not appropriately determined on summary judgment, and defendants do not even attempt to present any factual showing as to those issues. Moreover, all these issues were the subject of defendants' motion to dismiss the antitrust claims, which is under submission with the Court. Defendants' motion simply regurgitates their prior arguments, without factual analysis or support. Defendants' contentions should be rejected for the reasons stated in CPM's opposition to that prior motion, and for the additional reasons stated below.

## II.    ARGUMENT

### A.    STANDARDS GOVERNING SUMMARY JUDGMENT

The moving defendants have both the initial burden of production (of showing that plaintiff cannot meet its burden of proof at trial on an essential element of its claim), and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Summary judgment is a drastic remedy and is therefore to be granted cautiously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"The evidence of the nonmovant is to be believed, and all justifiable

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 2 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1  inferences are to be drawn in his favor." *Id.*, 477 U.S. at 255.  All reasonable

2  inferences must be drawn in the opposing party's favor where the underlying facts

3  are undisputed, as well as where they are in controversy; the nonmovant's version

4  of any disputed issue of fact is presumed correct.  *Eastman Kodak Co. v. Image*

5  *Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).  The inferences that are drawn

6  from the evidence must be viewed in the light most favorable to the nonmoving

7  party.  *Id.*

8  **B.   CPM'S MANAGEMENT OF IN-OFFICE MEDICATION**
   **DISPENSING PROGRAMS RENDERED IT VULNERABLE TO**
9  **DIRECT INJURY.**

10  Historically, there has been a shortage of retail pharmacies in California that

11  will fill prescriptions for injured workers.  Drobot Decl., ¶ 2.  For many disabled

12  workers, it is difficult to travel to retail pharmacies that will fill such prescriptions.

13  *Id.*  Dispensation of medications by physicians in their offices, as authorized by

14  California Business and Professions Code Section 4170(a), addresses these needs.

15  *Id.*

16  CPM entered into contracts with physicians to manage their in-office

17  dispensing programs.  Drobot Decl., ¶ 3; Ex. 1.  Pursuant to those management

18  agreements, CPM advised its contracting physicians to meet the regulatory

19  requirements of in-office dispensation of medications, including those of the Drug

20  Enforcement Agency.  *Id.*, ¶ 3.  In that regard, CPM was responsible for identifying

21  appropriate pharmacy vendors or sources of product, providing required labels,

22  recordkeeping, packaging, patient disclosure forms and the like, assisting

23  physicians in developing a drug formulary, storage and dispensing facilities, and

24  maintaining an inventory.  *Id.*, Ex. 1, sec. 2.

25  The management agreements also tasked CPM with billing and collecting the

26  charges for the medications.  Ex. 1, sec. 2(e).  The physicians provided CPM with

27  Notices of Representation so that CPM could pursue payment of unpaid bills at the

28  WCAB.  Drobot Decl., ¶ 4; Ex. 2.  Those notices provided that pharmaceutical

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 3 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV-09-0242 DOC (AN-x)

1   payments should be made directly to CPM.

2       The financial arrangements set forth in the CPM management agreements

3   demonstrate CPM's direct involvement in the process and its financial exposure.

4   CPM was to advance the funds to enable the physicians to purchase the products, as

5   necessary.  Ex. 1, sec. 2(d).  Although the precise percentage was subject to

6   negotiation in a given case, after deducting the costs for drugs sold and other direct

7   pharmacy costs, including collections and advances, CPM and the physicians

8   usually shared the remaining amounts collected 50/50.  Drobot Decl., ¶ 5; Ex. 3,

9   sec. 4.  Payments were received by CPM, which then remitted to the physicians

10  their contractual share.  Drobot Decl., ¶ 5.

11      In or about 2006, CPM also entered into Medical Lien Purchase and

12  Financial Service Agreements with most of its contracting physicians, whereby

13  physicians could sell to CPM all "right, title and interest in claims for

14  reimbursement under the California workers; compensation system for drugs

15  dispensed" in the physicians' offices.  Drobot Decl., ¶ 6, Ex. 4.  The purpose of

16  these agreements was to address physician cash flow problems arising from the

17  increasingly prolonged delays attendant to collection of workers compensation

18  claims.  *Id.*

19      Beginning in 2009 and continuing into 2010, CPM also entered into

20  Financial Asset Agreements with contracting physicians, whereby the physicians

21  sold CPM their remaining share of unpaid medication claims.  Drobot Decl. ¶ 7, Ex.

22  5.

23  **C.    BH'S CAUSATION CHALLENGE TO CPM'S RICO CLAIM
        FAILS.**

24

25      **1.    CPM's Damages Were The Direct, Proximate Result Of
                BH's Fraudulent Scheme.**

26  "[A]ny person injured in his business or property by reason of a violation" of

27  RICO may pursue a civil cause of action for damages.  18 U.S.C. § 1964(c).  A

28  plaintiff asserting a RICO claim is required to show injury proximately caused by

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 4 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1  defendants' RICO violation. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S.

2  639, 652-53 (2008) ("Bridge"); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473

3  U.S. 479, 496 (1985) (RICO plaintiff "only has standing if … he has been injured

4  in his business or property by the conduct constituting the violation").

5       The main thrust of defendants' summary judgment motion is the contention

6  that, as a matter of law, BH's conduct was not a proximate cause of injury to

7  CPM's business; that any injury to CPM was indirect, remote or purely contingent.

8  But causation is normally a question of fact for the jury, and becomes an issue of

9  law only where, given the undisputed facts, reasonable minds could not differ on

10  the outcome. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir.

11  1994). Here, BH cannot make that showing. The Supreme Court has held that

12  proximate cause "is a flexible concept that does not lend itself to a black-letter rule

13  that will dictate the result in every case." *Bridge*, 553 U.S. at 654.

14       For purposes of RICO, proximate cause is evaluated in light of its common-

15  law foundations; this requires "some direct relation between the injury asserted and

16  the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258,

17  268 (1992) ("*Holmes*"). A link that is "too remote," "purely contingent," or

18  "indirec[t]" is insufficient. Id., 503 U.S. 271.[2]

19       Proximate cause is "not the same thing as the sole cause." *Oki*

20  *Semiconducter Co. v. Wells Fargo Bank*, 298 F.3d 768, 773 (9th Cir. 2002); *accord*

21

---

22  [2] It has been a common law precept that proximate causation is established where
   the plaintiff's injuries are a "foreseeable and natural consequence" of the
23  defendant's acts. *Bridge, supra,* 553 U.S. at 658; *see also Diaz v. Gates,* 420 F.3d
   897, 901 (9th Cir. 2005) (holding that the "by reason of" language of RICO
24  incorporates a proximate cause standard, "which is generous enough to include the
   unintended, though foreseeable, consequences…."). Four justices in the majority in
25  dictum in *Hemi Group, LLC, v. City of New York,* 130 S. Ct. 983, 989 (2010)
   ("*Hemi Group*") recently agreed that foreseeability is not itself sufficient absent a
26  direct link. It is questionable whether that has now been established as the law by
   the Supreme Court since Justice Ginsburg joined in the judgment "without
27  subscribing to the broader range of the Court's proximate cause analysis." 130 S.
   Ct. at 995.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 5 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

*City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 443 (2d Cir. 2008)
(stating that a rule requiring that "proximate cause" be the "sole cause" would
"effectively require that a plaintiff's injury be caused by only one source" and
"operate to insulate from liability defendants who scheme with others in violation
of RICO"). Rather, defendants' conduct is the proximate cause of injury where it is
"a substantial factor in the sequence of responsible causation." *Id.; see also
Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) (finding that a
scheme of hiring undocumented workers proximately caused depression of wages
paid to local, documented workers); *accord Williams v. Mohawk Indus., Inc.*, 465
F.3d 1277, 1288 (11th Cir. 2006); *see also Fifth Circuit Pattern Jury Instructions*
(Civil) (2006), Instruction 8.1 "Causation" (racketeering injury must directly result
in injury or play a substantial part in producing it; this requires "only that plaintiff
was harmed by the predicate acts").

In this case, BH perpetuated a fraudulent scheme calculated to lull CPM into
the false belief that BH was objecting to its lien claims on a good-faith basis. BH's
illegal actions were intended to deceive CPM into believing that its pending claims
were still capable of resolution, when in reality BH had no intention of paying any
of the claims and wanted to force CPM into financial ruin by gradually creating a
huge backlog of unpaid claims designed to choke off CPM's cash flow.

Nevertheless, BH stubbornly insists that CPM's only "asserted injury was the
non-receipt of management fees from its contracting physicians as well as the loss
of good-will from its physicians" and, therefore, that CPM has not suffered "direct
injury as a result of Defendants' conduct." MSJ at 9-10. In its November 5, 2009
order denying former defendant Zenith's motion to dismiss (docket no. 50), this
Court correctly rejected the same argument urging that CPM's injury was too
remote or attenuated to confer standing. Order at 11-12. Now BH inexplicably
reiterates that untenable argument based on nothing more than the very same
allegations of the complaint that were before the Court on the previous motion to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 6 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1  dismiss.[3]

2      BH's argument also is plainly contradicted by the evidence, *i.e.*, the actual

3  agreements between CPM and its physicians; BH must now know as much because

4  it has received a substantial sampling of the agreements.[4]  As described above, the

5  agreements show that (1) CPM advanced the expenses of the dispensing programs

6  from the outset; (2) CPM in 2006 entered into additional agreements directed at the

7  delay in collection attendant to workers' compensations bills, purchasing the

8  physicians' interests outright; and (3) CPM directly received payments on the bills,

9  reimbursed itself for the expenses it advanced and only then paid physicians their

10  share of anything left over.  CPM was directly at financial risk under the subject

11  agreements, much more so than the physicians.  Accordingly, when BH stopped

12  paying bills CPM was harmed – directly and significantly.  It was CPM that funded

13  the expenses of the dispensing programs, including the marked increase in

14  collection costs and eventually litigation costs, all as a result of being lulled by the

15  BH defendants and those with whom it conspired.  Drobot Decl., ¶¶ 5-6.  These

16  facts provide ample evidence of direct causation.  The issue cannot properly be

17  adjuciated on summary judgment and must go to the jury.

18      BH's argument also fails as a matter of law.  It principally relies on the

19  Supreme Court's decisions in *Holmes* and *Hemi Group*.  Neither case remotely fits

20  

21  [3] BH badly mangles the case *Grantham and Mann v. American Safety Products*,
831 F.2d 596, 606 (6th Cir. 1987), wrongly claiming that it held that damages

22  caused by interference with contract cannot support a RICO claim.  The case held
no such thing.  It merely held that a party could not sue the defendant it was suing

23  for damages for breach of contract for the same damages under RICO, given that
the court had previously ruled that such damages could not be established.  CPM

24  has no contract with defendants in any event.

25  [4] BH also deposed CPM's president Michael R. Drobot at length on these matters
on November 5, 2010, both in his individual capacity and in his capacity as the

26  designee of CPM on the topics set forth in BH's Fed. R. Civ. P. 30 (b)(6) deposition
notice to CPM.  Despite all this, BH continues to assert that CPM should lose

27  simply because it has not produced all the assignments it obtained from physicians
in 2009-2010.  CPM's injury preceded such assignments.

28  

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 7 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1   the situation before the court.  In *Holmes*, the insurer of a broker-dealer

2   unsuccessfully sought RICO damages from defendants who caused damage to the

3   broker-dealer by manipulating stock prices.  The defendants had no dealings with

4   the plaintiff insurer and did not target it.  Here, in stark contrast, BH dealt directly

5   with CPM through billing and collection efforts, and specifically targeted CPM to

6   put it out of business by choking off its cash flow.  In *Hemi Group*, an internet

7   seller of cigarettes failed to meet New York State's requirements as to submission

8   of forms identifying purchasers, allegedly resulting in the inability of the City of

9   New York (not the State, as BH would have it) to collect taxes from those in the

10  City who purchased the cigarettes.  Because the "conduct directly responsible for

11  the City's harm was the customers' failure to pay their taxes" and not defendant's

12  fraud, the Court's plurality found that such fraud was too attenuated to have caused

13  RICO damages.  130 S.Ct. at 990.[5]

14      The Supreme Court's recent decision in *Bridge* is much more instructive

15  here.  In that case, the plaintiffs were individuals who sought to purchase tax liens

16  at public auction.  *Bridge*, 553 U.S. at 642-43.  The rules of the auction required

17  each buyer to submit bids under his/her name only, and specifically prohibited

18  bidders from using agents in order to submit simultaneous bids and fraudulently

19  obtain a disproportionate share of the auctioned liens.  *Id*.  To ensure the integrity of

20  the process, the governmental agency required all bidders to submit affidavits of

21  compliance with the single, simultaneous bidder rules.  *Id*. at 643.  The defendants

22

23  _____

    [5]  "[T]he City's theory of liability rest[ed] not just on separate actions, but separate actions carried out by separate parties."  *Hemi Group*, 130 S.Ct. at 990.  Not only

24  were the fraudulent acts distinct from the acts which caused the harm, but the acts that caused the harm were carried out by parties separate from those engaged in the

25  fraudulent acts.  *Id*.  Here, there is no such distinction: BH carried out its fraudulent acts (*i.e.*, denying payments to CPM using pretextual objections) as part of a lulling

26  scheme designed expressly for the purpose of choking off CPM's cash flow and driving it out of business.  These acts were the very same acts that harmed CPM.

27  Thus, the holding of *Hemi Group*, even if controlling (which it arguably is not), is not applicable to this case where a direct relationship between the RICO violation

28  and the alleged harm is shown.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 8 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1  in the case filed fraudulent affidavits, and therefore were able to acquire a

2  disproportionate number of auctioned liens. *Id.* at 644.

3      The plaintiffs, facing additional bidders, lost some of the property that they

4  otherwise would have won, to their financial damage. 553 U.S. at 644. The

5  plaintiffs subsequently sued under RICO, alleging that, but for defendants'

6  wrongful conduct, they would have had the opportunity to obtain more tax liens.

7  *Id.* at 647-48. The defendants asserted, *inter alia*, that the plaintiffs were unable to

8  establish proximate cause under *Holmes*, because, if anything, they were only

9  indirectly harmed by defendants' conduct. *Id.* at 648. The Court disagreed with the

10 defendants and held that the plaintiffs "satisf[ied] the proximate-cause principles

11 articulated in *Holmes and Anza*." *Id.* at 658. The Court held that the harm was "a

12 foreseeable and natural consequence of [the defendants'] scheme." *Id.*

13 Accordingly, the *Bridge* Court found that the "plaintiffs' alleged injury - the loss of

14 valuable liens - [was] the direct result of [the defendants'] fraud." *Id.*

15     As was the plaintiff in *Bridge*, CPM was a foreseeable victim of BH's

16 fraudulent scheme. Even more so, it was the direct, intended target of BH's

17 actions. This is simply not a situation where CPM has suffered "pass-on" or

18 "derivative" injuries. BH's illegal and fraudulent lulling scheme directly and

19 intentionally harmed CPM because CPM continued to finance the dispensing

20 programs of its contract physicians and pay collection costs, believing that it would

21 eventually be able to recover those sums directly from BH and other workers

22 compensation insurers with whom BH conspired.

23          2.  **The policy concerns articulated in *Holmes* are not present in this case.**

24     In *Holmes*, the Supreme Court articulated three motivating principles for

25 RICO's proximate causation requirement. First, less direct injuries can make it

26 difficult to ascertain what damages are attributable to the RICO defendants'

27 conduct. *Holmes*, 503 U.S. at 545. Second, undesirably complex rules may be

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 9 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1  necessary to apportion damages associated with remote injuries. *Id.* Finally,

2  grappling with such damage calculation issues is unnecessary where more direct

3  victims could act as "private attorneys general" to advance RICO's deterrence

4  policies. *Id.* Courts considering causation issues in the RICO context consider

5  these factors when determining whether proximate cause is present. *See Williams*,

6  465 F.3d at 1290. The policy concerns articulated in *Holmes* are not present here.

7          **a.    CPM is the only victim of the BH's illegal actions
                willing and able to pursue its claim.**

8

9      BH argues that CPM's injuries do not satisfy the proximate cause

10  requirement because the "injuries result from CPM's contractual relationships with

11  [its contracting] physicians." MSJ at 10. CPM's contracting physicians cannot be

12  relied upon to sue BH because the contracting physicians, in most cases, have not

13  lost any money. Rather, it is CPM that provided financing to the physicians to

14  enable them to purchase medications to be dispensed to their patients. In many

15  cases the physicians have sold or assigned their interest to CPM. As a practical

16  matter, the only party in a position to challenge BH's illegal scheme is CPM.

17          **b.    Determining damages attributable to BH's conduct
                will not give rise to the concerns articulated in *Holmes*
                and *Anza*.**

18

19      The concerns expressed by the *Holmes* Court, and reiterated in *Anza v. Ideal*

20  *Steel Supply Corp.*, 547 U.S. 451 (2006), are not present in this case.

21  Notwithstanding BH's contrived exasperation over hypothetical damage assessment

22  difficulties (*see* MSJ at 11), no *Holmes/Anza* issues potentially complicating

23  damage apportionment in this matter exist here.[6]

24  [6]  The concerns raised in *Anza* are not present here. First, as explained above,
CPM's contracted physicians have suffered no harm by BH's conduct; on the

25  contrary, they are insulated by CPM's financing of their dispensing programs.
Further, the fraud alleged in *Anza* was not directed at the plaintiff's customers, but

26  rather at unrelated governmental tax authorities with no business relationship to any
party. The *Anza* Court recognized that the immediate victim of the alleged fraud—

27  the State of New York—could be expected to pursue appropriate and
straightforward tax fraud remedies, thus obviating the need for complex civil RICO

28  actions concerning the same tax fraud. *Id.* at 460. BH's fraud, in contrast was
directed aimed at CPM and calculated specifically to disrupt its cash flow and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 10 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

**D.   CPM'S DAMAGES WERE CAUSED BY THE RICO PREDICATE ACTS.**

BH attempts to confuse the issue by claiming that CPM's damages were caused by "non-predicate acts." MSJ at 9-10. That simply cannot be; the very damages that CPM complains of arise directly from the lulling claims that this Court has already held "are sufficient to demonstrate predicate acts of mail and wire fraud." *California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1162 (C.D. Cal. 2009). CPM, believing BH would make reasonable payments on claims, continued to finance its physicians and conduct its business. If BH had not implemented a total boycott of CPM's claims, then CPM would not have experienced severe reductions in profit and lost revenue. BH's actions nearly drove CPM out of business by preventing it from collecting on its claims. BH's predicate acts of fraud, calculated specifically to choke off CPM's cash flow, directly caused of all of CPM's losses.

**E.   HYPOTHETICAL "INDEPENDENT CONTRIBUTING FACTORS" DO NOT PRECLUDE A FINDING THAT BH'S ILLEGAL CONDUCT PROXIMATELY CAUSED CPM'S LOSSES.**

BH further argues that CPM's injuries should not be attributed to their illegal conduct because "independent contributing factors" have broken the "chain of causation." MSJ at 11-12. Imaginary, far-fetched scenarios in which CPM would have suffered the same injuries without BH's misconduct cannot absolve BH of liability, however. As discussed above, proximate cause is "not the same thing as sole cause." *Oki Semiconductor Co.*, 298 F.3d at 773. BH points to nothing in the record suggesting that proximate cause cannot exist here.

In addition, courts have found proximate cause to be present, even where

---

business relationships. Finally, while the injuries alleged in *Anza* related to general market share and the loss of many customers, all of whom certainly have any number of reasons for choosing one competitor's product over another's, the injuries alleged here relate specifically to CPM's existing relationship with its contracted physicians, nearly all of whom CPM has financed. Calculating CPM's damages, therefore, will be relatively straightforward.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)
- 11 -

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

intervening factors involving decisions by other parties contributed to the alleged harm.  *See, e.g., Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 808 (N.D. Cal. 1989) (defendant's false representations of compliance with environmental laws gave defendant unfair competitive advantage over plaintiff for bidding on Navy contracts and damaged plaintiff); *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 565 (5th Cir. 2001) (defendant allegedly spread false rumors concerning plaintiff's connections with Satanic worship using mails and wires, proximately causing customers to boycott plaintiff's products).  And the Supreme Court recently held that a plaintiff's losses of valuable tax liens in the context of a bidding process, acquired by the defendants through unfair advantages created by mail and wire fraud, were the "direct result of [the defendants'] fraud." *Bridge*, 553 U.S. at 658.  These cases demonstrate that despite theoretical intervening causes, wrongful conduct that is a "substantial factor" in plaintiff's loss gives rise to RICO liability.  *See Oki Semiconductor Co.*, 298 F.3d at 773.

BH also argues that ultimate determinations by the Workers' Compensation Appeals Board ("WCAB") as to the merits of BH's objections to CPM's bills and how much should be paid on them break the chain of causation.  MSJ at 11.  For BH's argument to be taken seriously it must assume that all CPM claims and liens will be denied by the WCAB - a ridiculous assumption.  As set forth in the Complaint, CPM's historical annual recovery on BH claims of 76.3% dropped to a rate of 0.05% and is presently 0%.  Fifth Amended Complaint, ¶ 50.  BH's illegal actions are the sole cause of CPM's damages and if BH ends its illegal boycott, CPM will return to a recovery rate of approximately 76% with BH and the WCAB. BH's WCAB argument is a total red hering.

Additionally, the damages CPM suffered from BH's lulling conduct will not be erased regardless of any WCAB action or inaction.  The costs incurred as a result of the lulling do not evaporate because of cases that go to the WCAB; such damages are in addition to the outstanding amounts of the claims and liens.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 12 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1    Moreover, only a small fraction of CPM's bills become lien claims at the WCAB.

2    Drobot Decl., ¶ 10. The majority of claims, thus, are not within the purview of

3    BH's WCAB argument. As to those that have gone to the WCAB, BH has had its

4    attorneys seek extensive document and deposition discovery to raise the cost and

5    delay payment to CPM in every case, such that the WCAB process has ground to a

6    halt. *Id.* CPM's damages must survive even as to those cases.

### F.    DAMAGES TO CONTRACTING PHYSICIANS DO NOT BREAK THE CHAIN OF CAUSATION.

BH argues (MSJ at 11-12) that injuries suffered by CPM's contracting physicians break the chain of causation. But again, CPM's injuries are direct rather than derivative of those of the physicians. The scenario before the court is not remotely like that in the cases cited by BH on this point—of heirs who inherit an estate worth less because their relative was the victim of RICO violations and shareholders whose stock is worth less because the company issuing the shares was injured.[7]

### G.    THE ASSIGNABILITY OF CLAIMS IS IRRELEVANT TO WHETHER BH'S CONDUCT HAS PROXIMATELY CAUSED CPM'S INJURIES.

Given that CPM has suffered substantial, direct injury, it need not rely upon an assignment theory to support its claims. BH's arguments against assignment are without merit nonetheless.

BH wrongly cites Cal. Labor Code Section 4900 for the proposition that claims for compensation are not assignable before payment. MSJ at 12. The purpose of the provision is to protect injured workers, not medical providers, by removing compensation awards from operation of usual remedies available to creditors, and to insure that awards are available to injured employee for recovery and rehabilitation. *Richey v. Ziegler*, 89 Cal. App. 35 (1928); *Prudential Ins. Co. of*

---

[7] In the *Firestone* case BH cites on this point (MSJ at 12), it was critical that Ohio law permitted the executor of an estate to sue for damages to it to the exclusion of the heirs. No similar exclusion applies here.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 13 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1   *America v. WCAB*, 22 Cal. 3d 776, 779 (1978).  Lien providers are separately dealt

2   with under the Labor Code at Section 4903 *et seq.* and do not need such protection.

3   Even the WCAB rules recognize that medical liens may be assigned.  8 Cal. Code

4   Regs. §10550.[8]

5        BH also cites language from Labor Code Section 4902 that "[n]o

6   compensation … shall be paid to any … agent, but shall be paid directly to the

7   claimant entitled thereto unless otherwise ordered by the appeals board."  In

8   context, it is plain that this provision refers only to payment to an applicant worker.

9   Regardless, the qualifying words, "unless otherwise ordered by the appeals board"

10  means that section 4902 plainly permits the Board to order payment in the fashion

11  appropriate under the circumstances.  The Board routinely does so.  Moreover,

12  CPM's contracting physicians have expressly authorized that all payments be made

13  payable to CPM, so the Board can, and indeed must, order payment in that fashion.

14  BH's Labor Code arguments are disingenuous and misleading.

15       **H.    CPM HAS SUFFERED ANTITRUST INJURY AS A RESULT
            OF DEFENDANTS' ILLEGAL ACTIONS.**

16       BH mistakenly argues that "summary judgment should be granted … because

17  CPM cannot prove any antitrust injury."  MSJ at 14.  As discussed below, CPM has

18  provided a plethora of facts demonstrating that CPM's injuries directly result from

19  BH's illegal group boycott of CPM and other companies that assist physicians with

20  in-office medication dispensing programs.[9]

21       In the Ninth Circuit, it is well-established that "[d]irectness in the antitrust

22  context means 'close in the chain of causation.'"  *Yellow Pages Cost Consultants,*

---

24  [8]  Subsection (d) thereof provides that "if a lien claim is being filed or amended, or
25  if a lien claimant is appearing, the lien claimant shall state whether it is the original
    owner of the alleged debt *or whether it has purchased the alleged debt from the*
26  *original owner or some subsequent purchaser.*" (emphasis added).

    [9]  As the Court is aware, the antitrust injury issue has been briefed thoroughly in
27  several of CPM's briefs.  As such, CPM respectfully refers the Court to the
    Supplemental Brief that it filed on September 10, 2010 [Dkt. No. 128] for a more
28  complete discussion of this issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 14 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1   *Inc. v. GTE Directories Corp.*, 951 F.2d 1158, 1162 (9th Cir. 1991).  What this

2   means is that a plaintiff can establish antitrust injury if it can show a "causal link"

3   between the injury sustained and a defendant's conduct.

4       Here, CPM's injuries result not only from BH's illegal boycott, but also from

5   actions taken by its contracted physicians.  Similar to injury suffered by the plaintiff

6   consultants in *Yellow Pages*, there is a "casual link" between BH's blanket refusal

7   to pay any reimbursements for medications submitted via CPM and the resulting

8   injury from the physicians failing to pay CPM commissions and/or terminating

9   relationships with CPM.

10      BH attempts to preempt this argument by claiming that CPM has failed to

11  allege that it is a market competitor of BH.  *See* MSJ at 15-16.  However, this

12  ignores clear Supreme Court and Ninth Circuit precedent holding that a plaintiff

13  need not be a competitor of a defendant in order to suffer antitrust injury.

14      The Supreme Court's decision in *Blue Shield of Virginia v. McCready*, 457

15  U.S. 465 (1982) is controlling on this issue.  In *McCready*, the plaintiff, a member

16  of a group health plan, sued her insurer for damages under Section 4 of the Clayton

17  Act.  The plaintiff alleged that the insurer had entered into a conspiracy with

18  psychiatrists to restrain competition in the psychotherapy market.  *McCready*, 457

19  U.S. at 469-70.  The means used by the conspirators was excluding and boycotting

20  clinical psychologists from receiving compensation under Blue Shield health plans.

21  *Id.* at 470.  Pursuant to the conspiracy, Blue Shield refused to pay McCready's

22  claim for reimbursement of the cost of treatment by a psychologist.  *Id.*  The

23  Supreme Court rejected the argument that because the conspiracy was directed

24  against psychologists rather than against subscribers to health plans like McCready,

25  the injury to McCready was too "remote" to permit suit.  *Id.* at 478-79.  The court

26  did so on the ground that denial of reimbursement to patients of psychologists was

27  "the very means by which it is alleged that Blue Shield sought to achieve its illegal

28  ends. The harm to McCready ... was a necessary step in effecting the ends of the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 15 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1   alleged illegal conspiracy" and an "integral ... aspect of the conspiracy alleged." *Id.*

2   at 479.

3        The Court held McCready was entitled to sue because Blue Shield was

4   charged with "a purposefully *anti-competitive scheme*," and that the injury

5   McCready suffered "was inextricably intertwined with the injury the conspirators

6   sought to inflict on psychologists and the psychotherapy market." *Id.* at 483-84

7   (emphasis in original). It simply did not matter to the Court that McCready was not

8   a competitor of the defendants because the Court stated that the injury she sustained

9   was such an integral part of the scheme to eliminate competition in that market as to

10  constitute antitrust injury. *Id.*

11       Similarly, *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739 (9th Cir. 1984), is

12  directly on point. The plaintiff in *Ostrofe* was the former marketing director for

13  defendant Crocker. *Ostrofe*, 740 F.2d at 741. Ostrofe allegedly refused to perform

14  activities necessary to Crocker's purported conspiracy to restrain trade in the

15  market for paper lithograph labels. *Id.* at 741-42. When he refused to go along

16  with the conspiracy, Ostrofe alleged, Crocker terminated him, and he was boycotted

17  from further employment in the industry. *Id.* at 742. Although the plaintiff in

18  *Ostrofe* was not a participant in the relevant market nor a competitor of the

19  defendants, the Ninth Circuit concluded that the injury he sustained constituted

20  "antitrust injury" for purposes of standing. *Id.* at 746.

21       Likewise in this case, the fact that CPM does not compete directly with BH

22  has no bearing on whether or not CPM has properly sustained "antitrust injury."

23  Accordingly, this Court should hold that CPM has suffered antitrust injury.

24      **I.**    **CPM HAS SUFFERED DIRECT INJURY THAT IS OF THE**

25           **TYPE THAT THE ANTITRUST LAWS WERE INTENDED TO PREVENT.**

26       BH further claims that CPM's alleged injury is "not the type of injury that the

27  antitrust laws were intended to prevent." MSJ at 16-17. However, that is not the

28  case, as destruction of competition within an entire industry, along with destruction

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 16 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV-00-0242-DOC-(ANx)

1  of the industry itself, is surely the type of injury the antitrust laws were designed to

2  prevent.  Moreover, BH falls back on its spurious argument that CPM's injury is

3  not protected under antitrust laws because "reimbursement rates for drugs

4  dispensed to injured workers are fixed by law."  MSJ at 16.  This utterly ignores the

5  fact that neither the commission nor the management fee charged by each company

6  in this market are fixed.  If BH's illegal boycott were not in effect, market forces

7  would dictate the commission rate for each company, as the rate would be affected

8  by elements such as the efficiency with which a company collects and its collection

9  rate.  BH's refusal to pay any claims submitted by companies such as CPM

10  effectively destroys competition within the entire market as there no longer exist

11  any incentive for companies to compete with one another, as BH's illegal group

12  boycott would preclude payment.  CPM's injury plainly derives from a

13  competition-reducing aspect of BH's illegal group boycott of the in-office

14  medication dispensing market because it is now prevented from collecting any

15  commissions for reimbursements.

16      Activity which "detrimentally change[s] the market make-up and limit[s]

17  consumers' choice to one source of output" is antitrust injury.  *Glen Holly Entm't*

18  *Inc. v. Tektronix Inc.*, 352 F.3d 367, 374 (9th Cir. 2003).  It is undisputed here that

19  BH's actions in this case have reduced consumers' choice to one source of output.

20  By eliminating the in-office medication dispensing market, BH forces worker

21  patients to go only to traditional pharmacies to obtain prescribed medications, and

22  eliminates the option of obtaining medications directly from personal physicians.

23  As in *Glen Holly*, BH is not entitled to pre-empt the workings of a market by

24  unilaterally deciding what consumers need or do not need.  The fact that traditional

25  pharmacies cannot raise prices (*see* MSJ at 17) is irrelevant because Ninth Circuit

26  case law mandates that it is not up to BH to unilaterally dictate what the market can

27  or cannot afford.  *Id.* at 376-77.  Indeed, the obvious conclusion in any situation

28  where there is competition among businesses is that these businesses will lower

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 17 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

prices to attract consumers.  This is exactly the type of injury the antitrust laws were intended to cover and accordingly, the Court should hold that there is antitrust injury in this case.

### J.    CPM HAS ADEQUATELY IDENTIFIED RELEVANT MARKETS.

It is clear from BH's summary judgment motion that they disagree with CPM's market definitions.  MSJ at 17-18.  This disagreement, however, is not sufficient reason for the Court to conclude that CPM has failed to allege a relevant market and to grant the motion summary judgment.  The definition of the relevant product market is, after all, ultimately for the finder of fact.  *See Eastman*, 504 U.S. at 482 ("[t]he proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers").  Moreover, as shown below, CPM has provided evidence of clearly defined relevant markets.

### K.    CPM HAS PROVIDED EVIDENCE OF RELEVANT PRODUCT MARKETS.

It is sufficient for a plaintiff to identify product markets (1) that include all products reasonably interchangeable and (2) that are plausible.  CPM's definitions for the pharmacy/pharmacy management market and the in-office medication dispensing market readily meet both of these standards.

Specifically, CPM has provided evidence detailing the numerous options that injured workers have for filling prescriptions through the Workers' Compensation Insurance system.  Drobot Decl., ¶ 2.  For instance, workers can go to traditional pharmacies for their prescriptions or they can obtain their medications directly from their personal physicians, presuming these physicians offer an in-office medication dispensing program.  Therefore, in a legal and competitive market, consumers, such as injured workers, would have a choice of service to use for their prescription needs.  This defines the relevant market—which is the subset of interchangeable products or reasonable substitutes based on the cross-elasticity of demand.  *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).

Arent Fox LLP
Attorneys At Law
Los Angeles

LA/362047.1

- 18 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1   Essentially, the cross-elasticity of demand measures consumers' ability to choose

2   among competitors, and it measures the group of sellers and producers who have

3   the "ability to deprive each other of significant levels of business." *Id.* at 1045.

4   Here, CPM has presented strong evidence and compelling arguments to support its

5   respective definitions of the relevant market. Accordingly, this Court should defer

6   to the jury in determining what constitutes a relevant market and therefore deny the

7   motion for summary judgment.

8       **L.    DEFENDANTS HAVE MARKET POWER BECAUSE THEIR
                ACTIONS HAVE DESTROYED ALL OF THE COMPANIES IN**

9       **THE IN-OFFICE MEDICATION DISPENSING MARKET.**

10          Without citation to any evidence, BH disingenuously claims that it does not

11  "have any power to affect competition in" any relevant market. MSJ at 19. The

12  block list alone (Bowers Decl., Ex. A) necessarily implies that the pharmacy benefit

13  management companies on the list have suffered severe cash flow problems and are

14  in severe financial distress due to their inability to collect on bills and lien claims.

15  As such, BH cannot claim that it does not have market power to affect competition

16  when its very actions (and those of its co-conspirators) have done exactly what it

17  sought out to do when it implemented an illegal group boycott of CPM and

18  companies like CPM, not to mention the tag along carriers who followed these

19  conspirators' lead. *See* Drobot Decl., ¶ 12. Moreover, this issue is not ripe for

20  summary adjudication as CPM has been precluded by Defendants' actions from

21  deposing BH witnesses who possess relevant information as to the effect of the

22  boycott on other companies within the in-office medication dispensing market.

23  Fed. R. Civ. P. 56(f).

24      **M.    THIS COURT HAS ALREADY RULED THAT THE NOERR-
                PENNINGTON DOCTRINE DOES NOT APPLY TO BAR**

25      **CPM'S CLAIMS.**

26          Inexplicably, BH attempts to argue that its conduct before the WCAB

27  constitutes protected activity under the *Noerr-Pennington* Doctrine. *See* MSJ at 20-

28  22. This Court has already held that CPM has "convincingly argue[d] that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 19 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1  Defendants' conduct during litigation before the WCAB was but one element of a

2  broader scheme to boycott CPM through the non-payment of bills, the

3  dissemination of 'block' letters, and the false promise of future payment to throw

4  CPM off the scent.  Tentative Order on Zenith's Motion to Dismiss at 9.  All of

5  these activities are neither protected petitioning conduct nor 'incidental' conduct

6  otherwise protected under the *Noerr-Pennington* doctrine." *Id.* at 9.  Accordingly,

7  this Court should deny BH's summary judgment motion on this issue.[10]

8        **N.**    **THE DEFENDANTS' ACTIVITIES ARE NOT EXEMPT FROM**
                **THE REACH OF THE ANTITRUST LAWS BY REASON OF**

9                  **THE MCCARRAN-FERGUSON ACT.**

10        BH mistakenly argues that "CPM's federal antitrust claims … are barred

11  under the McCarran-Ferguson Act…." MSJ at p. 22.  Tellingly, BH then fails to

12  actually argue why this is so, but simply states in conclusory fashion that "[t]he

13  alleged practices are squarely within the business of insurance…." *Id.* at p. 23.  BH

14  fails to expound further on this issue because a closer examination, guided by

15  controlling Supreme Court precedent, clearly shows that the McCarran-Ferguson

16  Act does *not* bar CPM's antitrust claims.[11]

17        BH's practices that are challenged in this action are simply not the "business

18  of insurance," as that phrase has been interpreted by the Supreme Court and other

19  applicable precedents.   Even assuming, *arguendo*, that BH's conduct can be

20  characterized as the "business of insurance," evidence has been provided

21  establishing BH's conduct constitutes an agreement to, or an act of "boycott,

22  coercion or intimidation," rendering the McCarran-Ferguson exemption

23  inapplicable.  In short, BH's actions simply do not take them beyond the reach of

---

24  [10] If the Court wishes for fuller discussion of the *Noerr-Pennington* Doctrine,
Plaintiff respectfully refers the Court to its Opposition to Zenith's Motion to

25  Dismiss filed on August 2, 2010 [Dkt. No. 110] which contains a thorough
discussion of this issue.

26  [11] CPM again notes that the McCarran-Ferguson Act was assiduously discussed in

27  CPM's Supplemental Brief filed on September 10, 2010 [Dkt. No. 128].
Accordingly, CPM respectfully refers the Court to that brief for a more thorough

28  discussion of the issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 20 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1 federal antitrust laws.

2         **1.**   **The Complaint adequately pleads boycott, coercion, or
intimidation.**

3

4 The antitrust exemption for the "business of insurance" does not apply if the

5 conduct in question constitutes an agreement to, or act of, "boycott, coercion or

6 intimidation." 15 U.S.C. § 1013(b). The evidence provided by CPM shows acts

7 that amount to boycott, coercion or intimidation.[12]

      Since *Barry* and *Hartford*, numerous courts have declined to grant summary

8 judgment with respect to claims that a boycott exception to an asserted McCarran-

9 Ferguson exemption existed, in light of potential factual disputes. *See In re

10 Workers' Comp. Ins. Antitrust Litig.*, 867 F.2d 1552, 1562-63 (8th Cir. 1989)

11 (reversing grant of summary judgment, finding material disputed issues of fact

12 existed as to the applicability of the boycott exception).

13       Here, CPM has provided evidence that a boycott occurred. Drobot Decl., ¶

14 11. These allegations include: (a) concerted agreements with other workers

15 compensation insurers of a development of a "block list" of companies that

16 participated in the in-office medication dispensing market; and (b) seeking to

17 encourage other insurers and employers to join in BH's illegal practices. *Id.*; *see

18 also* Bowers Decl., ¶ 2, Ex. A. Moreover, a current claims supervisor at Defendant

19 ACCA named Debbie Palfy testified during her deposition that she was familiar

20 with such block lists during the time period in question and that they were used by

21 ACCA claims personnel in processing workers' compensation medical billings.

22 Bowers Decl., ¶ 2.

23       As the evidence shows, the victims were companies like CPM that assisted

24 physicians in setting up and managing their in-office medication dispensing

25

26 [12] BH's claim that the boycott exception does not apply because no "unrelated
transactions are alleged" is unavailing. In this case, BH's refusal to deal with CPM
27 on reimbursements (i.e., the unrelated transaction) was an effort to stop CPM from
offering pharmacy management services to physicians (i.e., the targeted
28 transaction).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 21 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09 0242 DOC (ANx)

1   programs.  As part of the group boycott, the BH attempted to and succeeded in

2   convincing other workers' compensation insurers to stop dealing with the CPM and

3   others in the same business as CPM.  As in *Barry*, this concerted refusal to deal

4   denied CPM and others in the same business as CPM of any alternative sources of

5   reimbursement.  *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 553

6   (1978).  Accordingly, the conduct alleged here amounts to a boycott within the

7   meaning of the McCarran-Ferguson Act.

8        BH's actions also constitute "coercion" and "intimidation" within the

9   meaning of Section 3(b).  "[C]oercion" and "intimidation" are not adjuncts to the

10  "boycott" language in Section 3(b), but are independent bases for finding an

11  exception to the McCarran-Ferguson exemption.  *See Weatherby v. RCA Corp.*,

12  Nos. 85-CV-1615, 85-CV-1613, 85-CV-1814, 1986 WL 21336, *4 (N.D.N.Y. May

13  9, 1986).  The terms have been defined as "pressuring a party with whom the other

14  party has a dispute into doing some action or refraining from some action." *Id.*  For

15  example, in Weatherby, generalized allegations of coercive or intimidating tactics

16  aimed at pressuring the plaintiff not to sell life insurance were deemed sufficient.

17  *Id.* at *5.  CPM has provided evidence of such pressuring conduct.

18           2.    **The purpose of the McCarran-Ferguson Act is to exempt
               from the antitrust laws conduct constituting the "business of**
19             **insurance."**

20       The debates underlying the passage of the McCarran-Ferguson Act make

21  clear that Congress' primary objective in creating the antitrust exemption was to

22  permit the joint collection of statistical data by insurers' setting of risk rating

23  schedules through private rating organizations and ratemaking bureaus.  *Group Life*

24  *& Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 221-22 (1979).  BH's activities

25  are not within the scope of the exemption provided by the McCarran-Ferguson Act

26  because its conduct is wholly unrelated to the joint collection of statistical data or is

27  in any way related to cooperative ratemaking.

28       Accordingly, BH's challenged practices do not constitute the "business of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 22 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

insurance," as that term has been construed.  To the contrary, the CPM has provided evidence of a classic example of a group boycott intended to wholly destroy the market for in-office medication dispensing services.

### 3. **BH has not met its burden of showing that the conduct alleged is part of the "business of insurance."**

The antitrust exemption of the section 2(b) of the McCarran-Ferguson Act applies only to the "business of insurance"; it does not broadly exempt the "business of insurance companies." *Union Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982); *Royal Drug*, 440 U.S. at 216-17; *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 781 (1993).  The issue is not, therefore, whether a person or company is subject to state regulation, but "whether a particular practice is part of the 'business of insurance.'" *Hartford*, 509 U.S. at 781-82.  Therefore, in determining whether "a particular *practice* in part of the 'business of insurance,'" the Supreme Court has formulated a three-part test[13] (the "*Pireno* Test") designed to determine whether a particular practice is part of the "business of insurance."  Here, BH has failed to meet their burden with respect to all three factors cited above.

### a. **BH's agreement with other insurers to engage in concerted action to destroy the in-office medication dispensing market does not involve the spreading or transferring of policyholder risk.**

It is well-established that the primary elements of an insurance contract are the spreading and underwriting of a policyholder's risk. *Royal Drug*, 440 U.S. at 211.  On this point, BH's summary judgment motion simply offers the *ipse dixit* that the "practices alleged here involve the reimbursement of requests for payment submitted by medical providers," but fail to demonstrate why this involves risk spreading or risk transference.  MSJ at 23.

The gravamen of this case deals with the denial and delay of reimbursement

---

[13] "[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Pireno*, 458 U.S. at 120.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 23 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

payments due for prescription medications.  CPM's claims relate to how insurers go about making health care services available to the workers of its policyholders.  In *Royal Drug*, Blue Shield provided $2.00 prescriptions to its policyholders by way of pharmacy agreements.  Here, California workers' compensation law allows BH to make medication available to injured workers of its policyholders by way of reimbursement agreements with doctors that require the doctors to send their prescribed bills to BH containing details of the medication prescribed.  Neither type of agreement (the pharmacy agreement in *Royal Drug* or the medication reimbursement bills and/or liens here) can be said to transfer or spread policyholder risk.  Accordingly, the first *Pireno* criterion is therefore unsatisfied on the facts of this case.

> **b.    The challenged conduct does not implicate the policy relationship between insurer and insured.**

Turning to the second prong of the *Pireno* test, it is clear that the antitrust claims presented in this case do not implicate the policy relationship between insurers and insured.  Rather, they involve relationships among companies like CPM who provide services to physicians who wish to set up their own in-office medication dispensing program and the physicians themselves, injured workers and their physicians, and injured workers and traditional pharmacies.

In determining what is integral to the policy relationship, the Supreme Court has noted that the focus is on the extent to which the state law furthers the interests of the policyholders.  *United States Dept. of Treasury v. Fabe*, 508 U.S. 491, 509 (1993).  The Court's decision in *Royal Drug* also supports this conclusion, noting that in that case, the defendant health insurer had promised its policyholders to provide them with prescription drugs at a cost of $2.00 per prescription, and "[s]o long as that promise is kept, policyholders are basically unconcerned with arrangements made between Blue Shield and participating pharmacies." *Royal Drug*, 440 U.S. at 214.  What constitutes an "integral part of the policy

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 24 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1    relationship" is therefore determined by reference to the interests of the

2    policyholders.

3         In this case, the claims in dispute are those of the medical providers, not the

4    policyholders.  Therefore this case is similar to *Royal Drug* because the

5    policyholders are unconcerned with the reimbursement arrangements between BH

6    and the doctors so long as the injured workers of the policyholders receive medical

7    treatment and medication as contemplated by their workers compensation insurance

8    policies with Defendants.  *See Royal Drug*, 440 U.S. at 214.  Accordingly, because

9    these reimbursement provisions do not have the aim of regulating a practice that is

10   an integral part of the policy relationship between the insurer and the insured,

11   *Pireno*'s second criterion is unsatisfied on the facts of this case.

12              **c.    CPM, the physicians and the injured worker patients
                        are not "entities within the insurance industry."**

13        In *Pireno*, the Supreme Court noted that the third factor is not dispositive, it

14   is nonetheless is "mandated by the *Royal Drug* analysis."  *Pireno*, 458 U.S. at 133.

15   Here, it is without dispute that CPM, physicians and injured worker patients are not

16   "entities within the insurance industry."  And, as discussed above, the billing

17   procedures between the Defendants and those that fill prescriptions of injured

18   worker patients do not involve the spreading of risk.  The provisions of California

19   statutes addressing reimbursement therefore "can hardly be said to lie at the center

20   of ... legislative concern."  *Id.* at 133.  As a result, the third *Pireno* criterion is also

21   unsatisfied.  In sum, none of the three Pireno criteria are met in this case.  Thus, this

22   Court should hold that the McCarran-Ferguson Act does not apply in this case.

**III.   CONCLUSION**

24        For the foregoing reasons defendants' summary judgment motion should be

25   denied in its entirety.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

- 25 -

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)

1    Dated:     November 15, 2010       ARENT FOX LLP

2                                          Terree A. Bowers
Matthew J. Kitson

3                                          NORRIS & GALANTER LLP

4                                          Donald G. Norris

5

6                                      By: _____

7                                          Matthew J. Kitson
Attorneys for Plaintiff
CALIFORNIA PHARMACY
MANAGEMENT, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/362047.1

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
SACV 09-0242 DOC (ANx)