LOCKE LORD BISSELL & LIDDELL LLP
Peter Roan (137379)
proan@lockelord.com
Ronald D. Kurtz (195918)
rkurtz@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Tel:   213-485-1500
Fax:   213-485-1200

Attorneys for Defendants
Redwood Fire and Casualty Insurance Company,
Cypress Insurance Company, Oak River Insurance
Company, American All Risk Insurance Services, Inc.,
American Commercial Claims Administrators, Inc.,
National Liability and Fire Insurance Company and
Berkshire Hathaway Homestate Companies

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| CALIFORNIA PHARMACY MANAGEMENT, LLC., a California limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>ZENITH INSURANCE COMPANY, a California corporation; and ZNAT INSURANCE COMPANY, a California corporation,<br><br>                    Defendants.<br><br>AND CONSOLIDATED ACTION. | Case No. SACV09-00242-DOC (ANx)<br>Consolidated with Case No. SACV 09-0141 DOC (ANx)<br><br>Honorable David O. Carter<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        December 6, 2010<br>Time:        8:30 a.m.<br>Place:       Courtroom 9-D<br>             (Santa Ana)<br><br>[Filed concurrently with Declaration of Peter Roan and Defendants' Objections To Plaintiff's Evidence] |

# **TABLE OF CONTENTS**

**Page No(s)**

INTRODUCTION ................................................................. 1

ARGUMENT ....................................................................... 4

1.    CPM MISCONSTRUES STANDARDS GOVERNING
SUMMARY JUDGMENT ......................................... 4

2.    *HEMI GROUP* IS FATAL TO CPM'S RICO CLAIMS
AS CPM'S ALLEGATIONS AND ASSERTIONS
DEMONSTRATE THAT ANY INJURY IT SUSTAINED
WAS ONLY THE INDIRECT RESULT OF ITS FAILUE
TO OBTAIN PAYMENT ON BILLS IT SUBMITTED
ON BEHALF OF CONTRACTING PHYSICIANS ........ 8

3.    WORKERS' COMPENSATION CLAIMS ARE ONLY
ASSIGNABLE BY ORDER OF THE CALIFORNIA
WORKERS' COMPENSATION APPEALS BOARD ..... 9

4.    DEFENDANTS ARE ENTITLED TO JUDGMENT
BECAUSE CPM HAS FAILED AND CONTINUES
TO REFUSE TO COME FORWARD WITH EVIDENCE
TO SUPPORT ITS CLAIMS ..................................... 11

5.    CPM MISCHARACTERIZES THE INDIRECT
NATURE OF ITS ALLEGED DAMAGES AND
CANNOT DEMONSTRATE THAT IT HAS SUFFERED
ANTITRUST INJURY ............................................... 14

    A.   It Is Undisputed That The "Management Fee"
Received By CPM Is Paid By The Prescribing
Physicians ...................................................... 14

    B.   CPM's Assertion That Any "Causal Link" Is
Sufficiently Direct To Establish Antitrust Injury
Is Incorrect .................................................... 15

    C.   CPM's References To Varying Management
Fees Do Not Relate To Competition In Any
Alleged Relevant Market ................................ 18

    D.   CPM Fails To Deminstrate A Genuine Issue Of
Fact As To Any Purported Relevant Market .......... 20

6.    THE *NOERR-PENNINGTON* DOCTRINE BARS
CPM'S CLAIMS BECAUSE CPM CONCEDES THAT
ITS ONLY EVIDENCE OF ALLEGED LULLING
IS THE ROUTINE BILLING AND APPEAL
CORRESPONDENCE .............................................. 21

CONCLUSION ................................................................... 22

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

i

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)("*Adickes*").................................4

*American Title Ins. Co. v. Lacelaw Corp.,*
    861 F.2d 224 (9th Cir. 1988).................................................................7, 15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2025, 91 L.Ed.2d 202 (1986).........................................7

*Associated General Contactors v. California State Council of Carpenters,*
    459 U.S. 519 (1983) ("*ACG*") ...............................................................14, 15

*Blue Shield v. McCready,*
    457 U.S. 465 (1982)...................................................................16, 17, 18

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)("*Celotex*")..........................4, 7

*City of New York v. Smokes-Spirits.com, Inc.,*
    541 F.3d 425 (2d Cir. 2008)....................................................................8

*Cline v. Industrial Maint., Eng'g & Contracting Co.,*
    200 F.3d 1223 (9th Cir. 2000)................................................................7, 15

*Eagle v. Star-Kist Foods, Inc.,*
    812 F.2d 538 (9th Cir. 1987)..................................................................14

*Glen Holly Entm't v. Tektronix, Inc.,*
    352 F.2d 367 (9th Cir. 2003).................................................................19

*Hemi Group v. City of New York,*
    559 U.S. ___, 130 S.Ct. 983 ("*Hemi Group*").................................................8, 9

*Holmes v. Securities Investor Protection Corporation,*
    503 U.S. 258 (1992)("*Holmes*")................................................................8

*Manistee Town Ctr. v. City of Glendale,*
    227 F.3d 1090 (9th Cir. 2000).................................................................21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
    269 F.Supp.2d 1213 (C.D. Cal. 2003) ......................................................17, 18

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,*
    924 F.2d 1484 (9th Cir. 1991)................................................................20

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

DEFENDANTS' REPLY TO OPPOSITION RE MOTION FOR SUMMARY JUDGMENT

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,*
    210 F.3d 1099 (9th Cir. 2000)("*Nissan*")..................................................4,5, 6

*Oki Semiconductor Co. v. Wells Fargo Bank,*
    298 F.3d 768 (9th Cir. 2002).......................................................................8

*Ostrofe v. H.S. Crocker Co.,*
    740 F.2d 739 (9th Cir. 1984)..............................................................17, 18

*Sempress LLC v. City & County of S.F.,*
    419 F.3d 1052 (9th Cir. 2005)...................................................................21

*Sosa v. DIRECTV, Inc.,*
    473 F.3d 923 (9th Cir. 2006).....................................................................21

*TYR Sport Inc. v. Warnaco Swimwear Inc.,*
    679 F.Supp.2d 1120 (C.D. Cal. 2009).......................................................20

*United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n.,*
    389 U.S. 217 (1967)..................................................................................22

*Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.,*
    951 F.2d 1158 (9th Cir. 1991)...................................................................16

STATE CASES

*Charles J. Vacanti, M.D., Inc. v. State Compensation Ins. Fund,*
    24 Cal.App.4th 800....................................................................................11

*Hand Rehab. Ctr. v. WCAB,*
    34 Cal. App. 4th 1204 (Ct. App. 1995)......................................................10

*Premier Medical Management Sys., Inc. v. California Insurance Guarantee Ass'n,*
    136 Cal. App. 4th 464 (2006).....................................................................21

*Zenith Insurance Co. v. Workers' Compensation Appeals Board,*
    138 Cal. App. 4th 373 (2006).....................................................................10

STATE STATUTES

8 Cal. Code ...................................................................................................10

California Labor Code § 3202.5 .....................................................................10

California Labor Code § 3207 .........................................................................11

California Labor Code § 3209.5.......................................................................11

California Labor Code §§ 4900 -4903.............................................................9

California Labor Code § 4902..........................................................................10

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

DEFENDANTS' REPLY TO OPPOSITION RE MOTION FOR SUMMARY JUDGMENT

California Labor Code § 4903...................................................................................10

California Labor Code § 4903.1(c).............................................................................10

California Labor Code § 5705...................................................................................10

**FEDERAL RULES**

F.R.E. 1002 ...........................................................................................................12

F.R.E. 1004 ...........................................................................................................12

Fed R. Civ. P. 12(b)(7) ...........................................................................................11

Fed. R. Civ. P. 19(a)(1)(b)(ii) ....................................................................................5

Fed R. Civ. P. 72-2.2 ...........................................................................................8, 13

**STATE RULES**

**OTHER AUTHORITIES**

Bill of Rights .........................................................................................................21

First Amendment ...................................................................................................21

**Locke Lord Bissell & Liddell LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

DEFENDANTS' REPLY TO OPPOSITION RE MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

Introduction

California Pharmacy Management, LLC ("CPM") has steadfastly maintained throughout this case that its damages are the lost management fees that physicians did not remit to CPM when bills submitted to Defendants were not paid. CPM now recognizes that these damages are, by definition, indirect and cannot support any of its claims. In its Opposition to the present motion, CPM turns its back on its damage theory, and now claims that its damages stem from increased collection costs and loans to the physicians to finance the purchase of drugs. But CPM's conversion comes too late, and is of no use to it in any event.

CPM's conversion comes too late because the new theory is offered after the close of discovery and after the Defendants filed their motion for summary judgment. Even the new theory is still based on CPM's entitlement to payment on the bills it submitted for drugs dispensed by its contracting physicians, making collection costs and drug financing arrangements the indirect and unknown results of numerous intervening factors, including whether any of the bills were properly payable in the first place, whether CPM was entitled to payment, and the details of the individual financing arrangements allegedly provided to each physician. The new theory is also of no use to CPM because any damages based on loans to physicians are also indirect. CPM has failed to come forward with any evidence whatsoever of its collection costs or alleged losses on loans to physicians. CPM has not only failed to come forward with such evidence, but has actively refused to produce it, to the point of remaining in non-compliance with Judge Nakazato's October 19, 2010 Discovery Order requiring (among other things) production of contracts and communications with the subject physicians and suppliers, financial and accounting records related to the 164 physician in-office dispensing programs in issue, as well as the identification of CPM's "informant" on which it bases "much information" in its Fifth Amended Complaint ("5AC").

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1  CPM even refuses to identify its contracting physicians.  In its Opposition,

2  CPM is less than frank when it suggests that it has made a meaningful production

3  of contracts and assignments.  Opp. at pp. 1-2.  On the day before the deadline for

4  compliance with the Magistrate's order, CPM produced 19 (out of 164) "Financial

5  Asset Agreements" and ten (10) physician contracts.  Declaration of Peter Roan

6  ("Roan Decl.") at ¶¶ 2-3.  Five days after the deadline for compliance had expired,

7  CPM produced six (6) medical lien purchase agreements, and one day later

8  produced one (1) "Physician Office Pharmacy Program Management Agreement."

9  Roan Decl. at ¶¶ 4-5.

10  CPM made this paltry (11.6%, 6.1%, 3.7%, and 0.6%, respectively, out of

11  the universe of 164 physicians), hand-picked production despite the testimony of

12  its President that the contracts for all of the contracting physicians are readily

13  available, in alphabetical order, in three-ring binders, maintained by a paralegal at

14  CPM's office in Newport Beach.  *See* transcript of November 5, 2010 deposition of

15  Michael R. Drobot, submitted under seal as set forth in Roan Decl., ¶ 9 ("Drobot

16  Sealed Depo."), at 76:11-77:12.  The lien purchase agreements are also kept by the

17  paralegal.  *Id*. at 77:14-20.  The management agreements are kept in three-ring

18  binders in Mr. Drobot's office.  *Id*. at 77:13, 78:1-9.  Contrary to CPM's

19  protestations about the burden of producing the physician contacts (*see, e.g.,* Opp.

20  at p. 1 and p.1, n.1), Mr. Drobot testified that all of the contracts could be

21  assembled, copied, and produced by one person in one or two days.  *Id*. at 85:5-

22  86:1.

23  But CPM refuses to produce them, then blithely and unilaterally declares

24  that what it has produced are "representative" or "exemplar" documents.  CPM

25  even asserts, without citation or support of any kind, that "Defendants concede that

26  they have received a representative sample of plaintiff's contracts with the

27  physicians..." (Opp. at p. 2), even though Defendants concede no such thing.  On

28  the contrary, Defendants have sought all responsive contracts and communications

1  with CPM's contracting physicians since February of this year, and were forced to

2  file a successful motion to compel production of those documents and other

3  responsive materials.  CPM's response was to defy Judge Nakazato's Discovery

4  Order.

5      CPM's claims have survived based on its promises that it would come

6  forward with evidence to support its allegations.  CPM alleges that it "has

7  assignments from its highest volume contracting physicians and expects to have

8  assignments from all or most of its physicians of their RICO causes of action

9  against [Defendants] for their interference with contractual relations between CPM

10  and its physicians."  5AC at ¶ 14.  CPM promised that it would produce

11  assignments of its contracting physicians' RICO claims, but it has failed to produce

12  even a single one and does not claim to have done so in its Opposition.  CPM has

13  also failed to produce a single assignment of any antitrust claim and does not claim

14  to have done so in its Opposition.  CPM promised that it would identify the

15  "informant" who "was the source of much information" in its 5AC.  It has not done

16  so.  CPM promised that it would "secure any additional assignments that BH

17  deems necessary" to ensure that Defendants are not subjected "'to a substantial risk

18  of incurring double, multiple, or otherwise inconsistent obligations because of the

19  interest' of the non-party physicians.  Fed. R. Civ. P. 19(a)(1)(b)(ii)."  Opposition

20  to Motion to Dismiss Fifth Amended Complaint at 19:19-21.  CPM has not done

21  so.

22      CPM's Opposition amounts to an attempt to run away from positions that

23  CPM has taken since the inception of the case, based on unsupported argument and

24  sweeping generalizations without supporting evidence.  Even if CPM's repackaged

25  assertions are accepted as true and its new theory of the case is adopted, the result

26  is the same.  CPM can demonstrate no direct injury, and the Court should grant

27  summary judgment in favor of Defendants.

28  ///

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Argument

### 1.    CPM Misconstrues Standards Governing Summary Judgment.

CPM prominently cites *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099 (9th Cir. 2000)("*Nissan*") in its discussion of the standard of proof on summary judgment.  Opp. at p. 2.  In *Nissan*, the Ninth Circuit explains that there are two distinct methods by which a moving party without the ultimate burden of persuasion at trial may carry its initial burden in a motion for summary judgment.  The moving party may either (1) produce evidence negating an essential element of the nonmoving party's case, or (2) after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.  *Id.*, 210 F.3d at 1006.  The Ninth Circuit explains how *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)("*Adickes*"), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)("*Celotex*") exemplify these two separate methods by which a moving party may carry its initial burden.

Defendants have met their initial burden by the *Celotex* method; that is, by showing that CPM does not have enough evidence that it was directly injured by Defendants' conduct, when direct injury is an essential element of both the RICO and the antitrust claims for relief.  Defendants meet the *Celotex* standard in three independently sufficient ways:

First, defendants show that CPM cannot, as a matter of law, demonstrate direct injury under any set of facts based on CPM's own judicial admissions that it is paid by its contracting physicians. CPM has pled in five consecutive versions of its Complaint since March 2009, through and including the operative Fifth Amended Complaint, that it receives a "management fee" for its services paid to it by its contracting physicians.  1AC (March 23, 2009) ¶ 8; 2AC (April 3, 2009) ¶ 8;

/ / /

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1  3AC (August 18, 2009) ¶ 12; 4AC (April 26, 2010) ¶ 14; 5AC (June 23, 2010) ¶

2  14.  The direct cause of CPM's damages is the non-receipt of management fees

3  from its contracting physicians.  There is no evidence of sufficiently direct injury

4  that could establish RICO damages or antitrust standing.

5       Second, Defendants show that the evidence proffered by CPM in its

6  Opposition (Declaration of CPM president Michael R. Drobot) is inadequate and

7  inadmissible under the Federal Rules of Evidence.  *See* concurrently filed

8  Evidentiary Objections to Declaration of Michael R. Drobot.  The Drobot

9  declaration is inadequate because it fails to contain any evidence of CPM's

10  collection costs, "increased" or otherwise, and fails to contain any evidence of the

11  amounts allegedly loaned to CPM's physicians or allegedly lost on those loans.  In

12  addition, CPM acknowledges that it lacks standing when it admits that it obtained

13  its purported assignments of physicians' claims in 2009-10, and "CPM's injury

14  preceded such assignments."  Opp at p. 7, n. 4.

15       Third, Defendants show that CPM has not only failed to produce evidence

16  sufficient to support its new damage theories, but actively refuses to do so.  CPM

17  has consistently characterized as an irrelevant "fishing expedition" proper

18  discovery requests for precisely the sort of records and communications that are

19  required to evaluate, test, and defend against CPM's new theories.  CPM cannot –

20  after the close of discovery, on the eve of trial, and for purposes of opposing a

21  motion for summary judgment – escape the consequences of its conduct in this

22  case and its repeated representations to the Court.

23       As the Ninth Circuit stated in *Nissan*, "In a typical case, in order to carry its

24  initial burden of production by pointing to the absence of evidence to support the

25  nonmoving party's claim or defense, the moving party will have made reasonable

26  efforts, using the normal tools of discovery, to discover whether the nonmoving

27  party has enough evidence to carry its burden of persuasion at trial."  Defendants

28  have made reasonable efforts, using the normal tools of discovery, to obtain

*Locke Lord Bissell & Liddell LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA 90071*

evidence of CPM's damages. *Nissan*, 210 F.3d at 1005. CPM's refusal and failure to respond to reasonable discovery requests, its continuing defiance of the Magistrate's order, and its failure to come forward with evidence in response to Defendants' motion for summary judgment all demonstrate that CPM does not have enough evidence of damages to carry its burden of persuasion at trial.

CPM has tried to explain its failure to come forward with evidence by asserting its long-held position that its damages are the unpaid claims themselves. As recently as October 29, 2010, CPM represented to the Court that it has produced "[a] compilation of information concerning the unpaid claims attributable to the various BH entities. This collection defines the universe of unpaid claims and *identifies the damages sought by CPM in this lawsuit, as well as providing the basis for those damages*." See California Pharmacy Management's Rule 72 Appeal of the Magistrate Judge's October 19 Order ("CPM Rule 72 Appeal"), filed October 29, 2010 (docket 139) at p. 3, lines 7-10 (emphasis added). CPM's new theory, concocted in a last-ditch effort to avoid summary judgment, is that CPM's loans to physicians to finance purchase of the drugs are the very heart of its case. But as recently as three weeks ago (in an effort to avoid compliance with the October 19 Discovery Order) CPM stated definitively that "CPM's role in its client physicians' obtaining medications dispensed in their offices has absolutely nothing to do with this case…". CPM Rule 72 Appeal at p. 6, lines 5-6.

To avoid identifying the physicians, identifying the informant, or producing any information whatsoever aside from the bills and appeal correspondence, CPM has vigorously asserted the position most recently advanced in the Rule 72 Appeal quoted above. CPM has maintained this position in order to avoid any discovery concerning its relationship with its contracting physicians and suppliers, its financial records, or any other aspect of its operations. Now, after the close of discovery and on the eve of trial, CPM says that what it formerly declared irrelevant and off-limits is now the heart of its claim for damages. CPM cannot

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

DEFENDANTS' REPLY TO OPPOSITION RE MOTION FOR SUMMARY JUDGMENT

1   create a "disputed" fact by contradicting itself. *American Title Ins. Co. v. Lacelaw*

2   *Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Judicial admissions are formal

3   admissions in the pleadings which have the effect of withdrawing a fact from issue

4   and dispensing wholly with the need for proof of the fact" (citation omitted));

5   *Cline v. Industrial Maint., Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir.

6   2000) (affirming summary judgment; "Both judges correctly held that Appellants

7   could not contradict their earlier allegations in an effort to survive summary

8   judgment.").

9          Defendants have shown there is no genuine issue of material fact concerning

10   the absence of any direct injury to CPM.  CPM was obliged to "designate specific

11   facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324

12   (citation omitted).  CPM failed to do so, and the Court must grant summary

13   judgment. *Id.*, 477 U.S. at 323-24.  At best, CPM's proffered evidence of a

14   genuine issue of material fact is "merely colorable" or of insignificant probative

15   value, and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477

16   U.S. 242, 249-50, 106 S.Ct. 2025, 91 L.Ed.2d 202 (1986).  CPM's proffered

17   evidence of direct injury consists of a hearsay declaration – inexplicably filed

18   under seal – attaching five documents or document fragments, some of which are

19   apparently redacted, and none of which support its case.  This material, as

20   explained below, is factually inadequate to defeat this motion, and is legally

21   inadequate in any event because CPM's injury is still indirect under any of its

22   asserted damage theories.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

*Locke Lord Bissell & Liddell LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA 90071*

DEFENDANTS' REPLY TO OPPOSITION RE MOTION FOR SUMMARY JUDGMENT

2.   *Hemi Group* **Is Fatal to CPM's RICO Claims as CPM's Allegations and Assertions Demonstrate that any Injury it Sustained Was Only the Indirect Result of its Failure to Obtain Payment on Bills it Submitted On Behalf of Contracting Physicians.**

RICO damages may be awarded only for "injury by reason of" defendant's RICO violation. *Hemi Group v. City of New York*, 559 U.S. ___, 130 S.Ct. 983, 987 ("*Hemi Group*"); *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 262-63 (1992)("*Holmes*").  To state a civil RICO claim under this standard, "the plaintiff is required to show that a RICO predicate offense 'not only was the 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group,* 130 S.Ct. at 989, *quoting Holmes,* 503 U.S. at 268.

CPM devotes a substantial portion of its Opposition to a selective discourse on the concept of proximate cause.  But the whole point of *Hemi Group* is that a specific sort of causation is required in RICO cases: the RICO predicate act must be both the "but for" and the proximate cause of the asserted injury.  CPM attempts to confuse the issue by introducing the concepts of sole cause and foreseeability.  Sole cause is a straw man argument here, advanced by CPM's citations to *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 773 (9th Cir. 2002) and *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 443 (2d Cir. 2008) for the proposition that sole cause is not the same thing as proximate cause.  Opp. at 5-6.  Defendants do not contend that CPM must establish that an alleged predicate act was the sole cause of injury to CPM.  Rather, Defendants rely on the Supreme Court's requirement of a direct relation between the injury asserted and the injurious conduct alleged.  A link that is "too remote," "purely contingent," or "indirect" is insufficient. *Hemi Group*, 130 S.Ct. at 989; *Holmes*, 503 U.S. at 271, 274.

/ / /

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   CPM seeks to discount the *Hemi Group* opinion and reintroduce
2   foreseeability as part of the causation analysis for a RICO claim.  Opp. at 5, n. 2.
3   CPM fails to recognize that the concept of foreseeability undermines its apparent
4   newly formulated damage claim that it was injured not by non-payment of bills for
5   drugs dispensed by contracting physicians, but by lending money to its contracting
6   physicians.  Defendants could not have foreseen the financial relationship between
7   CPM and the physicians; indeed, CPM continues to jealously guard the nature of
8   these arrangements, to the point of filing a few selected documents under seal in
9   which the financial terms of its relationships with its contractors have been
10   redacted without explanation.

11      CPM argues with itself when it complains about Defendants'
12   characterization of the relationship between CPM and the physicians.  Defendants'
13   description of this relationship is based on CPM's pleadings.  CPM alleges that
14   CPM is compensated by payment of a management fee by the physicians.  5AC at
15   ¶ 14.  CPM's revised narrative amounts to a self-destructive admission that *CPM*
16   pays the *physicians* and not the other way around.  Either way, CPM loses.  If
17   CPM is paid a management fee by the physicians, then its injury is indirect by
18   definition.  If CPM claims to pay the physicians, then the injury is indirect because
19   CPM must establish its entitlement to direct payment by Defendants.  CPM cannot
20   do so.  CPM cannot establish its entitlement to payment because CPM has failed to
21   come forward with competent evidence that it has valid assignments from any
22   physicians, and even if it had assignments, CPM would still need to establish the
23   validity of the claim before the California Workers' Compensation Appeals Board
24   before it would be entitled to any payment, as explained in the following section.

25   **3.   Workers' Compensation Claims Are Only Assignable by Order**
26   **of The California Workers' Compensation Appeals Board.**

27      Despite the unambiguous language of California Labor Code sections 4900 -
28   4903, CPM attempts to distract this Court from the express statutory requirements

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   by characterizations of the Legislative intent from opinions issued in far different

2   factual contexts.  CPM ignores the express requirement of Labor Code section

3   4902 that "[n]o compensation, whether awarded or voluntarily paid, shall be paid

4   *to any attorney at law or in fact or other agent*, but shall be paid directly to the

5   claimant entitled thereto *unless otherwise ordered by the appeals board*."

6   (Emphasis added).  This means that only the Workers Compensation Appeals

7   Board may order the payment of workers compensation benefits to someone other

8   than the claimant.  This Court is not the Appeals Board.

9        CPM's argument actually supports Defendants' position.  CPM admits in its

10  Opposition that service providers who assert liens in workers compensation cases

11  are "dealt with" in Labor Code section 4903 which provides certain rights to file

12  lien claims and sets forth certain requirements to assert these liens.  (Opp. at 14:1-

13  2.); *see also Hand Rehab. Ctr. v. WCAB*, 34 Cal. App. 4th 1204, 1210 (Ct. App.

14  1995) ("A medical lien claimant's rights are governed by Labor Code section

15  4903.")  The burden of proof is on the lien claimant to show legal entitlement to

16  reimbursement and to establish the validity of the lien claim both as to the

17  entitlement and amount.  *Zenith Insurance Co. v. Workers' Compensation Appeals*

18  *Board*, 138 Cal. App. 4th 373, 382 (2006) ("Where the injured employee does not

19  prosecute his or her claim, the lien claimant bears the burden establishing the

20  injury, entitlement to benefits and the reasonable value of the services.");  Lab.

21  Code §§ 3202.5, 5705 (In workers' compensation matters, the burden of proof rests

22  on the party or lien claimant "holding the affirmative of the issue").  Both section

23  4903 and regulation delineating the procedural requirements require a lien to be

24  accompanied by "a full statement or itemized voucher supporting the lien and

25  justifying the right to reimbursement", among other things.  Lab. Code §

26  4903.1(c); 8 Cal. Code Reg. §10770(b).  That means the Appeals Board may award

27  compensation based on a lien *only* when a person prosecuting a lien presents

28  sufficient evidence of the right to payment, *i.e.*, a valid assignment from the service

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   provider to the person prosecuting the lien claim.  CPM's abject failure to come

2   forward with any evidence of the assignments of any of the physicians' bills on

3   which CPM bases its claims is fatal to its claims even assuming that this Court is

4   the proper venue for seeking such payment.[1]

**4.   Defendants Are Entitled to Judgment Because CPM Has Failed and Continues to Refuse To Come Forward with Evidence To Support its Claims.**

8   CPM's first and second claims for relief survived Defendants' motion to

9   dismiss only because the Court accepted, for pleading purposes, CPM's promise

10  that it would come forward with assignments of its contracting physicians' RICO

11  claims.  In its ruling 12 months ago on Defendants' motion to dismiss the Third

12  Amended Complaint, the Court accepted "for the time being" or "for now" CPM's

13  "vague reference to alleged assignments" in support of CPM's standing to "bring

14  its contracting physicians' RICO claims...."  Order Denying Motion to Dismiss,

15  October 26, 2009, at pp. 9-10.  CPM resisted dismissal under Rule 12(b)(7) for

16  failure to join the physicians as necessary parties on the grounds that CPM would

17  obtain necessary assignments.  CPM's antitrust claims teetered on the precipice of

18  dismissal when the Court stated in its August 30, 2010 Tentative Order granting

19  Defendants' motion to dismiss that "any injury was the result of actions taken by

20  the physicians, not the Defendants."

21  CPM never came forward with the promised assignments.  In support of its

22  Opposition to Defendants' Motion for Summary Judgment, CPM submitted on this

---

[1] CPM's  claims are based on the narrow exception to the exclusive
jurisdiction rule of the California Workers Compensation Act announced in
*Charles J. Vacanti, M.D., Inc. v. State Compensation Ins. Fund*, 24 Cal.App.4th
800.  Unlike the plaintiff in *Vacanti*, CPM is not a provider of services potentially
compensable under the Workers Compensation Act. See, e.g., Labor Code §§
3207, 3209.5 (services covered under workers compensation include medical,
surgical and hospital treatment and medicines in connection with that treatment).

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

point only the conclusory declaration of its President, Michael R. Drobot, with five documents – or fragments of documents – attached.  CPM sought leave to file Mr. Drobot's declaration under seal, but even then curiously appears to have redacted one document by omitting an entire paragraph (See Declaration of Michael R. Drobot, submitted under seal by CPM in opposition to the present motion for summary judgment ("Drobot Decl."), at Ex. 1, p. 2), and in another case includes only the second page of a multi-page document (Drobot Decl. Ex. 3).  Yet another document omits the purchase price CPM claims to have paid one physician in a "Financial Asset Agreement" (Drobot Decl. Ex. 5, at p. 2).  The Drobot Declaration leaps to the unsupported conclusion that these hand-picked, redacted pages are representative of numerous other documents (*Id.* at ¶¶ 3-7) – unseen and never produced by CPM – in an attempt to create the impression that CPM has kept its promise to come forward with assignments of the claims of its 164 physicians.  But the Federal Rules of Evidence do not permit such slipshod practice: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."  F.R.E. 1002.  If the originals of the assignments were lost, unobtainable, or destroyed, other evidence of their contents might be admissible.  F.R.E. 1004.  But no such secondary evidence is necessary here, because Mr. Drobot himself testified at deposition that the documents are in CPM's possession and readily available.  Drobot Sealed Depo. at 76:11-77:12, 77:13, 77:14-20, 78:1-17.

CPM's general counsel, Michael Tichon, also confirmed that the subject documents are readily available and not burdensome to produce.  *See* Roan Decl. Ex. 6, at 68:19-69:21.

Undaunted, CPM nevertheless complains about the great burden of producing the documents.  These contentions are simply not true, belied by the testimony of CPM's president and general counsel.  Why, then, does CPM refuse

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

to produce the documents?  Why does CPM resort to a conclusory, hearsay declaration, filed under seal, attaching only selected documents and document fragments?  Because the documents, readily available at CPM's office in Newport Beach, must not support its claims or worse, reveal fatal defects to those claims just as the few "exemplar" contracts hand-picked by CPM have revealed.  The "exemplar" documents do not constitute the long-promised assignments.  They provide nothing about assignment of the physicians' RICO claims, antitrust claims, or any other claims to CPM.  They do not support CPM's contention that it has been directly injured by the alleged conduct of the Defendants.

From the inception of this case, CPM has fought to keep the focus exclusively on the bills it submitted to Defendants on behalf of its contracting physicians.  CPM declared discovery requests about its financial relationships with its contracting physicians and suppliers an irrelevant "fishing expedition."  CPM flatly refused to produce any documents on these topics, and refused to obey Judge Nakazato's October 19, 2010 Order compelling their production.  Instead, CPM filed a meritless appeal of that Order, and continues to ignore Local Rule 72-2.2, which provides that "[r]egardless of whether a motion for review has been filed, the Magistrate Judge's ruling remains in effect unless the ruling is stayed or modified by the Magistrate Judge or the District Judge."

Now, after the discovery cut-off and on the eve of trial, CPM recognizes that it has failed to come forward with evidence establishing direct injury for purposes of either its RICO or its antitrust claims.  So CPM attempts in its Opposition to wipe away more than a year of protests and promises, all amounting to judicial admissions, that it was pursuing payment of bills submitted for drugs allegedly dispensed on the physicians' behalf on the basis of assignments CPM had obtained or would obtain.  Confronted with the reality that CPM lacks the evidence it has asserted all along that it has, CPM now asserts that its damages are based not on the failure to obtain payment on the bills it submitted on behalf of contracting

13

1    physicians but instead based on the alleged increased collection costs and loans it

2    made to the physicians.  Opp. at p. 7.  But CPM has failed to come forward with

3    even a scrap of evidence of its collection costs, increased or otherwise, and has

4    failed to come forward with any evidence concerning its advances to physicians.

5    Even if CPM had come forward with this evidence, it would be unavailing to it as

6    all of its categories of alleged damages are indirect and cannot support CPM's

7    claims as explained below.

8         **5.**    **CPM Mischaracterizes the Indirect Nature of Its Alleged**

9                 **Damages and Cannot Demonstrate that It Has Suffered Antitrust**

10                **Injury.**

11           A.    It Is Undisputed that the "Management Fee" Received by

12                 CPM Is Paid by the Prescribing Physicians.

13        CPM ignores the fact that the lost management fees that are the basis of its

14   alleged damages are paid to CPM by its contracting physicians, and not by

15   Defendants.  (See Motion, at 15-16; Opp. at 16.  CPM has pled in five consecutive

16   versions of its Complaint since March 2009, including the 5AC, that it receives a

17   "management fee" for its services paid to it by its contracting physicians.  1AC

18   (March 23, 2009) ¶ 8; 2AC (April 3, 2009) ¶ 8; 3AC (August 19, 2009) ¶ 12; 4AC

19   (April 26, 2010) ¶ 14; 5AC (June 23, 2010) ¶ 14 ("The physicians pay CPM a

20   management fee for its services.").  The Court ruled in its Tentative Order on

21   Defendants' motion to dismiss the 5AC that CPM could not have suffered any

22   direct injury because "any injury was the result of actions taken by the physicians,

23   not the Defendants." Tent. Order at 15; *see Associated General Contactors v.*

24   *California State Council of Carpenters*, 459 U.S. 519, 539 (1983) ("*ACG*"); *Eagle*

25   *v. Star-Kist Foods, Inc.*, 812 F.2d 538, 541-42 (9th Cir. 1987) (both affirming

26   dismissal based in part on indirectness of injury).

27        Nonetheless, despite its unequivocal pleading of that fact, CPM now argues

28   that the payment of management fees by physicians – as it has alleged for two

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

14

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1 | years – is a "disputed" fact. (CPM's Statement of Genuine Issues, at 2.)

2 | Presumably to avoid the holding of *ACG* and the Court's Tentative Order, CPM

3 | apparently would now rather characterize the payment arrangement to be one

4 | where payments are made directly by the insurers to CPM, and then CPM remits a

5 | share of the payments to the physicians. (*Id.* ("Payments for dispensed

6 | medications were received by CPM, which then were remitted to the physicians"

7 | after deductions)). Yet, the portion of the physician contract produced by CPM

8 | provides exactly the opposite – that "Physician pay[s]" CPM its compensation

9 | under the agreements. (Drobot Decl., Ex. 3 at 11, ¶ 4). CPM's tortured

10 | explanation of who receives the physical check and performs the payment

11 | allocation, and its unrevealed and apparently secret funding arrangements with

12 | physicians (see Opp. at 3-8; Drobot Decl., ¶ 5) do not negate the fact that under the

13 | plain language of its hand-picked exemplar physician agreements, payments from

14 | insurers like the Defendants are made to physicians, not to CPM, and the

15 | physicians pay CPM a management fee. CPM cannot create a "disputed" fact

16 | where its current position is contrary to its own pleadings and the plain language of

17 | the physician agreements. *American Title Ins.*, 861 F.2d at 226 ("Judicial

18 | admissions are formal admissions in the pleadings which have the effect of

19 | withdrawing a fact from issue and dispensing wholly with the need for proof of the

20 | fact" (citation omitted)); *Cline*, 200 F.3d at 1232 (affirming summary judgment;

21 | "Both judges correctly held that Appellants could not contradict their earlier

22 | allegations in an effort to survive summary judgment.").

23 |       B.    CPM's Assertion that Any "Causal Link" Is Sufficiently Direct

24 |           To Establish Antitrust Injury Is Incorrect.

25 |       Because it cannot legitimately dispute that the cause of its injury is its

26 | contracting physicians' failure to pay management fees, CPM relies on the

27 | assertion that Defendants' conduct is nonetheless somewhere "in the chain of

28 | causation" with respect to its alleged injuries. Opp. at 14-16. CPM incorrectly

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   urges that a plaintiff can show antitrust injury merely by showing a "'causal link'

2   between the injury sustained and a defendant's conduct." *Id.* at 15, *citing Yellow*

3   *Pages Cost Consultants, Inc. v. GTE Directories Corp.*, 951 F.2d 1158, 1162 (9th

4   Cir. 1991). Neither *Yellow Pages* nor any of the cases cited by CPM stands for

5   such a broad proposition, and CPM fails to address authority cited in Defendants'

6   motion containing the correct standard. *See* Motion at 15-16.

7        As discussed in prior briefs, *Yellow Pages* is inapposite to this case because

8   it involved allegations by consultants that advised businesses on the content and

9   form of their advertisements, and placed advertisements in directories published by

10   GTE. *Yellow Pages*, 951 F.2d at 1159. The consultants alleged that they were

11   injured by a change in GTE policy that caused some customers to cancel their

12   contracts with the consultants. The Ninth Circuit ultimately found that there was a

13   factual issue as to whether GTE competed with the consultants in the second

14   market – placement of advertisements. *Id.* at 1161-62. CPM does not address this

15   fundamental difference between *Yellow Pages* and this case, *i.e.*, there is no

16   allegation that CPM and Defendants compete in the markets for workers

17   compensation insurance or for the billing and collection services that CPM

18   provides.

19        Similarly, *Blue Shield v. McCready*, 457 U.S. 465 (1982), is far from

20   "controlling" as CPM suggests. *See* Opp. at 15-16. Blue Shield involved

21   allegations by a plaintiff patient who alleged that Blue Shield was refusing to

22   reimburse for psychological services, as opposed to psychiatric services. *Id.* at

23   468. The plaintiff alleged that Blue Shield conspired with the Neuropsychiatric

24   Society of Virginia, Inc., with the aim of keeping psychologists (who were

25   operating without the supervision of a physician) from encroaching on services

26   traditionally provided by psychiatrists and other physicians. *Id.* at 469-70, 471-72.

27   The Supreme Court held that even though the plaintiff was not a direct customer

28   (her coverage was prepaid by her employer) or a competitor of Blue Shield, she

DEFENDANTS' REPLY TO OPPOSITION RE MOTION FOR SUMMARY JUDGMENT

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1  nonetheless alleged a sufficiently direct injury to establish antitrust standing

2  because her claims were "inextricably intertwined with the injury that the

3  conspirators sought to inflict on the psychologists and the psychotherapy market."

4  *Id.* at 483-84.  The plaintiff and other subscribers, the Court held, faced a

5  "Hobson's choice" of using a psychologist and forfeiting reimbursement, or

6  foregoing the treatment of their choice to obtain reimbursement.  *Id.*

7      Here, by contrast, CPM's damages are not "inextricably intertwined" with

8  injury to competition in any market.  Physicians who use the in-office-prescription

9  program do not face a "Hobson's Choice" of using CPM or not offering the

10  program at all.  To the contrary, physicians have a wide array of choices for

11  performance of the billing and collection services that CPM provides, and

12  reimbursements are still paid for in-office prescriptions.  This is clearly established

13  by record facts.  One physician, Dr. Mays, testified that rather than use CPM to

14  perform the billing and collection services he previously used, he opted to do it

15  himself.  Roan Decl. Ex. 5 at 62:6-64:18.  An equivalent option was not available

16  to the plaintiff insured in Blue Shield, which was the basis for the Court's ruling in

17  that case.  There is nothing "inextricable" about the relationship between CPM's

18  alleged damages and any alleged injury to competition, and Blue Shield is

19  therefore inapplicable.[2]

20      CPM conspicuously fails to make any attempt to distinguish *Metro-*

21  *Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 269 F.Supp.2d 1213, 1220-21

22

23      [2] CPM also relies on *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739 (9th Cir.

24  1984) (*see* Opp. at 16), for the proposition that any link in the chain of causation is
   sufficient to establish antitrust injury.  *Ostrofe* involved the claim of a discharged

25  employee who was a "direct and necessary" participant in an alleged conspiracy by
   defendant to fix prices and allocate customers.  *Id.* at 746.  For the reasons

26  discussed above with respect to *Blue Shield*, the *Ostrofe* case is distinguishable

27  because there was nothing "necessary" or inextricable about CPM's alleged
   damages and any alleged injury to competition.  Physicians remain free to

28  prescribe medications in-office without CPM's services.

1    (C.D. Cal. 2003).  Defs.' Motion, at 16.  In *Grokster*, the Court distinguished both

2    *Blue Shield* and *Ostrofe* as inapplicable where the injury to the plaintiff was

3    "incidental," and not integral to the anticompetitive scheme.  *Id.* at 1221.  The

4    counterclaimant, a distributor of file-sharing software, brought antitrust

5    counterclaims against music and movie producers on the theory that it was losing

6    revenue from its partnership with a non-party company, to whom the producers

7    refused to license copyrighted works.  *Id.* at 1217-18.  The Court rejected the

8    argument that *Blue Shield* and *Ostrofe* compelled a finding that the

9    counterclaimant had alleged antitrust injury, and noted that "a party does not have

10   standing simply because it has a commercial relationship with a market

11   participant".

12          *Grokster* is analogous to CPM's claims, where CPM has alleged lost

13   revenue due to Defendants' refusal to pay reimbursements to its contracting

14   partners, and there is nothing inextricable or necessary to CPM's damages and an

15   alleged injury to competition.  Under this standard, CPM cannot show that its

16   alleged injury is sufficiently direct to establish an antitrust injury.  Summary

17   judgment should be granted on this basis.

18          C.     CPM's References To Varying Management Fees Do Not

19                 Relate to Competition in any Alleged Relevant Market.

20          CPM asserts that its alleged injury is of the type that the antitrust laws were

21   intended to prevent because its management fees and commission rates can vary,

22   and that absent Defendants' conduct, "market forces would dictate the commission

23   rate for each company".  Opp. at 17.  CPM's assertion is puzzling because CPM

24   has never alleged that the relevant market is the market solely for the billing and

25   collection services it provides.  5AC ¶¶ 78, 85.  Rather, CPM has alleged at various

26   times that the relevant market is the market for workers compensation insurance,

27   for in-office medication prescriptions, and for traditional pharmacies that compete

28   with CPM's services.  *See id.*  Even in its Opposition, CPM refers to the

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1    "competition-reducing aspect of the in-office medication dispensing market" (Opp.

2    at 17), as opposed to the market for its own billing and collection services.

3          CPM's references to fees and commission rates in the market for billing and

4    collection services have no bearing whatsoever on this motion or CPM's claims as

5    alleged in the 5AC, because CPM has not alleged any injury to competition in that

6    relevant market.  CPM does not dispute the fact that prices for prescription

7    medications reimbursed under workers compensation policies in California are

8    fixed by law – which are the only prices that can be considered for purposes of the

9    purported relevant markets CPM has alleged.  There is no evidence that

10   Defendants' alleged conduct could have any effect on prices of drugs dispensed to

11   workers compensation beneficiaries, and no evidence that traditional pharmacies

12   would be able to raise prices (they cannot) if CPM does not provide its billing and

13   collection services to physicians.  The alleged "injury" is one to CPM's bottom

14   line only, and is not of the type that the antitrust laws were intended to prevent.

15   *See* Defs.' Motion at 16-17.[3]

16

17

18   _____

19      [3] CPM also relies on *Glen Holly Entm't v. Tektronix, Inc.*, 352 F.2d 367, 384

20   (9th Cir. 2003), for the proposition that antitrust injury can be shown where
     changes to a market "limit consumers' choice to one source of output." Opp. at 17.

21   First, CPM ignores the fact that the analysis in *Glen Holly* was premised on the
     finding that the plaintiff was both a customer and competitor of one of the

22   defendants. *Id.* at 374 ("Digital Images [Glen Holly] alleged enough to establish
     factually that it is both a customer and a competitor in a slightly different

23   market."). As discussed above, the facts show just the opposite here.  Second,

24   CPM brazenly asserts that it is "undisputed" that Defendants' actions in this case
     have reduced consumers' choice to one source of output. Opp. at 17.  To the

25   contrary, Dr. Mays' deposition testimony cited above shows that physicians are
     continuing to provide in-office prescriptions – just without CPM's billing and

26   collection services.  Roan Decl. Ex. 5 at pp. 62:6-64:18.  There is no evidence that

27   consumers are limited to "one source" of prescriptions as CPM suggests but fails to

28   support with any record facts.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

D.    <u>CPM Fails To Demonstrate a Genuine Issue of Fact as to any Purported Relevant Market.</u>

CPM provides only one reference to a record fact in its description of the "evidence of relevant product markets". Opp. at 18-19. That single reference is to paragraph 2 of the Declaration of Michael R. Drobot, in which he opines that (a) "[h]istorically there has been a shortage of retail pharmacies that will fill prescriptions for injured workers"; (b) "for many disabled workers it is difficult to travel to retail pharmacies that will fill such prescriptions"; and (c) "[d]ispensation of medications by physicians in their office . . . addresses these needs".

CPM's reference to the Declaration of its President hardly constitutes evidence of a "subset of interchangeable products or reasonable substitutes" in which it participates. *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F.Supp.2d 1120, 1129 (C.D. Cal. 2009). Nor does CPM make any attempt to delineate exactly which of its three alleged markets (workers compensation insurance, in-office prescriptions, or traditional pharmacies combined with billing and collection services) it would offer evidence to support if this case were allowed to go to trial. CPM merely states generally that it has "presented strong evidence and compelling arguments to support its respective definitions of the relevant market." Opp. at 19. Where? One would expect that after discovery in response to a summary judgment motion, CPM would be able to point to a number of facts showing, for example, that other actors could raise prices because of CPM's exit from the market. Of course, they cannot, because no such injury to competition can be proven.

CPM's contention that the failure to define a relevant market can never be grounds for summary judgment (Opp. at 18) is incorrect. Courts frequently grant summary judgment on grounds that a plaintiff cannot demonstrate that there is a proper relevant market for antitrust purposes. *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1489-90 (9th Cir. 1991) (affirming summary judgment; finding "insufficient evidence for a jury to conclude that University and

1   osteopathic radiologists cannot compete with private medical radiologists"; "[W]e

2   must also reject MSW&B's exclusion from the product market of image

3   interpretations that nonradiologist physicians provide.").  CPM's utter failure to

4   allege a plausible relevant market of interchangeable substitutes in which it

5   participates or in which competition is affected, and to produce any evidence in

6   support of the existence of such a defined market, is further grounds for summary

7   judgment.

8       **6.**    **The *Noerr-Pennington* Doctrine Bars CPM's Claims Because**

9             **CPM Concedes that its Only Evidence of Alleged Lulling is the**

10            **Routine Billing and Appeal Correspondence.**

11      CPM conceded on deposition that it has no evidence of the alleged "lulling"

12   conduct outside routine billing and appeal communications, which fall squarely

13   within the protection of the *Noerr-Pennington* doctrine.  *See* Roan Decl. Exh. 7 at

14   144:22-153:5.

15      Under the *Noerr-Pennington* doctrine, those who petition any department of

16   the government are immune from liability for their petitioning conduct.  *Sempress*

17   *LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005); *Manistee Town*

18   *Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000).   This constitutional

19   right to petition also includes the basic act of seeking administrative action. *See*

20   *Premier Medical Management Sys., Inc. v. California Insurance Guarantee Ass'n*,

21   136 Cal. App. 4th 464, 474 (2006) (holding that litigation over payment of bills

22   and medical liens in the WCAB is protected activity).  The *Noerr-Pennington*

23   doctrine is a principle of Constitutional immunity established by the Supreme

24   Court which derives from the First Amendment's guarantee of "the right of the

25   people . . . to petition the Government for a redress of grievances." *Sosa v.*

26   *DIRECTV, Inc.*, 473 F.3d 923, 929 (9th Cir. 2006).  The right to petition is "among

27   the most precious of liberties safeguarded by the Bill of Rights . . . [and] intimately

28   connected, both in origin and in purpose, with other First Amendment rights of free

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

21

1  speech and free press." *United Mine Workers of America, Dist. 12 v. Illinois State*

2  *Bar Ass'n.*, 389 U.S. 217, 222 (1967).

3  　　　Because CPM concedes that it has no evidence of the alleged "lulling"

4  outside routine billing and appeal communications in the context of claims

5  submitted by injured workers for benefits under the Worker Compensation Act,

6  summary judgment should be granted in favor of Defendants under the *Noerr-*

7  *Pennington* doctrine.

8  Conclusion

9  　　　CPM seeks to depart from its allegations in an effort to avoid summary

10  judgment while at the same time ignoring altogether its obligations to produce

11  evidence showing its entitlement to receive payment for drugs allegedly dispensed

12  by contracting physicians.  Any damages sustained by CPM are undeniably

13  indirect under any of the various damage theories it has concocted.  CPM

14  inexplicably refuses to join its contracting physicians as parties in this action while

15  at the same time flatly refuses to permit any inquiry into the nature of its financial

16  or other relationships with those physicians.  One can speculate any number of

17  reasons for such refusals by CPM, but it simply does not matter at this late juncture

18  scarcely two months before the commencement of trial.  The only just result based

19  on this record is for entry of summary judgment in favor of the Defendants.

20

21  Dated:  November 22, 2010    LOCKE LORD BISSELL & LIDDELL LLP

22

23  　　　　　　　　　　　By:　 */s/ Ronald D. Kurtz*

24  　　　　　　　　　　　　　　　Peter Roan
    　　　　　　　　　　　　　　　Ronald D. Kurtz

25  　　　　　　　　　　　Attorneys for Defendants Redwood Fire and
    　　　　　　　　　　　Casualty Insurance Company; Cypress Insurance

26  　　　　　　　　　　　Company; Oak River Insurance Company;
    　　　　　　　　　　　American All Risk Insurance Services, Inc.;

27  　　　　　　　　　　　American Commercial Claims Administrators, Inc.;
    　　　　　　　　　　　National Liability and Fire Insurance Company; and

28  　　　　　　　　　　　Berkshire Hathaway Homestate Companies

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

DEFENDANTS' REPLY TO OPPOSITION RE MOTION FOR SUMMARY JUDGMENT

# CERTIFICATE OF SERVICE

I, Ronald D. Kurtz, an attorney, do hereby certify that on November 22, 2010, I caused the foregoing to be served through the Court's Case Management/Electronic Case Files (CM/ECF) system upon all persons and entities registered and authorized to receive such service.


Dated: November 22, 2010                By:   /s/ Ronald D. Kurtz
                                               Ronald D. Kurtz

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

DEFENDANTS' REPLY TO OPPOSITION RE MOTION FOR SUMMARY JUDGMENT