1   Terree A. Bowers (SBN 089334)
    bowers.teree@arentfox.com
2   Matthew J. Kitson (SBN 254246)
    kitson.matthew@arentfox.com
3   ARENT FOX LLP
    555 West Fifth Street, 48th Floor
4   Los Angeles, CA  90013-1065
    Telephone:  213.629.7400
5   Facsimile:   213.629.7401

6   Donald G. Norris (SBN 90000)
    dnorris@norgallaw.com
7   NORRIS & GALANTER LLP
    555 West Fifth Street, 30th Floor
8   Los Angeles, California  90013
    Telephone:  213.996.8465
9   Facsimile:   213.996.8475

10  Attorneys for Plaintiff
    California Pharmacy Management, LLC

11

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15  CALIFORNIA PHARMACY MANAGEMENT, LLC, a California | Case No.  SACV 09-0242 DOC (ANx) |
| 16  limited liability company, | (Consolidated with SAC 09-141 DOC (ANx)) |
| 17            Plaintiff, | Honorable David O. Carter |
| 18  v. | **NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF ORDER** |
| 19  ZENITH INSURANCE COMPANY, a California corporation; and ZNAT | **GRANTING MOTION TO DISMISS** |
| 20  INSURANCE COMPANY, a California corporation, et al., | Date:            January 3, 2011 |
| 21 | Time:            8:30 a.m. |
| 22            Defendants. | Courtroom:   9D |
| 23 | |

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on January 3, 2011, at 8:30 a.m., or as soon thereafter as counsel may be heard before the Honorable David O. Carter, United States District Judge, in Courtroom 9D of the United States Courthouse located at 411 West Fourth Street, Santa Ana, California 92701, Plaintiff California Pharmacy Management, LLC ("CPM"), will bring on for hearing its Motion for Reconsideration of this Court's December 1, 2010 Order dismissing with prejudice the Third and Fourth Claims for Relief in CPM's Fifth Amended Complaint.

The motion is made on the grounds that the Court, in granting Defendants' motion to dismiss, failed to consider and accept as true the material averments of the Fifth Amended Complaint, and accepted as true numerous incorrect and unsubstantiated factual assertions made by Defendants in their moving papers. *See* Local Rule 7-18(c); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004). Furthermore, the Court should have allowed CPM leave to amend its pleading, given that (1) this was the first dismissal of the Third and Fourth Claims for Relief under Fed. R. Civ. P. 12(b), which weighs heavily in favor of granting leave to amend; (2) nothing in the record, the pleadings, or the Court's ruling indicates that amendment would be futile; (3) evidence filed by CPM in opposition to Defendants' pending motion for summary judgment demonstrates that CPM in fact has meritorious antitrust claims and, moreover, should be granted leave to amend because any purported defects in its complaint can readily be cured; and (4) the trial date in this case having been vacated, granting leave to amend would not prejudice Defendants or unduly delay the Court's proceedings. Finally, CPM's contracting physicians are not necessary parties because many, if not most, have no right to seek reimbursement from Defendants. Even if some of those physicians do have such a right, that alone does not justify dismissing CPM's claims outright solely because they are not joined as parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION/MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO DISMISS

1    CPM therefore respectfully requests that this motion be granted, and that the

2    Court reconsider the merits of Defendants' motion to dismiss or, alternatively, grant

3    CPM leave to amend its complaint as to the claims at issue.

4    The motion is based upon this notice, the accompanying memorandum of

5    points and authorities, the pleadings and court files in this action, and upon such

6    other and further oral and documentary matters as may be presented at the hearing.

7    This motion is made following the conference of counsel pursuant to Local

8    Rule 7-3, which occurred on December 3, 2010.

9

10   Date:  December 6, 2010                    Respectfully submitted,

11                                              ARENT FOX LLP
                                                Terree A. Bowers
12                                              Matthew J. Kitson

13                                              NORRIS & GALANTER LLP
                                                Donald G. Norris
14

15

16                                              By: _____/s/_____
                                                    Terree A. Bowers
17                                                  Attorneys for Plaintiff
                                                    California Pharmacy Management,
18                                                  LLC

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................1

ARGUMENT ........................................................................................................3

I.  LEGAL STANDARD FOR RECONSIDERATION ........................................3

II.  THE COURT HAS MISCONSTRUED CPM'S FACTUAL
AVERMENTS SUPPORTING ITS ANTITRUST CLAIMS.................................4

    A. CPM IS DIRECTLY INJURED BY DEFENDANTS' ACTIONS
BECAUSE CPM BEARS THE RISK OF DEFENDANTS' NON-
PAYMENT ............................................................................................................4

    B. CPM IS DIRECTLY INJURED BECAUSE IT PROVIDES
FINANCING TO ITS CONTRACTED PHYSICIANS .........................................6

    C. DEFENDANTS' ILLEGAL ACTIONS INJURE COMPETITION IN
RELEVANT MARKETS........................................................................................8

    D. NONE OF CPM'S AVERMENTS SUPPORT THE NOTION THAT
PHYSICIANS WHO DISPENSE THEIR OWN MEDICATIONS CHARGE
HIGHER PRICES THAN TRADITIONAL PHARMACIES ...............................11

    E. CPM'S CONTRACTED PHYSICIANS ARE NOT NECESSARY
PARTIES ............................................................................................................12

    F. CPM SHOULD BE GIVEN LEAVE TO AMEND......................................14

    G. IN DECIDING THE MOTION TO DISMISS, THE COURT IS
PERMITTED TO CONSIDER MATTERS SUBJECT TO JUDICIAL
NOTICE ..............................................................................................................15

CONCLUSION ...................................................................................................15

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/370133.1

PLAINTIFF'S MOTION FOR
RECONSIDERATION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Balla v. Idaho State Bd. of Corrections,*
  869 F.2d 461 (9th Cir. 1989) ................................................................. 3

*Barker v. Riverside County Office of Ed.,*
  584 F.3d 821 (9th Cir. 2009) ........................................................... 10, 14

*DCD Programs, Ltd. v. Leighton,*
  833 F.2d 183 (9th Cir. 1987) ...............................................................14

*DeCarlo v. Fry,*
  141 F.3d 56 (2d Cir. 1998)...................................................................14

*Del Puerto Water Dist. v. U.S. Bureau of Reclamation,*
  271 F. Supp. 2d 1224 (E.D. Cal. 2003) ...............................................15

*Gabrielson v. Montgomery Ward & Co.,*
  785 F.2d 762 (9th Cir. 1986) ...............................................................14

*Kern-Tulare Water Dist. v. City of Bakersfield,*
  634 F. Supp. 656 (E.D. Cal. 1986) .........................................................3

*MGIC Indem. Corp. v. Weisman,*
  803 F.2d 500 (9th Cir. 1986) ...............................................................15

*Pegasus Satellite Television, Inc. v. DirecTV, Inc.,*
  318 F. Supp. 2d 968 (C.D. Cal. 2004) ....................................................4

*Silva v. Bieluch,*
  351 F.3d 1045 (11th Cir. 2003) ...........................................................14

*United States v. Webb,*
  655 F.2d 977 (9th Cir. 1981) ...............................................................14

**RULES**

Fed. R. Civ. P. 54(b) .............................................................................3, 4

Fed. R. Evid. 201...................................................................................15

Local Rule 7-18 ......................................................................................4

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/370133.1
LA/370133.1

- ii -

PLAINTIFF'S MOTION FOR
RECONSIDERATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

On December 1, 2010, the Court issued an order (the "Order") granting with prejudice and without leave to amend the Motion to Dismiss the Third and Fourth Claims for Relief of Plaintiff California Pharmacy Management's ("CPM") Fifth Amended Complaint ("Complaint"), brought pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Redwood Fire and Casualty Insurance Company, Cypress Insurance Company, Oak River Insurance Company, American All Risk Insurance Services, Inc., American Commercial Claims Administrators, Inc., National Liability and Fire Insurance Company, and Berkshire Hathaway Homestate Companies' (collectively "BH" or the "Defendants").

The Order, which is the very first ruling by the Court as to whether CPM had stated claims for relief under the antitrust laws, was based on three principal grounds. First, the Court found that "CPM fail[ed] to allege an injury to business or property recoverable under the antitrust statutes" because "the very nature of CPM's relationships with its participating physicians forecloses its ability to show *direct* injury." Order at pp. 8, 10 (emphasis in original). Second, the Court found that "CPM [] fail[ed] to allege injury to competition in a relevant market." *Id.* at p. 8. Third, the Court found that because BH's alleged wrongful conduct "targeted providers charging higher prices for medication otherwise available through traditional channels," such conduct "did not cause the type of injury the antitrust statutes are designed to prevent." *Id.*

In reaching these conclusions, the Court relied on faulty factual premises. Specifically, the Court found that CPM did not properly allege "direct injury" (Order at p. 7) because physicians are the primary creditors of BH and, therefore, any injury to CPM was the result of the *physicians'—not BH's--* failure to pay CPM. Such is not the case, however. The averments of the complaint, which are supported by evidence included in CPM's subsequent filings in opposition to

1  Defendants' pending motion for summary judgment, make clear that CPM provides
2  financing to its contracted physicians and has, in effect, purchased its contracted
3  physicians' rights to reimbursement for the medications disbursed to patients.  As a
4  result, CPM directly bears financial risk arising from such claims.  CPM further
5  alleges that it submits bills to Defendants, which respond by making payments
6  directly to CPM or, when refusing to pay as in the instant case, withholding
7  payments from CPM.  As such, CPM was the primary entity to which BH owed
8  payment and, therefore, suffered direct injury when BH wrongfully withheld
9  payment.  Compl. at ¶¶ 2, 4, 6-8, 47

10  In addition, the Order appears to be based upon the Court's fundamental
11  misunderstanding of how the CPM-BH reimbursement system operates with
12  respect to prescribed medications, and how CPM and its contracted physicians
13  operate their in-office medication dispensing business.  As a consequence, the
14  Court has incorrectly found that *all* prices for prescription medications are exactly
15  the same (Order at p. 8) and that there exists no competition within the in-office
16  medication dispensing market because "prices in that market are fixed."  Order at p.
17  8.  Prices for prescribed medications, however, are *not* the same, whether they come
18  from doctors who dispense medications to their own patients or whether the
19  medications come from traditional pharmacies.  While it is true that the
20  pharmaceutical reimbursement rates sought by CPM and companies in the in-office
21  medication dispensing business are statutorily set, those billing rates vary
22  depending on each medication's supplier because commission or management fees
23  charged by each company in this market vary.

24  The Court appears to have failed to consider, and has incorrectly interpreted,
25  the material factual averments of the Complaint, instead relying upon and accepting
26  as true the Defendants' argumentative interpretations of such averments.  In
27  addition, evidence filed by CPM in opposition to defendants' motion for summary
28  judgment amply demonstrates that CPM's averments are truthful. Such evidence

1    also weighs heavily in favor of granting CPM leave to amend its Complaint to

2    incorporate the material facts now before the Court.

3           Accordingly, the Court should grant reconsideration and either vacate the

4    Order entirely or grant CPM leave to amend its complaint.   In fact, given

5    Defendants' pending motion for summary judgment, which purports to address all

6    of CPM's claims for relief, the most practical and time-efficient approach would be

7    to simply vacate the Order and consider the merits of CPM's antitrust claims on

8    summary judgment.  Such would afford CPM with full consideration of the

9    evidence it has presented in support of such claims and allow a full and fair

10   determination of whether material factual issues exist.

11                                   **ARGUMENT**

12   **I.    LEGAL STANDARD FOR RECONSIDERATION**

13          "[A]any order or other decision" that does not end an action "may be revised

14   at any time before the entry of a judgment adjudicating all the claims and all the

15   parties' rights and liabilities."  Fed. R. Civ. P. 54(b); *see also Balla v. Idaho State*

16   *Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989) ("Courts have inherent power

17   to modify their interlocutory orders before entering a final judgment.  In addition,

18   the Federal Rules of Civil Procedure explicitly grant courts the authority to modify

19   their interlocutory orders." [Citations omitted]).   "Courts have distilled various

20   grounds for reconsideration of prior rulings into three major grounds for justifying

21   reconsideration: (1) an intervening change in controlling law; (2) the availability of

22   new evidence or an expanded factual record; and (3) need to correct a clear error or

23   prevent manifest injustice."  *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.

24   Supp. 656, 665 (E.D. Cal. 1986) (citations omitted), *aff'd in part, rev'd in part on*

25   *other grounds*, 828 F.2d 514 (9th Cir. 1987) (citing C. Wright, A. Miller & E.

26   Cooper, 18 Federal Practice and Procedure § 4478 at 790).

27          Similarly, pursuant to Local Rule 7-18, a motion for reconsideration can be

28   made upon a showing of (a) a material difference in law or fact that could not

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

1  reasonably have been known to the moving party at the time of the original motion,

2  (b) the emergence of new facts or a change of law occurring after the decision, or

3  (c) a manifest failure of the court to consider material facts presented.  L. R. 7-18;

4  *see also Pegasus Satellite Television, Inc. v. DirecTV, Inc.,* 318 F.Supp. 2d 968,

5  979 (C.D. Cal. 2004) (reconsideration granted under Local Rule 7-18(c) where

6  district court failed to "fully address" or "consider material facts presented to the

7  court" on an issue important to court's earlier summary judgment decision).

8  **II.    THE COURT HAS MISCONSTRUED CPM'S FACTUAL**

9  **AVERMENTS SUPPORTING ITS ANTITRUST CLAIMS.**

10  The Court should grant reconsideration pursuant to Fed. R. Civ. P. 54(b) and

11  Local Rule 7-18 because the Order demonstrates a clear failure of the Court to

12  consider the material averments of CPM's Complaint. Instead, the Court reached

13  factual conclusions and drew factual inferences that were contrary to the material

14  averments in CPM's complaint, taking as true the argumentative interpretations of

15  those averments set forth in Defendants' moving papers. Such averments weigh

16  heavily against dismissal with prejudice because, as discussed *infra*, they

17  demonstrate that CPM has, in fact, adequately pleaded claims for relief under the

18  antitrust laws.   Evidence recently filed by CPM in opposition to Defendants'

19  pending motion for summary judgment demonstrates the truth of such material

20  averments, and amply demonstrates that CPM should be granted leave to amend its

21  Complaint to correct any deficiencies in the pleading of its antitrust claims.

22  **A.    CPM Is Directly Injured By Defendants' Actions Because CPM**

23  **Bears The Risk Of Defendants' Non-Payment.**

24  The Court's Order erroneously concludes that CPM has not suffered direct

25  injury because any injury to CPM was the result of the failure of its contracted

26  physicians to pay management fees, rather than Defendants' wrongful denial of

27  reimbursement claims.   The Court found that "the injury to CPM didn't directly

28  result from Defendants' alleged conduct," Order at p. 7, and that "CPM's injury

1   was the non-receipt of management fees from its contracting physicians as well as

2   the loss of market share and market good will … Both injuries instead resulted from

3   actions taken by the physicians themselves (whether by failing to pay CPM

4   commissions or by terminating relationships with CPM)." *Id.*

5       The Court is simply incorrect.  It has failed to consider the material

6   averments in CPM's complaint which demonstrate that CPM is directly injured by

7   BH's actions irrespective of the conduct of its contracted physicians.

8       It is undisputed in this case that CPM submits bills to the Defendants, who

9   respond by making payments directly to CPM (or, when they refuse to pay as in the

10  instant case, withhold payments from CPM).  Complaint ("Compl.") ¶¶ 2, 4, 6-8,

11  47.  The Defendants do not pay the physicians and the physicians are not "out of

12  pocket" to pay CPM.  The complaint explains this process, and specifically how

13  Defendants' conduct directly injured CPM.  For example:

14      •   Defendants blocked payments to CPM and others in its business, rather

15  than blocking payments to physician(s) or injured workers/patients.  *See* Compl. ¶¶

16  42-47.  Defendants knew that payments were to be made directly to CPM, and that

17  by blocking those payments, CPM would be the party to directly suffer from cash

18  flow difficulties if Defendants refused payment.

19      •   Defendants refused to settle CPM's liens, talk to or deal with CPM,

20  and delayed payment or refused to pay CPM's bills and liens, and encouraged

21  others to join in the same conduct.  *See* Compl. ¶¶ 47, 82(f).  In other words, the

22  bills and liens at issue were CPM's and CPM's alone, and were not asserted by

23  CPM's contracted physicians.

24      •   Defendants sent "lulling letters" to CPM (not to the physicians) for the

25  purpose of lulling CPM into "believing that Zenith and BH were engaged in the

26  normal course of objecting to and litigating individual claims through the WCAB

27  process," which deception cost CPM…valuable time to react to Zenith's and BH's

28  fraud and served as a lulling activity that created a severe cash flow problem for

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    CPM." Compl. ¶ 7.  This conduct was aimed at, and directly harmed, CPM.

2        Evidence filed with the Court in opposition to BH's motion for summary

3    judgment (after conclusion of briefing on BH's motion to dismiss) reinforces the

4    fact that CPM had direct financial exposure to non-payment of bills.  Specifically,

5    the president of CPM, Michael R. Drobot, in his declaration (docket no. 169), and

6    recently in his deposition, has testified that payments for dispensed medications

7    were received by CPM, which then processed those payments and first deducted its

8    management fees and the expenses incurred in servicing its contracts with its

9    participating physicians, before it paid any funds to physicians.  *See* Drobot Decl. at

10   ¶ 5; Drobot Deposition ("Dep.") at 197:9-17.  It necessarily follows that if

11   payments did not cover expenses, physicians would not receive any payment.

12   **B.    CPM Is Directly Injured Because It Provides Financing To Its**

13   **Contracted Physicians.**

14       In rendering its Order, the Court also failed to consider the actual agreements

15   between CPM and its contracted physicians.  A number of such agreements were

16   attached as exhibits to CPM's opposition to BH's motion for summary judgment,

17   are in the Court's file and, therefore, are properly before the Court and available for

18   consideration in these proceedings.

19       The financial arrangements agreed to in the CPM management agreements

20   demonstrate its financial exposure as they clearly show that CPM, in many

21   instances, advanced funds directly to its contracted physicians in order to enable

22   them to purchase the medications to be prescribed to their patients.  *See* Ex. 1, sec.

23   2(d); *see also* Drobot Decl. at ¶ 5 ("CPM was to advance the funds to enable the

24   physicians to purchase the products, as necessary."); Drobot Dep. at 31:4-10 ("If

25   the physicians didn't want to buy their own drugs, we offered to advance the funds,

26   just as a bank would."); Drobot Dep. at 93:14-23 (testifying the CPM paid for the

27   medications obtained from suppliers).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

1    In or about 2006, CPM also entered into Medical Lien Purchase and

2    Financial Service Agreements with most of its contracting physicians, whereby

3    physicians could sell to CPM all "right, title and interest in claims for

4    reimbursement under the California workers; compensation system for drugs

5    dispensed" in the physicians' offices.  Drobot Decl., ¶ 6, Ex. 4.  The purpose of

6    these agreements was to address physician cash flow problems arising from the

7    increasingly prolonged delays attendant to collection of workers compensation

8    claims.  *Id.*   Beginning in 2009, and continuing into 2010, CPM entered into

9    "Financial Asset Agreements" with most of its contracted physicians, whereby the

10   physicians sold CPM their remaining share of unpaid medication claims.  *See*

11   Drobot Decl. at ¶ 7, Ex. 5.

12       What these facts show is that not only did CPM have direct exposure

13   resulting from having provided financing to its contracted physicians, but that in

14   many instances, it purchased its physicians' shares of the unpaid claims outright.

15   Therefore, it is simply incorrect that "[CPM's] injures [] resulted from actions taken

16   by the physicians themselves."  Order at p. 7.  Indeed, the facts of this case show

17   that CPM's contracted physicians often sold their interests to CPM and, therefore,

18   they no longer had any additional involvement relating to the medications that they

19   had prescribed to their patients.  CPM was the only entity that could have suffered

20   damages from Defendants' illegal conspiracy.

21       As described above, the facts of this case show that: (1) CPM advanced the

22   expenses of the dispensing programs from the outset, (2) CPM in 2006 entered into

23   additional agreements directed at the delay in collection attendant to workers'

24   compensations bills, purchasing the physicians' interests outright, and (3) CPM

25   directly received payments on the bills, reimbursed itself for the expenses it

26   advanced and only then paid physicians their share of anything left over.  CPM was

27   directly at financial risk under the subject agreements, much more so than the

28   physicians.  Accordingly, when BH stopped paying bills, CPM was directly and

significantly harmed.  It was CPM that funded the expenses of the dispensing programs, including the marked increased in collection costs and eventually litigation costs, all as a result of being lulled by the BH defendants and those with whom it conspired.  Drobot Decl. at ¶¶ 5-6; Drobot Dep. at 31:4-10 (testifying that CPM advanced funds to its contracted physicians); Drobot Dep. at 93:14-23 (testifying that CPM paid the invoices for drugs obtained from third-party suppliers).  These facts provide ample evidence of direct injury, and the Court should consider them before dismissing these claims.

### C.    Defendants' Illegal Actions Injure Competition In Relevant Markets.

The Order mistakenly concludes that CPM has "fail[ed] to allege injury to competition in a relevant market."  Order at p. 8.  In taking this position, the Court states that with respect to the in-office medication dispensing market, "CPM does not, and cannot, allege that Defendants favored some 'companies that assist physicians' over others" and that "prices in that market are fixed" and thus there is no injury to competition.  *Id.*  The Order flatly ignores the fact that, while it is true that the pharmaceutical reimbursement rates sought by CPM and companies in the in-office medication dispensing business are statutorily set, those rates vary depending on the supplier of the medications and commission charged by the management companies.

The commission or management fees charged by each company in this market vary significantly.  For instance, a company like CPM may charge a 50% commission for any reimbursements that it obtains on behalf of medications prescribed by its contracting physicians. On the other hand, a competitor of CPM may charge a higher or lower commission rate than what CPM charges. Defendants' illegal group boycott of the *entire* in-office medication dispensing market clearly harms competition within this market because now there is no longer any incentive for any company in this market to raise or lower its commission rate

- 8 -

1   due to the fact that it will never collect on any reimbursements submitted.  If

2   Defendants' illegal boycott were not in effect, market forces would dictate the

3   commission rate for each company within this market as the rate would be affected

4   by elements such as the efficiency in which a company collects and the collection

5   rate for each company.  Defendants' concerted refusal to pay *any* claims submitted

6   by companies such as CPM effectively destroys competition within the in-office

7   medication dispensing market as there no longer exists any incentives for

8   companies to compete with one another due to the fact that they would never get

9   paid.  Therefore, CPM's injury plainly derives from a competition-reducing aspect

10   of Defendants' illegal group boycott of the in-office medication dispensing market

11   because it is now prevented from collecting any commissions for reimbursements.

12        In addition, Defendants' illegal actions injure competition in the market for

13   workers' compensation insurance in the State of California.  BH's illegal agreement

14   with other workers' compensation insurers such as Zenith Insurance Company

15   ("Zenith") and Everest Insurance Company ("Everest") constitutes a horizontal

16   combination among competitors at one level to influence coercively the trade

17   practices of companies at another level (*i.e.*, companies that assist physicians with

18   in-office medication dispensing programs).  Compl. at ¶ 85.  In the absence of a

19   horizontal agreement and concerted effort, insurers would compete with each other,

20   subject to the market forces, by attempting to make economically efficient

21   decisions regarding the payment, compromise, or litigation of bills and liens

22   submitted to them by companies that assist physicians with in-office medication

23   dispensing programs.  *Id.*  In absence of illegal concerted behavior, insurers would

24   be subject to these market forces of competition, creating incentives for them to pay

25   proper bills and liens submitted by CPM and other similarly situated companies, to

26   compromise other bills and liens and to incur the cost of litigating only relatively

27   few liens.  *Id.*  The illegal horizontal agreement among insurers such as BH, Zenith

28   and Everest has the effect of suppressing competition among them with respect to

1   decisions regarding payment, negotiation and litigation of workers' compensation

2   medical bills and liens.  *Id.*  If the illegal horizontal agreement and concerted

3   refusal to deal were not in place, then these carriers would compete with each other

4   for business as companies would want to sign policies with insurers that have a

5   reputation for paying promptly on claims.  *Id.*

6        In deciding a motion to dismiss, it is well-established that the court must

7   accept as true all of the factual allegations set out in plaintiff's complaint, draw

8   inferences from those allegations in the light most favorable to plaintiff, and

9   construe the complaint liberally.  *Barker v. Riverside County Office of Ed.*, 584

10  F.3d 821, 824 (9th Cir. 2009).  The Order not only cuts against these fundamental

11  tenets, but goes so far as to accept as true factual assertions made by the *Defendants*

12  without any evidence to support those assertions.

13       For instance, in holding that CPM failed to allege injury to competition in the

14  workers' compensation insurance market in California, the Order accepts as true

15  Defendants' argument that their conduct "benefitted workers compensation insurers

16  by decreasing prices and thereby lowering the costs of entry into the market for

17  workers' compensation insurance."  Order at pp. 8-9.  This is simply not true and is

18  improper on a Rule 12(b)(6) motion; only CPM's factual averments, which must be

19  taken as true, may be considered. Even if Defendants had submitted evidence

20  demonstrating that bills for medications submitted by in-office pharmeceutical

21  management companies are higher or lower than bills submitted by other entities

22  (such as hospitals or traditional pharmacies), such evidence would be outside the

23  pleadings and, therefore, could not be considered by the Court in deciding the

24  motion to dismiss.

25       Lastly, contrary to the Order's *ipse dixit* pronouncement that the

26  "Pharmacy/Pharmacy Management [market] is not even cognizably alleged" (Order

27  at p. 9), there is ample evidence to define this market (Compl. at ¶¶ 78, 86) and

28  there is injury to competition within this market.

1    Thus, CPM has alleged that Defendants sought to destroy an entire market to

2  which patient-workers can turn to in order to obtain prescribed medication.  Such

3  destruction would undoubtedly decrease output and *increase* prices for consumers

4  because there is one less competitor in the market.  While CPM does not dispense

5  medications, itself, it provides services and assists physicians in doing so. In-office

6  medication dispensing programs *increase* competition because companies like

7  Walgreens and Rite-Aid must face additional competition for business.

8  Defendants' elimination of in-office medication dispensing providers can only

9  *decrease* competition, as traditional pharmacies such as Walgreens and Rite-Aid

10  would no longer have to compete with those providers.

11   **D.    None of CPM's Averments Support The Notion That Physicians**

12          **Who Dispense Their Own Medications Charge Higher Prices**

13          **Than Traditional Pharmacies.**

14    The Court also found that CPM failed to allege an antitrust injury,

15  concluding instead that "Defendants' actions … targeted providers charging higher

16  prices for medication otherwise available through traditional channels."  Order at p.

17  10.  This "did not cause the type of injury that antitrust statutes are designed to

18  prevent."  *Id.*  Again, there are no averments in the Complaint that in any way

19  support the notion that CPM's contracted physicians charge higher prices for

20  medications as compared to traditional pharmacies.  CPM simply alleges that

21  "payment for generic drugs [is] at 1.4 times the manufacturer's average wholesale

22  price (AWP), plus a $7.50 handling fee.  Brand name drugs are paid at 1.1 times the

23  AWP plus a handling fee of $4."  Compl. at ¶ 31.  Such averment makes absolutely

24  no reference to retail prices, or prices available "through traditional channels."

25    Notably, Defendants have failed to point out any averment in the Complaint

26  that states, or even suggests, that CPM's prices are higher than the prevailing retail

27  market prices for a given medication.  It is undisputed that prescribed medications

28  are not sold at wholesale prices to the general public.  Traditional pharmacies and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

1   physicians who offer in-office medication dispensing programs have to sell at a

2   price point above what is paid wholesale.  Again, in ruling upon a Rule 12(b)(6)

3   motion it is not proper to ignore the plaintiff's material averments and accept

4   Defendants' unsupported argument that medications obtained from CPM's

5   contracted physicians are billed at a higher rate than medications obtained from a

6   traditional pharmacy.

7       Additionally, even if for the sake of argument, management companies like

8   CPM charged higher prices than traditional pharmacies (a factual issue), the higher-

9   priced option of in-office prescriptions would give workers' compensation patients

10  a choice for a more convenient way of obtaining a prescription.  The utter

11  demolition of the in-office prescription programs would decrease competition in the

12  traditional pharmacy market because the traditional pharmacies would be freed

13  from maintaining lower prices to make up for their lack of the convenience offered

14  by the in-office programs.  Most importantly, workers' compensation patients,

15  particularly those who are mobility-impaired and do not want to use traditional

16  pharmacies, would be deprived of an essential opportunity of choice.

17      **E.    CPM's Contracted Physicians Are Not Necessary Parties.**

18      CPM's contracted physicians are not necessary parties to this lawsuit because

19  complete relief can be granted among the existing parties and any purported

20  interests that the contracted physicians might have in this litigation are represented

21  and protected by CPM.  As discussed, *supra*, the facts of this case make it clear that

22  many, if not most, of CPM's contracted physicians no longer have any financial

23  interest or involvement in collecting on medications because they have sold their

24  interests in these unpaid claims directly to CPM.  *See* Drobot Decl. at ¶ 7, Ex. 5; *see*

25  *also* Drobot Deposition at ¶¶ 57:18-24; 68:2-5 (testifying that CPM purchased the

26  physicians' shares of unpaid claims).  The Court was incorrect in stating that

27  "Defendants' alleged conduct has deprived the physicians, and not CPM, of the

28  amounts owed for medications received by injured workers." Order at p. 9. The

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

1   reality is that Defendants' illegal conduct has absolutely no effect on CPM's

2   contracted physicians because many of them were already paid when they sold their

3   portions of the claims directly to CPM.  Therefore, the physicians would be unable

4   to bring any actions against Defendants (or any other insurer) because they have

5   been paid for the prescribed medications.

6           Contrary to the assertion made in the Order, the Defendants would not be

7   "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

8   obligations" because any of the contracted physicians' claims would be barred by

9   the doctrine of *res judicata*, given that CPM and the physicians are in privity of

10  contract.  *See* Supplemental Brief re Motion to Dismiss (docket no. 128).  The

11  contracted physicians, for the most part, cannot assert claims against Defendants

12  because they no longer own the claims and liens at issue. Even if a handful of such

13  physicians do still own claims, that alone is no basis for dismissing CPM's *entire*

14  antitrust case.  Such result would be manifestly unfair to CPM.  Finally, even were

15  there some hypothetical risk that some small number of physicians could still assert

16  a claim for damages themselves defendants' exposure would be reduced dollar for

17  dollar by any damages awarded CPM.  Additionally, the physicians would have to

18  seek redress from CPM, not the Defendants.

19          Lastly, the Court is flatly incorrect when it states that there is "now pending

20  before this Court … an action brought by one of CPM's contracting physicians."

21  Order at p. 9.  There is nothing in the record whatsoever supporting the conclusion

22  that Dr. Sim Hoffman has had a contractual relationship with CPM.  Furthermore,

23  his complaint is against Zenith Insurance, which is no longer a defendant here, not

24  BH.  This lawsuit has absolutely no bearing upon CPM's case, and the Court's

25  reference to it is impermissible.

26  **F.    CPM Should Be Given Leave To Amend.**

27          Federal Rule of Civil Procedure 15(a) states that a party shall be "freely

28  given" leave to amend when justice so requires." The Ninth Circuit has consistently

1   directed trial courts to "heed carefully the command of Rule 15(a) … by freely
2   granting leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186
3   (9th Cir. 1987); *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th
4   Cir. 1986) (quoting *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973)
5   (citations omitted).   Thus, in the Ninth Circuit "Rule 15's policy of favoring
6   amendments to pleadings should be applied with '*extreme liberality*.'" (Emphasis
7   added.) *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981) (citing *Rosenberg*
8   *Brothers & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960) (per curiam)).   Several
9   other Circuits have held that a plaintiff *must* be given at least one more chance to
10  amend the complaint before the district court dismisses the action with prejudice.
11  *See, e.g., Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003); *DeCarlo v. Fry*,
12  141 F.3d 56, 62 (2d Cir. 1998)).

13      Here, the Court should have granted CPM leave to amend its complaint.
14  CPM's antitrust claims were never before attacked under Rule 12(b)(6), and the
15  sufficiency of CPM's Complaint as to those claims was never before addressed by
16  the Court. Indeed, the Court notes in its Order that it "would ordinarily grant CPM
17  leave to amend…." but then goes on to explain in cursory fashion why leave to
18  amend was not being granted. Such explanation is based entirely upon the Court's
19  faulty assumptions and incorrect interpretation of CPM's factual averments.  Order
20  at p. 10.  For reasons discussed above, the Court should reconsider those averments
21  in light of the strict standards applicable to Rule 12(b)(6). *See Barker v. Riverside*
22  *County Office of Ed.,* 584 F.3d at 824.

23      Even if CPM's factual averments were insufficient to plead the necessary
24  elements of its antitrust claims (which they are not), CPM has filed evidence in
25  opposition to Defendants' pending motion for summary judgment that reinforces
26  and further expounds upon the allegations contained in the Complaint.
27  Furthermore, nothing in the record, the pleadings, or the Court's ruling indicates
28  that amendment would actually be futile.  Lastly, the trial date in this case has

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION/MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO DISMISS

1   already been vacated by the Court, so granting leave to amend would not prejudice
2   Defendants or unduly delay the Court's proceedings. Accordingly, the Court should
3   reconsider its dismissal of the antitrust claims with prejudice, and grant CPM leave
4   to amend.

5   **G.     In Deciding The Motion To Dismiss, The Court Is Permitted To**
6   **Consider Matters Subject To Judicial Notice.**

7          A matter that is properly the subject of judicial notice (*see* Rule 201 of the
8   Federal Rules of Evidence) may be considered along with the complaint when
9   deciding a motion to dismiss for failure to state a claim. *See MGIC Indem. Corp. v.*
10  *Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (holding that matters of public record
11  may be considered, including pleadings, orders, and other papers filed with the
12  court or records of administrative bodies without converting a Rule 12(b)(6) motion
13  into Rule 56 motion for summary judgment); *see also Del Puerto Water Dist. v.*
14  *U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1233 (E.D. Cal. 2003) ("In a
15  rule 12(b)(6) Motion to Dismiss, matters of public record may be considered,
16  including pleadings, orders, and other papers filed with the court or records of
17  administrative bodies.").

18         In this instance, the Court is not simply limited to the four corners of the
19  complaint but is instead permitted to consider other documents and papers filed
20  with the Court in deciding whether to reconsider its Order.  Specifically, the Court
21  should consider the declaration and deposition testimony of Michael R. Drobot, the
22  president of CPM, which provide additional facts supporting CPM's claim that it
23  has suffered direct antitrust injury as a result of Defendants' illegal actions.

24                        **CONCLUSION**

25         For the foregoing reasons, CPM respectfully requests that the Court
26  reconsider its Order of December 1, 2010 and deny the motion to dismiss.  In the
27  alternative, CPM respectfully requests that the Court grant it leave to amend its
28  complaint.

1

2     Date:  December 6, 2010                    Respectfully submitted,

3                                                ARENT FOX LLP
                                                 Terree A. Bowers
4                                                Matthew J. Kitson

5                                                NORRIS & GALANTER LLP
                                                 Donald G. Norris

6

7                                                By:_____/s/_____
                                                     Terree A. Bowers
8                                                    Attorneys for Plaintiff
                                                     California Pharmacy Management, LLC
9

10

11    LA/370141.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION/MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO DISMISS