Terree A. Bowers (SBN 089334)
bowers.teree@arentfox.com
Matthew J. Kitson (SBN 254246)
kitson.matthew@arentfox.com
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401

Donald G. Norris (SBN 90000)
dnorris@norgallaw.com
NORRIS & GALANTER LLP
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Telephone: 213.996.8465
Facsimile: 213.996.8475

Attorneys for Plaintiff
California Pharmacy Management, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PHARMACY MANAGEMENT, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ZENITH INSURANCE COMPANY, a California corporation; and ZNAT INSURANCE COMPANY, a California corporation, et al.,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTION | Case No. SACV 09-0242 DOC (ANx)<br><br>(Consolidated with SAC 09-141 DOC (ANx))<br><br>Honorable David O. Carter<br><br>**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ECONSIDERATION OF ORDER GRANTING MOTION TO DISMISS**<br><br>Date: January 3, 2011<br>Time: 8:30 a.m.<br>Courtroom: 9D |

# INTRODUCTION

It is very telling that in their opposition the Berkshire Hathaway defendants (collectively "BH" or the "Defendants") do not challenge the substantive arguments contained in California Pharmacy Management's ("CPM") motion for reconsideration. Instead, the Defendants base their opposition mainly on the spurious argument that CPM's motion for reconsideration should be denied because the arguments contained in the motion were allegedly advanced in previous filings of CPM. Defendants' Opposition to Plaintiff's Motion for Reconsideration of Order Granting Motion to Dismiss at p. 1 (hereinafter "Def. Opp."). The Defendants also suggest that CPM's motion for reconsideration violates Local Rule 7-18, which limits the grounds on which a court will reconsider a prior ruling. *Id.* at p. 2.

As discussed, *infra*, the Court should grant CPM's motion for reconsideration because it failed to consider material facts presented to it before issuing its order. Instead, the Court reached incorrect factual conclusions and drew factual inferences by misapprehending the material facts presented to it. In addition, the Court further erred by taking as true the argumentative interpretations of those averments set forth in Defendants' moving papers. Lastly, the Court failed to consider the material averments contained in the complaint. Facts made available to the Court in CPM's subsequent filings prior to the December 1 ruling make all this unmistakably clear: CPM suffered direct injury because it provided financing to its contracting physicians, and in many instances purchased its contracting physicians' shares of the medical reimbursements for medications prescribed. Accordingly, the Court should reconsider its order and deny Defendants' motion to dismiss.

# ARGUMENT

## I. THE COURT CAN RECONSIDER ITS ORDER

The authority of a court to reconsider and correct its own orders is not as limited as Defendants claim in their opposition. It is well-established that, prior to losing jurisdiction through the filing of a notice of appeal, a district court has plenary power to reconsider orders that it has issued and correct them if there is an error. *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004); *cert. denied*, 544 U.S. 956, 125 S. Ct. 1721, 161 L.Ed.2d 538 (2005); *see also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (holding that a district court had discretion to reconsider its own prior order *sua sponte,* and stating that "[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment").

The inherent power to correct an error to avoid an unnecessary appeal does not depend on the Federal Rules of Civil Procedure or Local Rules. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d at 886. In addition, a motion to reconsider is appropriate if a party believes a court has *overlooked or misapprehended* an argument previously advanced. *Securities Investor Protection Corp. v. Vigman*, 74 F.3d 932, 936 (9th Cir. 1996); *National Rural Telecommunications Co-op. v. DirecTV, Inc.*, 319 F. Supp. 2d 1059, 1087-88 (C.D. Cal. 2003). In fact, a court may reconsider on its own motion. *FitzGerald v. United States (I.R.S.)*, 882 F. Supp. 959, 961 (D. Idaho 1994); *Phillips v. New Century Financial Corp.*, No. SACV05693DOCRNBX, 2006 WL 517652, *1 (C.D. Cal. March 1, 2006). A refusal to correct a known error is an abuse of discretion. *Hunt v. National Broadcasting Co., Inc.*, 872 F.2d 289, 292 (9th Cir. 1989); *Pickett v. Prince*, 207 F.3d 402, 408 (7th Cir. 2000).

Here, the Court erred when it failed to consider material facts presented to it before rendered its December 1 order addressing Defendants' motion to dismiss.

### A. The Court Should Grant CPM's Motion For Reconsideration Because It Failed To Consider Material Facts Presented To It.

The Defendants claim that CPM's motion for reconsideration should be denied because "CPM raises issues and arguments that it previously raised in opposition to Defendants' [motion to dismiss]." Def. Opp. at p. 1. However, Defendants' opposition flatly ignores the plain language of Local Rule 7-18(c), which provides that a motion for reconsideration is permitted upon a "showing of a failure to consider material facts presented to the Court." L.R. 7-18(c). CPM is not simply raising its previous arguments in its motion for reconsideration. Rather it is correctly pointing out to the Court that it failed to consider material facts presented to it, and that it also failed to consider and accept as true the material averments of the complaint.[1]

The record before the Court is that CPM makes a claim by submitting bills to BH, which responds by making payments directly to CPM (or, when choosing not to pay as in the instant case, withholding payments from CPM). As such, CPM was the primary entity to which BH owed money and, therefore, suffered direct injury when BH wrongfully withheld payment. Compl. at ¶¶ 2, 4, 6-8, 47. Evidence presented to the Court in CPM's subsequent filings[2] make it clear that CPM suffers direct injury because it provides financing to its contracted physicians. *See*

---

[1] It is axiomatic that in ruling on a motion to dismiss a court must (1) accept as true all of the factual allegations set forth in the complaint; (2) draw all inferences from those allegations in the light most favorable to the plaintiff; and (3) construe the complaint liberally. *See Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009).

[2] The Defendants' further claim in their opposition that "[f]actual evidence outside the pleadings is not appropriate or necessary" to the Court's order. Def. Opp. at p. 3. This argument is plainly incorrect as a court is permitted to consider "pleadings, orders and other papers filed with the court" when deciding a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *see also Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1233 (E.D. Cal. 2003).

Declaration of Michael R. Drobot[3] ("Drobot Decl.") at ¶ 5 ("CPM was to advance the funds to enable the physicians to purchase the products, as necessary."); Drobot Dep. at 31:4-10 ("If the physicians didn't want to buy their own drugs, we offered to advance the funds, just as a bank would."); Drobot Dep. at 93:14-23 (testifying the CPM paid for the medications obtained from suppliers).

In addition, CPM has provided evidence that it has purchased its contracted physicians' rights to reimbursement for the medications disbursed to patients. *See* Drobot Decl., ¶ 6, Ex. 4 (Medical Lien Purchase and Financial Service Agreements showing that CPM's contracting physicians would sell to CPM all "right, title and interest in claims for reimbursement under the California workers' compensation system for drugs dispensed" in the physicians' offices). Accordingly, CPM directly bears any and all financial risk arising from such claims and is the party that is directly injured through Defendants' illegal actions.

**B.   There Is No Evidence CPM's Contracted Physicians Charge A Higher Price For Prescribed Medications As Compared To Traditional Pharmacies.**

Defendants' opposition again takes the unsupported position that physicians participating in the in-office medication dispensing program charge more for prescribed medications *vis-à-vis* traditional channels. Def. Opp. at p. 4. Defendants cite to a single sentence in CPM's complaint which purportedly supports their argument, but a simple reading of the allegations exposes the fallacy of Defendants' logic.

The sentence simply states that "CPM is legally able to seek higher prices for medications than Zenith and BH *would like to pay*." Def. Opp. at p.4. The key is the last four words of the sentence. It is not disputed that Defendants and other worker compensation insurers always want to pay less than the face value of any

---

[3] The Declaration of Michael R. Drobot is docket item number 169.

reimbursement submitted to them. Nevertheless, the fact that these insurers *want* to pay less does not mean that the prices charged are by CPM's contracted physicians *are* actually higher or lower compared to the prices charged through traditional channels. Again, this allegation has to be read in the context of the entire complaint. Defendants have not cited a shred of evidence nor provided any facts that the prices charged by CPM's contracted physicians are higher or lower than what the going market rate is. As argued in CPM's moving brief (at 12:7), even if the prices were higher, due to the convenience of the in-office program, the in-office program forces traditional pharmacies to keep their prices low in order to off-set their lack of convenience. Thus, killing the in-house programs affects the overall competitive prices, including those of the traditional pharmacies.

Prescribed medications are never sold at wholesale prices to the general public, and commonsense dictates that traditional pharmacies and physicians who offer in-office medication dispensing programs have to sell at a price point above what they paid wholesale. Until evidence is provided otherwise, it is not permissible for the Court to simply accept Defendants' unsupported assertion that medications obtained from CPM's contracted physicians are billed at a higher rate than medications obtained from a traditional pharmacy.

## II. CPM SHOULD BE GRANTED LEAVE TO AMEND

The Defendants claim in their opposition that leave to amend should not be granted because any purported "deficiencies cannot be cured by amendment." Def. Opp. at pp. 5-6. Defendants cite *Vincent v. Trend W. Tech Corp.*, 828 F.2d 563 (9th Cir. 1987) for the proposition that leave to amend should not be granted where "the movant presented no new facts but only 'new theories.'" Def. Opp. at p. 5. However, *Vincent v. Trend W. Tech Corp.* is inapposite because here CPM has provided an abundance of facts that show that it can easily cure any alleged defects in its complaint. Indeed, CPM has provided evidence in other filings to this Court that (1) it advances funds directly to its contracting physicians in order to enable

them to purchase medications to be dispensed to their patients; and (2) that beginning in 2009 and continuing into 2010, CPM entered into contractual agreements with most of its physicians whereby the physicians sold CPM their remaining share of unpaid medication claims. These facts show that in most instances CPM's contracting physicians have no interest (financial or otherwise) after they have prescribed medications to their patients, due to the undeniable fact that they have already been paid for their share of the reimbursement. This leaves CPM as the only entity that could have suffered damages from Defendants' illegal actions. Accordingly, the Court should grant CPM leave to amend its complaint.

## CONCLUSION

For the foregoing reasons, CPM respectfully requests that the Court reconsider its order of December 1, 2010 and deny the motion to dismiss. In the alternative, CPM respectfully requests that the Court grant it leave to amend its complaint.

Date: December 20, 2010

Respectfully submitted,

ARENT FOX LLP
Terree A. Bowers
Matthew J. Kitson

NORRIS & GALANTER LLP
Donald G. Norris

By: /s/ Donald G. Norris
Donald G. Norris
Attorneys for Plaintiff
California Pharmacy Management, LLC